UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

KRISTIE FARNHAM, on behalf of herself
and all others similarly situated,

    Plaintiff,

v.

CARIBOU COFFEE COMPANY, INC.,

    Defendant.

CASE NO. 16-CV-295

(JURY TRIAL DEMANDED)

## CLASS ACTION COMPLAINT

Plaintiff Kristie Farnham, individually and on behalf of all others similarly situated, complains and alleges as follows based on personal knowledge as to herself, on the investigation of her counsel and the advice and consultation of certain third-party agents as to technical matters, and on information and belief as to all other matters:

### NATURE OF ACTION

1. Plaintiff brings this action for legal and equitable remedies resulting from the illegal actions of Caribou Coffee Company, Inc. in negligently, knowingly, and/or willfully transmitting SMS text messages *en masse* to Plaintiff's cellular telephone and the cellular telephones of thousands of other individuals across the country, without prior express written consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this putative class action lawsuit under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

3. Defendant is subject to specific personal jurisdiction in Wisconsin because it directed numerous unsolicited SMS text messages into the state of Wisconsin, because Plaintiff received such

unsolicited SMS text messages while residing in the state of Wisconsin (and on a cellular telephone assigned a Wisconsin-based telephone number), because thousands of absent Class members likewise received unsolicited SMS text messages sent by Defendant into the state of Wisconsin, and because the injuries to Plaintiff and thousands of absent Class members occurred in Wisconsin and arose from and are related to Defendant's business activities in Wisconsin. Moreover, the Court also has personal jurisdiction over Defendant because Defendant owns and operates 13 brick and mortar stores throughout Wisconsin and further sells its products at 191 grocery stores throughout Wisconsin, and because Defendant's marketing text messages directed to Plaintiff and thousands of other absent Class members were intended to promote Defendant's products sold at these locations in Wisconsin.

4. Venue is proper in the United States District Court for the Western District of Wisconsin pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a) because Defendant is a corporation that is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. Defendant's contacts with this District, including directing text message advertisements into this District with the intent of delivering them to residents of this District (and which were, in fact, ultimately delivered to residents of this District), are sufficient to subject it to personal jurisdiction in this District.

## PARTIES

5. Plaintiff is, and at all times mentioned herein was, an individual and a "person" as defined by 47 U.S.C. § 153(10). Plaintiff is, and at all times mentioned herein was, a citizen and resident of Hudson, Wisconsin.

6. Defendant is, and at all times mentioned herein was, a company whose primary corporate headquarters is in Brooklyn Center, Minnesota. Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(10).

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

7. To address consumer complaints regarding certain telemarketing practices, Congress enacted the TCPA, 47 U.S.C. § 227, in 1991. The TCPA prohibits, *inter alia*, the use of automated telephone equipment, or "autodialers," to make any call, including sending a text message, to a wireless number absent an emergency or the prior express written consent of the party called.

8. According to findings by the Federal Communication Commission ("FCC"), which is vested with authority to issue regulations implementing the TCPA, autodialed calls and texts are prohibited because such transmissions are a greater nuisance and invasion of privacy than live solicitation calls, and receiving and addressing such calls and texts can be costly and inconvenient. The FCC also recognized that wireless customers are charged for such incoming calls and texts whether they pay in advance or after the minutes or texts are used.

9. One of the most prevalent bulk advertising methods employed by companies today involves the use of "Short Message Services" (or "SMS"), which is a system that allows for the transmission and receipt of short text messages to and from wireless telephones. Indeed, according to a recent study conducted by the Pew Research Center, "Spam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds – from coupons to phishing schemes – sent directly to user's cell phones."[1]

10. SMS messages are directed to a wireless device through a telephone number assigned to the device. When an SMS message is successfully transmitted, the recipient's wireless phone alerts the recipient that a message has been received. Because wireless telephones are carried on their owner's person, SMS messages are received virtually anywhere in the world.

---

[1] Amanda Lenhart, Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research Center (2010), http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx (last visited May 21, 2015).

11. Unlike more conventional advertisements, SMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message they receive or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized.

12. Due to the growing concern over unwanted SMS text message advertisements, the FCC recently updated its rules on consent, requiring "prior express written consent" for calls or SMS text messages that contain an "advertisement" or "telemarketing." *See* 47 C.F.R. 64.1200(f)(8).

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

13. Plaintiff is, and at all times mentioned herein was, the subscriber of the cellular telephone number (715) 245-0640 (the "0640 Number"). The 0640 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

14. Between in or about early March 2016 and the date of the filing of this Class Action Complaint, Defendant transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, approximately fifty (50) SMS text message advertisements to the 0640 Number without Plaintiff's express consent, written or otherwise.

15. The source of each of the unsolicited SMS text messages sent by Defendant to the 0640 Number was "65017", which is an SMS short code leased by Defendant or Defendant's agent(s) or affiliate(s), and is used for operating Defendant's text message marketing program.

16. The 0640 Number continues to receive Defendant's unsolicited SMS text message advertisements on a daily basis.

17. All telephone contact by Defendant and/or affiliates, subsidiaries, or agents of Defendant to Plaintiff at the 0640 Number occurred via an "automated telephone dialing system" as defined by 47 U.S.C. § 227(b)(1)(A).

18. Specifically, Defendant utilized an "automated telephone dialing system" because the SMS messages to the 0640 Number were sent from "65017", which is a short code telephone number used to message consumers *en masse*, and because the hardware and software used by Defendant to send such messages have the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion and without human intervention. Defendant's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls and/or texts simultaneously (all without human intervention).

19. The complained of SMS messages to the 0640 Number constituted calls not made for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

20. The complained of SMS messages to the 0640 Number constituted telephone solicitations as defined by 47 U.S.C. § 227(a)(4).

21. The complained of SMS messages to the 0640 Number constituted advertisements as defined by 47 C.F.R. 64.1200(f)(1).

22. Plaintiff never provided "prior express written consent" or any other form of consent allowing Defendant and/or any affiliate, subsidiary, or agent of Defendant to transmit SMS messages to the 0640 Number by means of an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A). At no time did Plaintiff ever provide Defendant with the 0640 Number.

## CLASS ACTION ALLEGATIONS

23. Class Definition. Plaintiff brings this civil class action on behalf of herself individually and on behalf of all other similarly situated persons as a class action pursuant to Fed. R. Civ. P. 23. The "Class" which Plaintiff seeks to represent is comprised of and defined as follows:

> All persons within the United States who received an SMS text message from Caribou Coffee Company, Inc. and/or an affiliate,

subsidiary, or agent of Caribou Coffee Company, Inc. to a cellular telephone through the use of an automatic dialing system and who did not provide prior express written consent to receive such SMS text messages.

24. Defendant, its employees and agents are excluded from the Class.

25. Plaintiff reserves the right to modify the definition of the Class (or add one or more subclasses) after further discovery.

26. Plaintiff and all Class members have been impacted and harmed by the acts of Defendant and/or their affiliates or subsidiaries.

27. This Class Action Complaint seeks injunctive relief and monetary damages.

28. This action may properly be brought and maintained as a class action pursuant to Fed. R. Civ. P. 23(a) and (b). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance and superiority requirements.

29. Upon application by Plaintiff's counsel for certification of the Class, the Court may also be requested to utilize and certify subclasses in the interests of manageability, justice and/or judicial economy.

30. <u>Numerosity</u>. The number of persons within the Class is substantial, believed to amount to tens of thousands of persons dispersed throughout the United States. It is, therefore, impractical to join each member of the Class as a named Plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

31. <u>Typicality</u>. Plaintiff received at least one SMS text message through the use of an automatic telephone dialing system, without providing her prior express written consent to Defendant within the meaning of the TCPA. Consequently, the claims of Plaintiff are typical of the claims of the members of the Class, and Plaintiff's interest is consistent with and not antagonistic to

those of the other Class members she seeks to represent. Plaintiff and all members of the Class have been impacted by, and face continuing harm arising out of, Defendant's violations and/or misconduct as alleged herein.

32. <u>Adequacy</u>. As Class representative, the Plaintiff has no interests that are adverse to, or which conflict with, the interests of the absent members of the Class and is able to fairly and adequately represent and protect the interests of such a Class. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims. If necessary, Plaintiff may seek leave to amend this Class Action Complaint to add additional Class representatives or assert additional claims.

33. <u>Competency of Class Counsel</u>. Plaintiff has retained and is represented by experienced, qualified and competent counsel committed to prosecuting this action. These counsel are experienced in handling complex class action claims.

34. <u>Commonality and Predominance</u>. There are well defined common questions of fact and law that exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member and may be determined without reference to the individual circumstances of any class member, include (but are not limited to) the following:

    a) Whether Defendant and/or affiliates, subsidiaries, or agents of Defendant transmitted non-emergency text messages to Plaintiff's and Class members' cellular telephones using an automatic telephone dialing system;

    b) Whether Defendant and/or affiliates, subsidiaries, or agents of Defendant can meet their burden to show Defendant obtained prior express written consent (as defined by 47 C.F.R. 64.1200(f)(8)) to send the text messages complained of;

    c) Whether the complained of conduct was knowing and/or willful;

    d) Whether Defendant is liable for damages, and the amount of such damages;

    e) Whether Defendant and/or affiliates, subsidiaries, or agents of Defendant should be enjoined from engaging in such conduct in the future.

  35. <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the text messages at issue are all automated and the Class members, by definition, did not provide the prior express written consent required under the statute to authorize such text messages to their cellular telephones. The Class members can be readily located and notified of this class action through Defendant's records and, if necessary, the records of cellular telephone providers.

  36. Additionally, the prosecution of separate actions by individual Class members may create a risk of multiple adjudications with respect to them that would, as a practical matter, be

dispositive of the interests of other members of the Class who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such nonparty Class members to protect their interests. The prosecution of individual actions by Class members could further establish inconsistent results and/or establish incompatible standards of conduct for Defendant.

37. Defendant and/or any affiliates, subsidiaries, or agents of Defendant have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### NEGLIGENT VIOLATION OF THE TELEPHONE
### CONSUMER PROTECTION ACT
### (47 U.S.C. § 227)

38. Plaintiff incorporates by reference the foregoing paragraphs of this Class Action Complaint as if fully stated herein.

39. The foregoing acts and omissions constitute negligent violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

40. As a result of the alleged negligent violations of 47 U.S.C. § 227, Plaintiff and all Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

41. Plaintiff and all Class members are also entitled to, and do seek, an award of $500.00 in statutory damages for each and every SMS message transmitted in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3).

42. Plaintiff and Class members also seek an award of attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
## KNOWING AND/OR WILLFUL VIOLATION OF THE
## TELEPHONE CONSUMER PROTECTION ACT
## (47 U.S.C. § 227)

43. Plaintiff incorporates by reference the foregoing paragraphs of this Class Action Complaint as if fully stated herein.

44. The foregoing acts and omissions constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

45. As a result of alleged knowing and/or willful violations of 47 U.S.C. § 227, Plaintiff and all Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

46. Plaintiff and all Class members are also entitled to, and do seek, treble damages of up to $1,500.00 for each and every SMS message transmitted in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3).

47. Plaintiff and Class members also seek an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment in her favor, as follows:

1. Injunctive relief prohibiting such violations of the TCPA in the future;

2. As a result of the alleged negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each class member $500.00 in statutory damages for each and every SMS text message that violated the TCPA;

3. As a result of the alleged willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each class member treble damages, as provided by the statute, of up to $1,500.00 for each and every SMS text message that violated the TCPA;

4. An award of attorneys' fees and costs to counsel to Plaintiff and the Class; and

5. An Order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the law firms representing Plaintiff as counsel for the Class.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the Class, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

Dated: May 5, 2016

Respectfully submitted,

By: _/s/ Frank Hedin_

**CAREY RODRIGUEZ MILIAN GONYA, LLP**

Frank S. Hedin
fhedin@careyrodriguez.com
David P. Milian*
dmilian@careyrodriguez.com
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone: (305) 372-7474
Facsimile: (305) 372-7475
*Petition for Admission Forthcoming

*Counsel for Plaintiff and the Putative Class*