# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| KRISTIE FARNHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 16-CV-295 |
| v. | ) |
| | ) |
| CARIBOU COFFEE COMPANY, | ) **MEMORANDUM IN SUPPORT** |
| INC., | ) **OF MOTION TO STAY** |
| | ) **PROCEEDINGS** |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |

## INTRODUCTION

The First Amended Class Action Complaint alleges that the defendant, Caribou Coffee Company, Inc. ("Caribou"), sent text messages to Plaintiff's cellular phone using an "autodialer." The Court should stay proceedings until other litigation can conclusively determine the definition of an "autodialer" under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227; whether Plaintiff has standing as the "called party" to challenge Caribou's conduct under the TCPA; and whether Plaintiff's attempts to revoke consent or otherwise put an end to receipt of messages from Caribou were adequate under the TCPA.

This case involves claims for statutory damages under the TCPA. Prudence recommends staying litigation until the D.C. Circuit can decide controlling legal issues involving the proper interpretation of the TCPA. Plaintiff claims that

1

Caribou sent text messages to her using an "autodialer" within the meaning of 47 U.S.C. § 227 without her consent. Whether Caribou's text message equipment qualifies as an "autodialer" therefore will be a significant—perhaps *the* significant—question in discovery and briefing in this case.

The Federal Communications Commission ("FCC") currently interprets "autodialed" calls to include many calls and texts made using a "database" of phone numbers. Caribou's calls to Plaintiff might fall within that definition. But the D.C. Circuit is currently considering the validity of the "database" interpretation in *ACA Int'l, et al. v. FCC,* No. 15-1211 (D.C. Cir). The petitioners in *ACA Int'l* argue for a narrower interpretation of "autodialer" that hews more closely to the statutory text and does not include calls from databases. If the D.C. Circuit adopts that interpretation instead, Plaintiff's claims here would fail.

*ACA Int'l* may also settle two additional issues that directly bear on Plaintiff's claims. First, the FCC has interpreted the term "called party" in 47 U.S.C. § 227(b)(1)(A) to mean the called phone number's current subscriber, rather than the intended recipient of the call or text message. This interpretation creates potential liability for companies such as Caribou who may inadvertently place calls and text messages to reassigned numbers. If the D.C. Circuit agrees with the petitioners' position, there will be no liability for calls to reassigned numbers such as Plaintiff's and Plaintiff's claims will fail.

Second, the *ACA Int'l* petitioners are challenging the FCC's position on revocation of consent. The FCC's current position departs from prior industry standards that required customers to opt-out by using specified keywords and instead allowing recipients to opt-out using any "reasonable" means. This creates particular problems for companies who send automated text messages such as the ones Caribou allegedly sent to Plaintiff.

Before the parties and the Court here consider whether the texting equipment in this case was an "autodialer," whether Plaintiff was the "called party," and whether her attempts to opt out were binding on Caribou, it is necessary to know what the terms "autodialer" and "called party" mean and what constitutes revocation of consent. This case thus should wait until the D.C. Circuit decides these questions.

## BACKGROUND

On May 27, 2016, Plaintiff Kristie Farnham filed her First Amended Class Action Complaint ("Complaint"), alleging that Caribou violated the TCPA by sending her text messages. *See generally* Complaint, ECF No. 8. Specifically, Plaintiff alleges that Caribou sent her text messages using an "automatic telephone dialing system" even though she did not consent to receive text messages from Caribou. *Id.* ¶¶ 7, 14, 22, 26. The Complaint specifies that in using the words "automatic telephone dialing system," Plaintiff is referring to that term "as defined

3

in 47 U.S.C. § 227(a)(1)(A)." *Id.* ¶ 21. Plaintiff seeks injunctive relief and to recover statutory damages and attorneys' fees and costs. *Id.*, Prayer for Relief. She also seeks to represent a class of others who allegedly are similarly situated to her. *Id.* ¶¶ 27-41.

## ARGUMENT.

### I. The Court Should Stay This Case Pending Another Decision That Will Control This Case.

The Court should stay proceedings pending the outcome of an appeal in the D.C. Circuit that will control Plaintiff's claims.

#### A. A Stay Is Appropriate Where Collateral Proceedings Will Affect The Case Before The Court.

The Court has broad discretion to stay proceedings pending the resolution of another matter that could affect the case before it. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "The power to stay proceedings is incidental to the power inherent in every court to control disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998) (internal quotations omitted). "The general test for imposing a stay requires the court to balance interests favoring a stay against interests frustrated by the action." *SanDisk Corp. v. Phison Elecs. Corp.*, 538 F. Supp. 2d 1060, 1065 (W.D. Wis. 2008). "In determining whether to issue a stay, courts often consider the following factors: (1) whether the litigation

4

is at an early stage; (2) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (3) whether a stay will simplify the issues in question and streamline the trial; and (4) whether a stay will reduce the burden of litigation on the parties and on the court. *Woodman's Food Mkt., Inc. v. Clorox Co.*, 2015 WL 4858396, at *2 (W.D. Wis. Aug. 13, 2015) (Crocker, M.J.) (citations omitted).

The "simplifying the issues" factor weighs heavily in favor of stay when parallel proceedings will bear on the outcome of the case before the court. *Texas Indep. Producers and Royalty Owners Assn. v. EPA*, 410 F.3d 964, 980 (7th Cir. 2005); *see also Mediterranean Ents., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.") (citation omitted).

**B.     The *ACA Int'l* Case In The D.C. Circuit Warrants A Stay Here.**

A stay is warranted here because the D.C. Circuit's decision in *ACA Int'l, et al. v. FCC*, No. 15-1211 (D.C. Cir.), will establish controlling law in this case, could end Plaintiff's claims on the merits, and likely will be entered in the coming months. Waiting a few months for this ruling would not materially prejudice Plaintiff. By contrast, it would create significant difficulty to Caribou if it were

forced to push forward with discovery without knowing the governing legal standard. To preserve public and private resources, the Court should therefore grant a stay. *See Gensel v. Performant Technologies, Inc.*, 2015 WL 6158072, at **2–3 (E.D. Wis. Oct. 20, 2015) (Randa, J.) (granting motion to stay pending the decision in *ACA Int'l*).

### 1. The Forthcoming Decision In *ACA Int'l* Likely Will Control In This Case.

On July 10, 2015, the FCC issued a Declaratory Ruling and Order that addressed (among other issues) the definition of an automatic telephone dialing system ("autodialer") under the TCPA. *See In the Matter of Rules & Regulations of the Telephone Consumer Protection Act of 1991*, 30 FCC Recd. 7961 (July 10, 2015) (the "2015 TCPA Order"). The TCPA defines an autodialer as "equipment which has the capacity… to store or produce telephone numbers to be called, using a random or sequential number generator." 47 U.S.C. § 227(a)(1). The FCC, however, defined an autodialer much more broadly to include equipment that has the capacity to dial numbers "at random, in sequential order, **or from a database of numbers**." 30 FCC Recd. at 7974, 2015 TCPA Order, at ¶ 16 (quotation omitted; emphasis added). That counter-textual definition of "autodialer" is being challenged on direct appeal to the D.C. Circuit in *ACA Int'l*. That appeal asks the D.C. Circuit to hold that the FCC's interpretation "nullifies the statutory random-or-sequential-number-generation requirement, and provides inadequate guidance to

6

regulated parties." *See* Joint Brief for Petitioners, *ACA Int'l, et al. v. FCC*, No. 15-1211 (D.C. Cir.), at 4 (Nov. 25, 2015) ("Petitioners Brief").

Plaintiff's own complaint recognizes that meaning of the statutory term "autodialer" is at the heart of this case. The complaint repeatedly cites to the definition of "autodialer" in 47 U.S.C. § 227(a)(1)—which is the very provision at issue in the D.C. Circuit in *ACA Int'l*. *See* ¶¶ 7, 21, 22, 26. As a result, if the D.C. Circuit agrees with the appellants and holds that an autodialer means only a machine that dials numbers randomly or sequentially, Plaintiff would have no claims against Caribou, because text messages that Caribou allegedly sent Plaintiff were sent using a database of numbers, implicating the challenged portion of the FCC rule. There is nothing "random" or "sequential" about Caribou's text messages. Caribou texted a specific number—the one Plaintiff alleges is hers—in an attempt to contact a Caribou customer.

The *ACA Int'l* petitioners also challenge the FCC's interpretation of "called party." The 2015 TCPA Order defines the "called party" as the "current subscriber or customary user" of the called phone number (2015 TCPA Order, at ¶ 73), rather than the intended recipient of the call or text message. Petitioners ask the D.C. Circuit to recognize that interpreting "called party" to mean the intended recipient of the call or text message is more consistent with both the natural meaning of the term "called party" as well as Congress's stated purposes for the TCPA. *See*

7

Petitioners Brief at 41–46. Plaintiff may not have been the intended recipient of Caribou's text messages. Accordingly, if the D.C. Circuit agrees with the petitioners and holds that the called party refers to the intended recipient, Plaintiff may have no claims against Caribou.

Finally, the *ACA Int'l* petitioners challenge the FCC's refusal to establish any standardized system for revoking consent. *See* Petitioners Brief at 54–55. The 2015 TCPA Order allows the recipient of a call or text message to revoke consent using any method that is "reasonable" under "the totality of facts and circumstances." 2015 TCPA Order, at ¶ 64 & n. 233. The petitioners argue the FCC's approach creates particular problems for companies such as Caribou that send automated text messages, because technological barriers currently prohibit programming a system to recognize every individual means of revoking consent. *See* Petitioners Brief at 56. The D.C. Circuit's ruling on revocation of consent may also impact Plaintiff's claims.

*ACA Int'l* thus will establish the law that controls this case. This Court has no authority to review the FCC's orders because of the Administrative Orders Review Act (commonly referred to as the "Hobbs Act"), 28 U.S.C. §§ 2341–2351. Under the Hobbs Act the federal courts of appeals, on direct appeal from the FCC itself, have "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of all final orders of the Federal Communications

8

Commission." 28 U.S.C. § 2342; *see also FCC v. ITT World Communications, Inc.,* 466 U.S. 463, 468 (1984) (applying the Hobbs Act). Federal district courts therefore lack jurisdiction to review FCC orders. *City of Peoria v. Gen. Elec. Cablevision Corp. (GECCO)*, 690 F.2d 116, 122 (7th Cir. 1982).

As a result, this Court will be bound by whatever the D.C. Circuit holds on review of the FCC's 2015 TCPA Order in *ACA Int'l*. It therefore makes sense to wait for the ruling in *ACA Int'l* to establish the law under the TCPA before proceeding with this case. Doing otherwise risks wasting the resources of both the parties and the Court. For these reasons, many other courts have issued similar stays pending *ACA Int'l. E.g.*, *Errington v. Time Warner Cable Inc.*, 2016 WL 2930696, at *4 (C.D. Cal. May 18, 2016); *Abplanalp v. United Collection Bureau, Inc.,* 2016 WL 81498, at *3 (W.D.N.C. Jan. 7, 2016), *report and recommendation adopted*, 2016 WL 483132 (W.D.N.C. Feb. 5, 2016); *Acton v. Intellectual Capital Mgmt., Inc.,* 2015 WL 9462110, at *2-3 (E.D.N.Y. Dec. 28, 2015); *Kolloukian v. Uber Techs., Inc.*, 2015 WL 9598782 (C.D. Cal. Dec. 14, 2015).

For instance, the Eastern District of Wisconsin has recognized "the FCC majority's interpretation of the term 'capacity' contradicts the plain language of the statute" and a stay pending the outcome of *ACA Int'l* is therefore "in the interest of judicial economy." *Gensel*, 2015 WL 6158072, at *2. The Central District of California has similarly recognized that "there is a legitimate possibility that the

9

Court of Appeals may overturn" the FCC's definition of autodialer and called party, and "it is prudent to await further guidance from the D.C. Circuit" because "the proper interpretation of the TCPA remains unclear." *Fontes v. Time Warner Cable Inc.,* 2015 WL 9272790, at *4 (C.D. Cal. Dec. 17, 2015).

As in *Fontes*, if this litigation moved forward now and "the Court of Appeals [then] were to issue an order vacating the FCC's ruling in significant part," that "would likely render moot substantial efforts by the parties" and potentially "the Court's rulings" as well. *Id.* at *5. A stay pending *ACA Int'l* is warranted.

### 2. A Stay Pending *ACA Int'l* Would Be Brief And Would Not Prejudice Plaintiff, While Going Forward Would Impose Hardship On Caribou.

Staying this case pending the D.C. Circuit appeal would cause no hardship to Plaintiff because of the relatively short duration of the stay. Briefing in *ACA Int'l* has been complete for some months, *see* Per Curiam Scheduling Order, No. 15-1211 (D.C. Cir. Oct. 13, 2015) (Doc. #1577930), and argument should occur in summer or fall 2016. If the D.C. Circuit invalidates the FCC rule in *ACA Int'l*, a stay likely would cause no net delay at all in this case—it would simply save the parties and the Court from having to re-do portions of this litigation in light of the new definitions of autodialer and called party and rules surrounding revocation that would emerge from *ACA Int'l*.

By contrast, even if the FCC rule were to survive D.C. Circuit review, the delay in this case would be only a few months. There is no indication that a short pause of this type would work any material prejudice on Plaintiff. Although the Complaint nominally seeks injunctive relief, *see* Prayer for Relief ¶ 1, Plaintiff offers no factual allegations supporting an urgent need, or indeed any need, for an injunction. She does not, for instance, allege that Caribou continues to send text messages to her cellular phone with an autodialer. Indeed, Plaintiff's own choice to seek class rather than individual proceedings demonstrates that speed is far from her paramount interest here.

Denying a stay, in contrast, would cause significant prejudice to Caribou by forcing it to engage in discovery and other litigation about whether its equipment is an autodialer, but without knowing what the controlling definition of "autodialer" is. That would be bad enough if it were only Plaintiff's individual claims at issue. In this class-action context, it is even more desirable to stay litigation pending collateral proceedings because of the considerable burdens associated with discovery in a putative class action. *See Dennison v. MONY Life Ret. Income Sec. Plan for Employees*, 710 F.3d 741, 746 (7th Cir. 2013). The ability to prevent the unnecessary expenditure of private resources thus is a powerful reason to grant a stay. In short, the balance of harms to the parties and considerations of judicial

economy all support granting a stay pending the D.C. Circuit's decision in *ACA Int'l.*

## CONCLUSION

Caribou respectfully requests the Court stay this case pending the United States Court of Appeals for the District of Columbia's decision in *ACA Int'l, et al. v. FCC*, No. 15-1211 (D.C. Cir.). The Court should require the parties to submit a joint status report, within 14 days of that decision, that either indicates that the parties agree on the resolution of this case or requests a status conference to address how the case should proceed.

Dated:  June 15, 2016                                  **FAEGRE BAKER DANIELS LLP**


By: */s/ Leita Walker*
Leita Walker, (MN #387095)
Erin Hoffman (MN #0387835)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone:  (612) 766-7000
Fax:  (612) 766-1600
Leita.Walker@FaegreBD.com
Erin.Hoffman @FaegreBD.com


Attorneys for Defendant Caribou Coffee Company, Inc.