UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

KRISTIE FARNHAM, on behalf of herself
and all others similarly situated,

        Plaintiff,

v.

CARIBOU COFFEE COMPANY, INC.,

        Defendant.

CASE NO. 16-CV-00295

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STAY**

---

Plaintiff Kristie Farnham, individually and on behalf of all others similarly situated, submits this response in opposition to the Motion to Stay (ECF Nos. 12-13) filed by Defendant Caribou Coffee Company, Inc. ("Caribou").

## I.    INTRODUCTION

Caribou seeks an indefinite stay of this litigation pending the United States Court of Appeals for the D.C. Circuit's resolution of *ACA Int'l v. FCC*, No. 15-1211 (D.C. Cir. 2015) (the "*ACA* Petition"). The *ACA* Petition seeks a ruling from the D.C. Circuit that the FCC's July 10, 2015 Order[1] (the "2015 FCC Order") resolving 21 petitions relating to the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA"), was unlawful, "arbitrary" and constituted an "abuse of discretion." Caribou contends, <u>without presenting a lick of evidence</u>, that the D.C. Circuit's resolution of the *ACA* Petition "<u>could</u> end Plaintiff's claims on the merits," (Mot. 5 (emphasis added)), for the following three reasons: (1) "if the D.C. Circuit agrees with the appellants and holds that an autodialer [(as the term is used in the TCPA)] means only a machine that dials numbers randomly or sequentially, Plaintiff would have no claims against Caribou," (*id.* at 7); (2) "if the D.C. Circuit holds that the called party [under the TCPA] refers to the intended recipient, Plaintiff <u>may</u> have no claims against Caribou," (*id.* at 8 (emphasis added)); and (3) "[t]he D.C. Circuit's ruling on revocation of consent [under the TCPA] <u>may</u> also impact Plaintiff's claims," (*id.*).

---

[1]    *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC Declaratory Ruling*, CG Dkt. No. 02-278 (July 10, 2015).

However, Caribou has failed to demonstrate that any of its three grounds for a stay involve legal issues that are even implicated in this case, such that any additional judicial guidance from the D.C. Circuit could possibly have any impact on this case.  Indeed, Caribou has not even attempted to demonstrate that the machine it used to text Plaintiff would not fit the definition of autodialer advanced in the *ACA* Petition, or that someone other than Plaintiff was the intended recipient of its fifty (50) unsolicited text messages, or that Plaintiff ever consented to receive texts from Caribou in the first instance such that revocation of consent could possibly be at issue in this case.

Moreover, even if Caribou had demonstrated that any of these three grounds for a stay is potentially relevant to this case (and it has not), none of the positions advanced in the *ACA* Petitions is at all likely to be adopted by the D.C. Circuit.  Rather, the most likely outcome of the *ACA* Petition is the D.C. Circuit upholding the 2015 FCC Order in full.  Indeed, Caribou is attempting to create an alternate reality – one in which the 2015 FCC Order represented a seismic shift in TCPA law, making reversal by the D.C. Circuit a foregone conclusion.  In the real world, however, the 2015 FCC Order tracks a decades-long line of prior FCC orders.  Numerous federal district courts and circuit courts of appeals have adopted the FCC's interpretations of the TCPA provisions at issue in this case (or independently reached the same conclusions), and have implemented the FCC's TCPA rulings accordingly.  Finally, the D.C. Circuit's standard of review – which Caribou ignores entirely – is highly deferential: the D.C. Circuit presumes that the FCC's actions are valid and defers to the FCC's own precedents. *See ADX Commc'ns of Pensacola v. FCC*, 794 F.3d 74, 79 (D.C. Cir. 2015); *Vernal Enterprises, Inc. v. FCC*, 355 F.3d 650, 658 (D.C. Cir. 2004).

Caribou's requested say would serve no practical purpose, would only needlessly and unfairly delay resolution of this action, and, as one district court concluded in denying a similar motion, would be a "significant waste of time."  *See Hooker v. Sirius XM Radio, Inc.*, No. 13-cv-3, Dkt. 136, at 6 (E.D. Va., Sept. 25, 2015) (denying motion to stay pending resolution of petition challenging the 2015 FCC Order). This Court should reach the same conclusion. Stalling these proceedings indefinitely on the speculative chance that the D.C. Circuit will vacate the 2015 FCC Order is unjustified. Even if the D.C. Circuit were to vacate the 2015 FCC Order and upend years and years of TCPA jurisprudence, this case will not be over. Caribou admits as much in its Motion. The parties will still need to conduct discovery and motion practice regardless of the D.C. Circuit's conclusion. There is thus nothing to be gained by imposing an indefinite stay.

Nor has Caribou articulated anything to be lost by proceeding with the case.  Caribou must do more than simply ask for a stay or hypothesize about prejudice. A stay is only warranted if there

is "a clear case of hardship or inequity" in being required to go forward with litigation. *Id.* Critically, the only purported hardship identified by Caribou is the costs of defending this case, but such costs are unquestionably insufficient to require a stay. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) (stay vacated). Plaintiff and the putative Class members, on the other hand, will be significantly prejudiced by a lengthy stay, including the risk of spoliation of evidence, fading memories, and further bombardment by unsolicited text messages in violation of the TCPA.

Caribou is asking this Court to stay this case pending an event that, in all probability, will never occur. A stay on such a speculative basis would be entirely improper, and would prejudice Plaintiff and the putative Class. The Motion to Stay should be denied in its entirety.

## II. BACKGROUND

On July 10, 2015, the FCC issued the 2015 FCC Order, which, *inter alia*, further clarified the definitions of several terms that appear in the TCPA.

Faced with potential liability under the TCPA and the 2015 FCC Order, some companies in the telecommunications industry have sought to change the state of the law by filing Petitions for Review with the D.C. Circuit Court of Appeals. One such Petition for Review pending before the D.C. Circuit is the *ACA* Petition, which was filed on July 13, 2015. Though briefing on the *ACA* Petition recently completed, a decision is not expected until, conservatively speaking, early 2017.[2]

On May 5, 2016, Plaintiff initiated this action with a Class Action Complaint, alleging claims for negligent and willful violation of the TCPA against Caribou. (ECF No. 1.) On May 27, 2016, Plaintiff filed the First Amended Class Action Complaint (the "Complaint"), the operative pleading. The Complaint alleges that, between March 2016 and May 2016, Caribou transmitted approximately fifty (50) unsolicited SMS text message advertisements to Plaintiff's cellular telephone number (the "0640 Number"). (Complaint ¶ 14.)

On June 15, 2016, Caribou filed an Answer and Affirmative Defenses to the Complaint.[3] (ECF No. 11.) In its Answer, Caribou admitted that it operates the SMS short code "65017" and admitted that it sent SMS text messages to the 0640 Number. (Answer ¶ 15.)

Later in the day on June 15, 2016, Caribou filed the Motion to Stay, requesting that the Court put this entire dispute on ice, indefinitely, pending the D.C. Circuit's resolution of the *ACA* Petition. (ECF Nos. 12-13 (the "Motion" or "Mot.").)

---

[2] The median time from completion of briefing until disposition in the D.C. Circuit is fourteen months.

[3] Caribou admits that the Court has subject matter jurisdiction over this action. (Answer ¶ 2.)

### III. APPLICABLE LEGAL STANDARD

The standard for a stay pending the consideration of an unrelated case in another court was set out decades ago by the Supreme Court:

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance. True, the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.

*Landis v. North American Co.*, 299 U.S. 248, 254-55, 57 S.Ct. 248, 81 L.Ed. 153 (1936); *see also Woodman's Food Mkt., Inc. v. Clorox Co.*, No. 14-CV-734-SLC, 2015 WL 4858396, at *2 (W.D. Wis. Aug. 13, 2015) (Crocker, M.J.) ("[A] district court abuses its discretion when the stay is 'immoderate or indefinite.'" (quoting *Grice Engineering, Inc. v. JG Innovations, Inc.*, 691 F.Supp.2d 915, 920 (W.D. Wis. 2010) (Crabb, J.))); *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).

### IV. ARGUMENT

Caribou has failed to demonstrate that a stay pending resolution of the *ACA* Petition is warranted. Even if the D.C. Circuit rules precisely as Caribou hopes that it will, on any of the three issues discussed in the Motion to Stay, Caribou has still failed to demonstrate that any such ruling will have an impact on this litigation. Moreover, the D.C. Circuit will not be considering these issues on a "clean slate." *See Frydman v. Portfolio Recovery Assocs., LLC*, No. 11-cv-524, 2011 WL 2560221, at *4 (N.D. Ill. June 28, 2011). Rather, there is a long line of FCC rulings interpreting these terms, dating back up to twelve years to a Report and Order issued in 2003 ("2003 FCC Order").[4] Since 2003, the FCC has consistently implemented the TCPA and provided additional guidance in the form of orders and declaratory rulings.[5] Numerous courts nationwide have found the FCC's rulings

---

[4] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC Report and Order*, CG Docket No. 02-278, 18 FCC Rcd. 14014 (July 3, 2003).

[5] *See, e.g. In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC Declaratory Ruling*, CG Docket No. 02-278, 23 FCC Rcd. 559 (Jan. 4, 2008) (hereinafter "2008 Declaratory Ruling").

persuasive and have applied the TCPA accordingly. In light of this long line of consistent precedent, there is only a remote, speculative chance that the D.C. Circuit will issue a ruling that will impact this litigation. The Motion to Stay should be denied.

### A. Caribou Has Failed to Demonstrate That Any of The Issues It Hopes The D.C. Circuit Will Rule Upon Are Even Implicated In This Case.

Caribou contends that a stay is warranted because the D.C. Circuit may review the definitions of certain terms used in the TCPA – "capacity," "called party," and "revocation" of consent – and the D.C. Circuit's review could have an impact on this litigation. (Mot. at 6-10.)

However, Caribou has failed to present any evidence in support of the Motion to Stay suggesting (1) that Caribou's dialing system does not have the present capacity to dial random or sequential numbers such that it will not fall within the definition advocated for in the *ACA* Petition, if adopted; (2) that Plaintiff possesses a number previously belonging to a subscriber of Caribou's texting program who consented to receive text messages; or (3) that Plaintiff consented to receive Caribou's text messages (she unequivocally alleges that she <u>did not</u>) and later sought to revoke such consent.

        i.     There Is No Evidence Suggesting That the Technology Caribou Used to Text Plaintiff and the Putative Class Members Would Qualify As An ATDS Under the FCC's Definition But Not Under the Definition Advocated For In the *ACA* Petition.

With respect to the issue of the "capacity" of dialing systems, Caribou baldly asserts:

> [I]f the D.C. Circuit agrees with the appellants and holds that an autodialer means only a machine that dials numbers randomly or sequentially, Plaintiff would have no claims against Caribou, because text messages that Caribou allegedly sent Plaintiff were sent using a database of numbers, implicating the challenged portion of the FCC rule. There is nothing 'random' or 'sequential' about Caribou's text messages.

(Mot. at 7.) However, Caribou presents no evidence whatsoever in support of this assertion, and is apparently asking Plaintiff, the putative Class members, and the Court to simply "take its word for it" that it sends text messages "using a database" and that "there is nothing 'random' or 'sequential' about [its] text messages." That is not the way the adversarial process works.

Moreover, the allegations of the Complaint directly contradict Caribou's assertion that "there is nothing 'random' or 'sequential'" about its text messages:

> [T]he hardware and software used by [Caribou] to send such messages have the capacity to store, produce, and dial random or

> sequential numbers, and/ or receive and store lists of telephone numbers, and to dial such numbers, en masse, in an automated fashion and without human intervention.

(Complaint ¶ 22 (emphasis added).) These allegations, if true, place Caribou's dialing system squarely within the meaning of the term "autodialer" used in the TCPA, see 47 U.S.C. 227(a)(1) (defining autodialer as "equipment which has the capacity … to store or produce telephone numbers to be called, using a random or sequential number generator"), and thus squarely within the definition advocated for in the *ACA* Petition.

The Complaint adequately alleges that Caribou sends its SMS text messages with equipment that constitutes an ATDS even under the definition advanced in the *ACA* Petition, and Caribou has presented no evidence to suggest otherwise. Thus, Caribou has failed to demonstrate that even the ruling it hopes the D.C. Circuit issues will impact this case. The district court in *Konopca v. Comcast Corp.*, No. CV156044FLWDEA, 2016 WL 1645157 (D.N.J. Apr. 26, 2016), recently denied a motion to stay pending resolution of the *ACA* Petition for this exact reason:

> Defendant argues that two potentially dispositive threshold issues in this case are whether Comcast used an "automatic telephone dialing system" and had the consent of the "called party." However, other than pointing baldly to the allegations in the Complaint, Defendant makes no showing that there are specific disputes in this case that turn on the FCC's ruling. For example, there is no assertion that technology used to place the calls at issue would qualify as an "automatic telephone dialing system" under one interpretation of the term but not under another. Absent such a showing, this Court cannot conclude that a stay of this case would further the interests of judicial economy. Moreover, as noted earlier, there are issues in this litigation that fall outside the scope of the FCC's ruling and upon which the pending appeal to the D.C. Circuit will have absolutely no impact. This factor, therefore, weighs against entering a stay.

*Konopca*, 2016 WL 1645157, at *4. Likewise in this case, there is no reason to believe that any ruling the D.C. Circuit issues regarding the term ATDS will impact this litigation.

Although Caribou cites to *Gensel v. Performant Techs., Inc.*, No. 13-C-1196, 2015 WL 6158072 (E.D. Wis. Oct. 20, 2015), in support of its requested stay, the reasoning of the district court there only further underscores why a stay is not appropriate here. In *Gensel*, the district court stayed the case pending the D.C. Circuit's resolution of the ATDS issue because the parties, unlike the parties here, did not dispute that the defendant's dialing technology lacked the capacity to randomly or sequentially call phone numbers. The district court explained:

> Finally, and most importantly, if the Seventh Circuit were to rule that 'capacity' means 'present capacity' in accordance with the plain language of the statute, such a ruling would be dispositive of the instant case because <u>it is undisputed that Performant's telephony system did not and does not have the capacity to randomly or sequentially call phone numbers</u>. Therefore, the Court finds that a stay pending the outcome of the appeals from the FCC's July 10 Declaratory Ruling and Order is in the interest of judicial economy.

*Gensel*, 2015 WL 6158072, at *2 (emphasis added). The opposite is true here. Because the issue of whether Caribou's technology has the capacity to randomly or sequentially call phone numbers is plainly in dispute, the decision in *Gensel* demonstrates why a stay is unwarranted in this case.

Finally, even if the D.C. Circuit rules precisely as Caribou hopes, and even assuming Caribou sends its text messages from a "database of numbers," the D.C. Circuit's ruling would not be binding legal authority in the Seventh Circuit. The Seventh Circuit would still be entitled to decide in the first instance whether Caribou's dialing technology is an ATDS within the meaning of the TCPA. *Cf., e.g., id.* (explaining that "<u>if the Seventh Circuit were to rule</u> that 'capacity' means 'present capacity' in accordance with the plain language of the statute, such a ruling would be dispositive of the instant case[.]").

Accordingly, the interests of judicial economy will not be served by staying this litigation pending resolution of the *ACA* Petition's challenge to the definition of ATDS.

        ii.    There Is No Evidence That Plaintiff Possesses a Cellular Telephone Number That Was Reassigned from Someone Who Previously Provided Caribou <u>Consent to be Texted</u>.

Caribou asserts the following with respect to the "reassigned" number issue:

> Petitioners ask the D.C. Circuit to recognize that interpreting 'called party' to mean the intended recipient of the call or text message is more consistent with both the natural meaning of the term 'called party' as well as Congress's stated purposes for the TCPA. <u>Plaintiff may not have been the intended recipient</u> of Caribou's text messages. Accordingly, if the D.C. Circuit agrees with the petitioners and holds that the called party refers to the intended recipient, <u>Plaintiff may have no claims</u> against Caribou.

(Mot. at 8 (emphasis added).)

Thus, Caribou has not only failed to present any evidence suggesting that Plaintiff has a reassigned number, Caribou actually admits that it has no idea whether Plaintiff has a reassigned number. *See id.* (Plaintiff "may" not have been intended recipient, and Plaintiff "may have no claims

against Caribou"). And the Complaint contains no allegations either way. Until discovery is taken on this issue, and until Plaintiff's cellular records can be compared against Caribou's outgoing and incoming call log, Plaintiff has no way of determining whether she was the intended recipient or whether a previous subscriber consented to receive text messages from Caribou. Because Caribou has failed to demonstrate that even the ruling it hopes the D.C. Circuit issues will impact this case, the interests of judicial economy will not be served by staying this litigation pending resolution of the *ACA* Petition's challenge to the definition of "called party."

Moreover, even if this is a reassigned number case, Caribou ignores the fact that the Seventh Circuit has already issued controlling legal authority interpreting the meaning of "called party", unequivocally holding that "called party" does not mean the intended recipient of a call or text, but rather means the "current subscriber or customary user" of the number at the time a call or text is transmitted. *See Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 639–40 (7th Cir. 2012). As the district court in *Gensel* explained:

> Performant pins its hopes on the expectation that the appellate courts, particularly the Seventh Circuit, will overrule the FCC. This seems unlikely on the number reassignment/safe harbor issue. [T]he Seventh Circuit has already held that '[c]onsent to call a given number must come from its current subscriber,' *Soppet*, at 641, and three of the five FCC Commissioners generally agree with that conclusion, subject to the limited safe harbor discussed herein.

*Gensel*, 2015 WL 6158072, at *2. Thus, even in the unlikely event the D.C. Circuit weighs in on the "reassigned number" issue, its ruling would not override the Seventh Circuit's holding in *Soppet*.

Accordingly, the interests of judicial economy will not be served by staying this litigation pending resolution of the *ACA* Petition's challenge to the definition of "called party". **See, e.g.,** *Helwig v. Diversified Consultants, Inc.*, No. 14-CV-854-BBC, 2015 WL 1520916, at *4 (W.D. Wis. Apr. 3, 2015) ("Staying this case indefinitely to await a possible ruling that may affect the outcome of this case does not promote judicial economy and is unfair to plaintiff, especially when there is well-established law in this circuit.").

        iii.    There is No Evidence That Plaintiff Ever Provided Consent to Caribou Such That She Could Revoke Consent, Or That She Ever Attempted to Revoke Consent in a Manner Inconsistent With the Method Advocated For In the <u>*ACA* Petition</u>.

Caribou asserts: "The petitioners argue the FCC's approach creates particular problems for companies such as Caribou that send automated text messages, because technological barriers

currently prohibit programming a system to recognize every individual means of revoking consent. See Petitioners Brief at 56. The D.C. Circuit's ruling on revocation of consent may also impact Plaintiff's claims." (Mot. at 8.)

This argument is unpersuasive. First, the Complaint alleges that Plaintiff never provided any form of consent, written or otherwise, to Caribou to sent her text messages, and in fact never provided her number to Caribou at all. Caribou submits no evidence suggesting otherwise. Because Plaintiff never provided consent in the first instance, the issue of whether Plaintiff properly revoked consent has no bearing whatsoever on this case. If consent was never provided, then there is no consent to revoke. Moreover, even if Plaintiff had originally consented to receive text messages from Caribou (and she absolutely did not), Caribou not only fails to articulate a line between proper and improper methods of revoking consent, Caribou altogether fails to demonstrate that Plaintiff attempted to revoke consent on the supposedly improper side of the line.

### B. Even If the D.C. Circuit Could Theoretically Issue A Ruling Impacting This Case, It Is Extremely Unlikely That Any Such Order Will Actually Issue.

Even assuming Plaintiff has a reassigned number, or that Caribou's automated dialing system somehow lacks the capacity to randomly or sequentially call phone numbers, or that Plaintiff somehow consented to receive text messages and then failed to properly revoke her consent, a stay is still not warranted because (1) the D.C. Circuit may well never even reach any of these issues; and (2) even assuming the D.C. Circuit were to reach one or more of these issues, the 2015 FCC Order will most likely be upheld because it is consistent with over a decade of prior FCC rulings on each issue and is entitled to substantial deference.

i. There Is No Guarantee The D.C. Circuit Will Even Reach the Issues That Are the Subject of the Motion to Stay.

Caribou's argument that the D.C. Circuit's ruling will influence this case is even more speculative given that it relies on the assumption that the D.C. Circuit has the issues discussed above squarely before it, when it actually does not. The 2015 FCC Order addresses roughly 12 separate issues regarding the TCPA, and there is no guarantee that the D.C. Circuit will reach the merits of the specific issues that Caribou raises in its Motion to Stay. *See, e.g., Dish Network, LLC v. FCC*, 552 F. App'x 1, 1 (mem) (D.C. Cir. Jan. 22, 2015) (dismissing a petition for review on jurisdictional grounds and declining to reach the substance of the FCC's guidance). Therefore, any ruling by the D.C. Circuit, to the extent the court even reaches the merits of the *ACA* Petition, might be completely irrelevant to this litigation.

      ii.  Even If the D.C. Circuit Reaches Any of The Issues That Caribou Raises in its Motion to Stay, the D.C. Circuit Will Likely Uphold the 2015 FCC Order.

  To the extent the D.C. Circuit reaches the issues that are the subject of the Motion to Stay – on reassigned numbers, ATDS or revocation of consent – the 2015 FCC Order will most likely be upheld in light of the settled nature of the law and the presumption of correctness afforded to the FCC's determinations.

      a. *The FCC's Prior Determinations and Numerous Judicial Opinions Confirm the Correctness of the 2015 FCC Order.*

  The issues raised in the Motion to Stay are all well-settled in the FCC and the federal district and circuit courts across the country.

  The FCC's explanation of "capacity" is firmly established FCC precedent, dating back to the 2003 FCC Order. (*See* 2003 FCC Order at ¶ 131.) In the 2003 FCC Order, the FCC acknowledged that, under the specific terms of the TCPA, "in order to be considered an 'automatic telephone dialing system,' the equipment need only have the 'capacity to store or produce telephone numbers (emphasis added)[.]'" (*Id.* at ¶ 132) (quoting 47 U.S.C. 227(a)(1)). In discussing "capacity," the FCC explained that certain types of calling equipment will constitute an ATDS even though they cannot presently store or produce telephone numbers without the addition of "certain software." (2003 FCC Order at ¶ 131.) The FCC reiterated this position in its 2008 Declaratory Ruling, in which it *rejected* arguments that dialing equipment is an ATDS "only when it randomly or sequentially generates telephone numbers[.]" (2008 Declaratory Ruling at ¶ 12.)

  Thus, the recent 2015 FCC Order – "[b]y finding that, even when the equipment presently lacked the necessary software, it nevertheless had the requisite capacity to be an [ATDS]" – only further clarified what the FCC stated in the 2003 FCC Order. (2015 FCC Order at ¶ 16; *see also* 2015 FCC Order at ¶¶ 10–16.) Caribou paints the FCC's efforts to clarify and reiterate its position as a rogue ruling outside its regulatory authority. Quite the contrary, the FCC's statements flow from consistent FCC precedent, and simply echo Congress's "need to consider changes in technologies," and its concerns that telemarketers may try to circumvent the TCPA. (*Id.* at ¶ 22 n.79.)

  Caribou also argues that this case should be stayed because the D.C. Circuit may hold that "called party" means "intended recipient." However, all three courts of appeals that have considered this issue have rejected Caribou's suggestion that "called party" means "intended recipient." *See Soppet,* 679 F.3d at 640, 643 (ruling that "called party" means the person subscribing to the number at the time it was called, and rejecting as completely unjustified the argument that "called party"

means "intended recipient"); *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1252 (11th Cir. 2014) ("[w]e accordingly reject [defendant]'s argument that the 'intended recipient' is the 'called party'"); *Leyse v. Bank of Am. Nat. Ass'n*, No. 14-cv-4073, 2015 WL 5946456, at *4 (3d Cir. October 14, 2015) (reversing because lower court incorrectly held that standing to sue under the TCPA was limited to the "intended recipient" and holding that the "caller's intent" cannot "circumscribe standing" to sue under the TCPA).

The rulings by the Third, Seventh, and Eleventh Circuits mirror the FCC's own rulings. The FCC has steadfastly maintained that "called party" refers to the party who was actually called, whether that is the cell phone subscriber, i.e. the one who subscribes to the cell phone plan, or the person who actually received the call, sometimes called the "customary user." (2015 FCC Order at ¶ 73 n.264, ¶ 78; 2008 Declaratory Ruling at ¶ 9.) Against this backdrop, Caribou's assertion that defining "called party" to be the "intended recipient" would be "more consistent with both the natural meaning of the term … as well as Congress's stated purpose for the TCPA" (Mot. at 7) is dubious at best. *See, e.g., King v. Time Warner Cable*, No. 14-cv-2018, 2015 WL 4103689, at *3 (S.D.N.Y. July 7, 2015) (finding that "the issue is not nearly as contested as [the defendant] portrays it . . . [T]he Court is not aware of any decision that has found 'called party' to mean 'meant-to-have-called party.'").

According, a long line of FCC rulings and numerous federal district and circuit court opinions confirm the correctness of the determinations in the 2015 FCC Order. The D.C. Circuit is likely to reach the same conclusion.

> b. *The D.C. Circuit Must Defer to the FCC's Rulings, Including the 2015 FCC Order, So Long As the FCC Articulated a Rational Connection Between the Facts Found and the Determinations Reached.*

Caribou fails to mention the extremely deferential standard for review under which the 2015 FCC Order will be evaluated. When a party challenges an agency order in the D.C. Circuit as being "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), the agency's action will be upheld as long as the agency "articulated a rational connection between the facts found and the choice made." *ADX Commc'ns of Pensacola*, 794 F.3d at 79 (internal citations omitted). Such review is "highly deferential," and the agency's action is presumed valid. *Vernal Enterprises, Inc.*, 355 F.3d at 658. The D.C. Circuit will defer to the FCC's "interpretation of its own rules" and "reasonable application of its own precedents." *ADX Commc'ns of Pensacola*, 794 F.3d at 79. Accordingly, the D.C. Circuit will start with the presumption that the 2015 FCC Order is

valid and defer to the FCC's definitions of "called party," "capacity" and "revocation" of consent – definitions which, as explained above, are supported by well-established FCC precedent as well as numerous court rulings. It is at best speculative to argue that the D.C. Circuit will contradict multiple other circuit courts, as well as established FCC precedent, given the highly deferential standard of review that applies.

### C. The Vast Majority of Courts Have Declined to Stay Litigation Pending Resolution of the D.C. Circuit's Review of the 2015 FCC Order.

Numerous courts have rejected stays pending a challenge to an FCC order. Time and again, courts have found a stay unwarranted in light of the consistent body of decisional law on the very TCPA issues that Caribou claims are somehow in flux. Many of these cases involved a stay pending a petition directly to the FCC, but the courts' reasoning is equally applicable here. For example, in *Whiteamire Clinic, P.A., Inc. v. Quill Corp.*, No. 12-cv-5490, 2013 WL 4782161 (N.D. Ill. Sept. 6, 2013), the defendant moved for a stay pending resolution of a petition that it filed with the FCC asking the FCC to revisit its regulations on fax advertisements. *Id.* at *1–2. There, as here, the movants argued that the issues addressed in their petition would be "dispositive of the case" and that staying the case pending guidance on those issues would "promote the interests of judicial economy and conserve party resources[.]" *Id.* at *1. The *Whiteamire* court denied the request, finding that because the FCC's position supporting the regulations was "clear and unwavering," the "chances" of the regulations being "overrul[ed] . . . appear[ed] remote." *Id.* at *2. The court found that because the defendant failed to establish that an FCC ruling repealing the regulations was "likely," it had "failed to establish that a stay would be an appropriate means of conserving judicial resources." *Id.*

Here, as in *Whiteamire*, the chance that the D.C. Circuit will overrule the FCC on any of these issues is remote at the very best. An indefinite stay on such a speculative basis – where a party merely hopes that an appellate court in a different circuit might change an agency's rulemaking – is unwarranted. *See Itex, Inc. v. Mount Vernon Mills, Inc.*, No. 08 CV 1224, 2010 WL 3655990, at *2 (N.D. Ill. Sep. 9, 2010) (finding it "overly speculative" to stay a case based on the chance that a patent, which had already been held valid twice, would be invalidated by another court examining the same patent); *see also Dister v. Apple-Bay East, Inc.*, No. C 07-01377 SBA, 2007 WL 4045429, at *5 (N.D. Cal. Nov. 15, 2007) ("[O]nly in rare circumstances will a litigant in one case be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.") (internal citation and brackets omitted).

Because Caribou has failed to establish that a ruling overturning the 2015 FCC Order on any of these issues is "likely," there is nothing to suggest that a stay would actually conserve "judicial resources." *Whiteamire*, 2013 WL 4782161, at *2. The Motion to Stay should be denied.

### D. The Prejudice that Plaintiff and the Putative Class Will Suffer If The Case Is Stayed Greatly Outweighs Any Prejudice that Caribou Will Suffer Absent a Stay.

      i.    Caribou Has Failed to Carry Its Burden of Demonstrating a Clear Case of Hardship or Inequity Absent a Stay.

Caribou cannot articulate any real prejudice that it would suffer by moving forward. Caribou merely states that, absent a stay, it will incur "significant prejudice" because it will be "force[d] . . . to engage in discovery and other litigation about whether its equipment is an autodialer[.]" (Mot. at 11). But "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer*, 398 F.3d 1098, 1112. For this reason alone, Caribou's Motion to Stay should be denied.

Furthermore, regardless of the decision by the D.C. Circuit, the parties will still need to obtain the relevant facts in discovery, as well as the expert opinions necessary, for the Court to apply the law to the undisputed facts. For example, even if the D.C. Circuit changes or invalidates the FCC's interpretations of terms in the TCPA (like "capacity" and "called party"), the elements of a TCPA claim will remain the same. See 47 U.S.C. § 227(b)(1)(A). Thus, discovery will still be necessary for this Court to determine, in light of the D.C. Circuit's ruling, whether the calling equipment that Caribou actually used qualifies as an ATDS under the TCPA and whether the people who received those messages ever gave prior express consent to receive them.

Because staying this case pending resolution of the *ACA Petition* will not materially impact either the type or amount of discovery required, the more effective and efficient course of action would be to permit the parties to continue with discovery without any unjustified delay. *See, e.g., Lathrop v. Uber Techs., Inc.*, No. 14-CV-05678-JST, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016) (denying motion to stay because "although the decision in ACA International may vacate portions of the 2015 FCC Order, discovery in this case will be required regardless of the outcome in that one."); *Lee v. loanDepot.com, LLC*, No. 14-1084-MLB, 2015 WL 5032175, at *3 (D. Kan. August 25, 2015) (citing *Pimental v. Google, Inc.*, 2012 WL 1458179, at *5 (N. D. Cal. Apr. 26, 2012) (finding that, to the extent the FCC may rule on issues pertinent to the district court case, there is no risk of inconsistent rulings because the FCC ruling should occur before the issues are presented to the

Court or a jury. Also noting a stay would not "permit the parties to obtain the discovery necessary to resolve the factual disputes Defendants raise in their Answer.")).

                ii.        Plaintiff and the Putative Class Will Be Severely Prejudiced If This Case Is Indefinitely Put on Ice.

A stay of this case pending resolution of the *ACA Petition* would only serve to delay this litigation and cause prejudice to Plaintiff. The 2015 FCC Order is long and complex; at 138 pages including appendices, the Order resolved 21 requests for clarification and addressed roughly 12 separate legal issues. (2015 FCC Order at ¶ 2.) As such, it will take the D.C. Circuit a substantial amount of time to consider and rule on the Petition. Such a stay would be extremely lengthy, if not nearly indefinite, as the D.C. Circuit is unlikely to rule on the *ACA* Petition until, at the very earliest, five months from now.

Even this conservative timeframe does not account for a potential appeal to the Supreme Court if and when the D.C. Circuit rules on the *ACA* Petition – a point that Caribou ignores entirely. Accepting Caribou's logic would require this Court to extend the stay pending Supreme Court review, which would further delay this case nearly indefinitely. *See, e.g., Lathrop*, 2016 WL 97511, at *4 (denying motion to stay because "the D.C. Circuit is unlikely to be the final step in the litigation over the FCC's 2015 Omnibus Order. Whichever party is unsuccessful in that court is almost certain to appeal to the Supreme Court. Thus, even the most optimistic estimate of the time required for a decision from the D.C. Circuit significantly understates both the delay a stay might engender and the concomitant prejudice to Plaintiff."); *see also Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000).

Caribou is wrong to suggest that Plaintiff and the putative Class will not be prejudiced by this delay. The stay Caribou requests would derail this litigation for an unreasonably excessive and indeterminate length of time. Unlike the ordinary delay inherent in litigation, this extended, "open-ended stay will likely cause delay and prejudice to Plaintiffs' case." *See Molnar v. NCO Fin. Sys., Inc.*, No. 13-cv-00131, 2015 WL 1906346, at *4 (S.D. Cal. April 20, 2015) (denying motion to stay on primary jurisdiction grounds where "there is nothing to suggest the FCC will imminently rule" on the issues before it). Stays increase the "risk that evidence will disappear and witness memories will fade[.]" *McColm v. San Francisco Hous. Auth.*, No. C 02-5810 PJH, 2007 WL 1342502, at *5 (N.D. Cal. May 8, 2007); *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002) ("Unnecessary delay inherently increases the risk that witnesses' memories will fade and evidence will become stale.") This is particularly concerning in putative class actions such as this one, where the ability to reach class

members diminishes over time, and taking an additional several months to determine whether a class should be certified and to notify that class would have an objectively measurable harm on putative class members.

Staying this case for an unknown but undoubtedly inordinate amount of time would prevent the parties from going forward with discovery and preparing for class certification. This would be highly prejudicial to Plaintiff and the putative Classes. Plaintiff has suffered a concrete harm by having her legal rights violated by Caribou's willful violation of the TCPA – a statute designed to protect the rights of consumers. The longer this harm exists without redress, the greater the prejudice to Plaintiff and the putative class members. Indeed, Rule 23 of the Federal Rules of Civil Procedure specifically notes that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A) (emphasis added). The lengthy stay sought by Caribou flies directly in the face of Rule 23's insistence that class certification be timely decided.

Contrary to Caribou's repeated claims, this case will proceed in litigation regardless of what the D.C. Circuit decides. Both this Court and the public have an interest in an expeditious resolution to this dispute. The Motion to Stay should be denied in its entirety.

### V. CONCLUSION

For the foregoing reasons, the Motion to Stay (ECF Nos. 12-12) should be denied in its entirety.

Dated: June 30, 2016                           Respectfully submitted,

By: /s/ Frank S. Hedin

**CAREY RODRIGUEZ
MILIAN GONYA, LLP**

Frank S. Hedin
fhedin@careyrodriguez.com
David P. Milian*
dmilian@careyrodriguez.com
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone: (305) 372-7474
Facsimile: (305) 372-7475
*Petition for Admission Forthcoming

*Counsel for Plaintiff and the Putative Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 30, 2016, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Frank S. Hedin*