**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

---

KRISTIE FARNHAM, on behalf of herself                    CASE NO. 16-CV-00295-wmc
and all others similarly situated,

      Plaintiff,

v.

CARIBOU COFFEE COMPANY, INC.,

      Defendant.

---

**PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

TO ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT Plaintiff Kristie Farnham hereby moves on an unopposed basis for preliminary approval of the class-wide Settlement Agreement (attached hereto as Exhibit "A") entered into between Plaintiff and Defendant Caribou Coffee Company, Inc. ("Caribou").[1] In support of this motion, Plaintiff states:

**I.      INTRODUCTION**

The present case is a putative class action in which Plaintiff alleges Caribou transmitted text message advertisements to her and the Settlement Class Members' wireless telephone numbers via an "automatic telephone dialing system" (or "ATDS") without "prior express written consent," in alleged violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The Complaint seeks statutory damages for Plaintiff and the Settlement Class.

This litigation has been comprehensive and highly contentious. The Parties have

---

[1]      Unless otherwise defined herein, all capitalized terms have the same force, meaning and effect as ascribed in Section II ("Definitions") of the Settlement Agreement.

collectively prepared and filed two complaints and two answers, a motion to certify the class, a motion to stay, two motions to strike, supplemental briefing on various issues, numerous notices of supplemental authority, joint discovery and pretrial proposals, and a stipulated confidentiality order, among many others things. The Parties exchanged wide-ranging written and electronic discovery over the course of several months, on both individual merits and class certification-related issues. Plaintiff served subpoenas on five third parties, from whom she obtained thousands of pages of additional documents and voluminous electronically stored information. Additionally, Plaintiff retained one of the country's leading experts on cellular telephone technology and text message transmission systems to investigate the dialing technology used by Caribou and prepare a report on his findings. The considerable time and resources Plaintiff and her counsel invested in this case afforded them the opportunity, in advance of ever discussing settlement with Caribou, to meaningfully assess the strength of the class claims and the risks posed by continued litigation.

The settlement negotiations were just as hard fought. After ten hours of contentious, arms-length negotiations before the Hon. Morton Denlow (Ret.), a well-respected and experienced JAMS mediator and former U.S. Magistrate Judge for the Northern District of Illinois, the Parties agreed upon the principal terms of the proposed Settlement, which they later memorialized in the Settlement Agreement. After mediation and prior to execution of the Settlement Agreement, Plaintiff obtained additional confirmatory discovery from Caribou concerning, inter alia, the size of the proposed Settlement Class, by way of deposition pursuant to Federal Rule of Civil Procedure 30(b)(6).

The proposed Settlement provides substantial monetary and non-monetary relief to the Settlement Class. As set forth in the Settlement Agreement, Caribou has agreed to establish a

non-reversionary, all-cash Settlement Fund of **$8,500,000.00** (eight-million five-hundred thousand dollars), from which all Settlement Class Members who submit a Valid Claim will receive a pro rata share (after Notice and Administration Costs and any Attorneys' Fee Award and Service Award authorized by the Court are deducted from the Settlement Fund). Taking into account the anticipated claims rate, and after deducting the estimated Notice and Administration Costs and the maximum Attorneys' Fee Award and Service Award that proposed Class Counsel would request from the Court (assuming those requests are made and granted), each Settlement Class Member who submits a Valid Claim will receive a Cash Award of approximately **$200.00** – a sum that far exceeds what claimants typically receive in class settlements in the TCPA context.

Additionally, the proposed Settlement provides wide-ranging prospective relief to the Settlement Class. Pursuant to the Settlement, Caribou has agreed to: (1) altogether discontinue its text message marketing activities as of the Preliminary Approval Date (and instead market to mobile devices via a downloadable application, which does not implicate the TCPA); and, should Caribou begin transmitting text messages again in the future, (2) implement, and at all times going forward maintain, best practices policies and procedures that fully comply with the TCPA and related FCC regulations; and (3) institute and maintain significant TCPA compliance training of key personnel and enhancements to its systems aimed at preventing the transmission of text messages in violation of the TCPA.

The Settlement Agreement designates Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the Settlement Administrator to administer the Settlement Class Notice Program, under which the Class Notice will be provided both directly and via publication to the Settlement Class, easily satisfying due process and the requirements of Rule 23.

3

The Settlement represents an extraordinary result for the Settlement Class, both as compared to previous settlements in similar cases and given the considerable risk of total non-recovery posed by continued litigation. Accordingly, Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement, certify the proposed Settlement Class, appoint Plaintiff as Class Representative and her counsel as Class Counsel, approve the proposed Notice plan, and schedule a Fairness Hearing, as discussed in detail below.

## II.    BACKGROUND

### A.    The TCPA and the Meaning of "Automatic Telephone Dialing System"

The TCPA was enacted more than two decades ago in response to "[v]oluminous consumer complaints about abuses of telephone technology." *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 744 (2012). In passing the statute, Congress specifically sought to prevent "intrusive nuisance calls" to consumers that it deemed "invasive of privacy," *see id.*, and set statutory damages in the amount of $500 per violation (which may be trebled if the conduct is found willful) as well as provided for injunctive relief. *See* 47 U.S.C. § 227(b)(3)(A)–(C).

The TCPA and its implementing regulations specifically prohibit the transmission of marketing text messages to cellular phones via an "automatic telephone dialing system" (or "ATDS"), absent the "prior express written consent" of the called party. 47 U.S.C. § 227(b)(1)(A)(iii). To prove a violation of the TPCA, the plaintiff has the burden of demonstrating, inter alia, that the defendant's calls or text messages were sent via an ATDS, which is defined in the statute as any dialing equipment that "ha[s] the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator." 47 U.S.C. § 227(a)(1).

In a July 2015 declaratory order, *In re Rules and Regulations Implementing the*

4

*Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 (2015) (hereinafter the "2015 FCC Order") (emphasis added), the FCC clarified the meaning of the term ATDS to broadly include "dialing equipment [that] generally has the capacity to store or produce, and dial random or sequential numbers . . . even if it is not presently used for that purpose, including when the caller is calling a set list of consumers." 2015 FCC Order ¶ 10. That clarification was immediately appealed by ACA International and other petitioners to the U.S. Court of Appeals for the D.C. Circuit.

In *ACA Int'l v. FCC*, No. 15-1211 (D.C. Cir. filed July 10, 2015), the petitioners seek an order from the D.C. Circuit vacating the 2015 FCC Order's interpretation of ATDS as contrary to the plain language of the statute and as exceeding the FCC's rulemaking authority. The primary issue before the court is whether the "capacity" to randomly or sequentially store or produce telephone numbers to be called requires that the equipment be presently configured to do so, or merely potentially capable of doing so. The appeal in *ACA Int'l* was pending when Plaintiff initiated this action and at the time of mediation, and it remains pending today.  Oral argument was held on October 19, 2016 and a decision is imminent.

**B.    History of this Litigation**

On May 5, 2016, following an extensive pre-filing investigation[2], Plaintiff initiated this action with a class action complaint, alleging claims for negligent and willful violation of the TCPA against Caribou. (ECF No. 1.)  On May 27, 2016, Plaintiff filed a first amended class

---

[2]    In the weeks preceding the filing of the Complaint, Plaintiff and her counsel investigated all aspects of this case, including, inter alia, the means by which Caribou acquired consumers' cellular telephone numbers, the dialing technology used by Caribou to deliver text messages, and issues concerning Plaintiff's cellular telephone provider. *See* Declaration of Frank S. Hedin ("Hedin Decl.") ¶ 8, attached hereto as Exhibit "B".  Counsel conducted numerous interviews of Plaintiff and reviewed numerous documents and electronic data provided by Plaintiff and other various material available online concerning Caribou's marketing affiliates.  (*Id.*)

action complaint (ECF No. 8 (the "Complaint")), the operative pleading. The Complaint alleges that Caribou violated the TCPA by transmitting text message advertisements to Plaintiff's and the Settlement Class Members' cellular telephone numbers without prior express written consent. Plaintiff alleged receiving approximately fifty (50) such text messages over the course of two months, and further alleged that Caribou sent the texts via an ATDS.

On June 15, 2016, Caribou filed an Answer to the Complaint, asserting the following affirmative defenses: (1) failure to state a claim; (2) lack of standing; (3) lack of causation; (4) failure to mitigate damages; (5) lack of damages; (6) consent; (7) federal preemption; (8) statute of limitations; (9) excessive fines and due process; (10) claims not properly certifiable under Rule 23; and (11) reservation of rights to add additional defenses. (ECF No. 11.) On July 2, 2016, Plaintiff filed a motion to strike the affirmative defenses asserted in the Answer pursuant to Federal Rule of Civil Procedure 12(f). (ECF Nos. 16-17.)

Also on June 15, 2016, Caribou moved to stay the case pending the D.C. Circuit's resolution of *ACA Int'l*, contending that its dialing technology used to transmit text messages lacks the "present capacity" to randomly or sequentially store or produce telephone numbers to be called, and that a favorable decision for Caribou in *ACA Int'l* would thus foreclose Plaintiff's claims for relief. (ECF Nos. 12-13 (the "Motion to Stay").) On July 1, 2016, Plaintiff filed an opposition to the Motion to Stay, arguing that the decision in *ACA Int'l* cannot possibly impact this case because Caribou's technology constitutes an ATDS under the pre-2015 definition no less than under the 2015 FCC Order. (ECF No. 14.) Over the following several months, the Parties filed additional briefing and evidence (ECF Nos. 20-23) and numerous notices of supplemental authority (ECF Nos. 26-27, 29-30, 33, 39, 41-43) in support of and in opposition to the Motion to Stay.

On July 6, 2016, Caribou filed an Amended Answer to the Complaint, asserting the following affirmative defenses: (1) lack of standing; (2); lack of damages; (3) lack of causation; (4) failure to mitigate damages; (5) consent; (6) excessive fines and due process; and (7) claims not properly certifiable under Rule 23.  (ECF No. 19.)  On July 24, 2016, Plaintiff filed a motion to strike the affirmative defenses asserted in the Amended Answer pursuant to Federal Rule of Civil Procedure 12(f).  (ECF Nos. 31-32.)

On July 18, 2016, Plaintiff filed a motion for class certification pursuant to Federal Rule of Civil Procedure 23, which was a placeholder motion designed to protect the interests of the class by obviating any risk of Caribou mooting Plaintiff's individual stake in the litigation by depositing funds with the Court equal to or in excess of the maximum value of Plaintiff's claim and having the Court enter judgment in Plaintiff's favor (ECF No. 25).  (Hedin Decl. ¶ 13.) Plaintiff requested that the Court defer briefing on the motion for class certification until after the completion of class discovery -- a request the Court granted in an Order dated July 19, 2016 (ECF No. 28).

On March 9, 2017, the Court denied Caribou's Motion to Stay without prejudice, finding that the D.C. Circuit's ruling in *ACA Int'l* "may not be dispositive of plaintiff's claims." (ECF No. 47 n.1 (emphasis added).)

### C.    Discovery

At the outset of this case, on May 27, 2016, Plaintiff's counsel served a preservation letter on Caribou's counsel, identifying in detail the categories of documents, communications, electronically stored information ("ESI") and other data likely to be requested by Plaintiff in discovery later in the case.  (Hedin Decl. ¶ 10.)  The letter demanded that all such material be preserved in original native format.  (*Id.*)

On July 24, 2016, the Parties met and conferred on the various discovery and pretrial matters listed in the Court's Standing Order Governing Preliminary Pretrial Conferences and Federal Rule of Civil Procedure 26(f) (*id.* ¶ 14), after which the Parties prepared and filed a Joint Discovery Plan and Preliminary Pretrial Report (ECF No. 34), which included their respective proposals for the sequence and timetable for discovery (Hedin Decl. ¶ 15). On August 4, 2016, the Parties appeared before U.S. Magistrate Judge Stephen L. Crocker during a telephonic preliminary pretrial conference; Judge Crocker set various pretrial and trial deadlines, and ordered that discovery be stayed until October 11, 2016, at which time it was to commence without bifurcation. On August 8, 2016, the Court issued the Preliminary Pretrial Conference Order memorializing the various deadlines set by Judge Crocker, accompanied by several documents containing the rules and procedures governing the Parties in this case. (ECF No. 36.)

On October 11, 2016, discovery commenced pursuant to the Court's preliminary pretrial conference order (ECF No. 36 at 3) and Plaintiff served requests for production of documents and interrogatories on Caribou, seeking wide-ranging discovery on issues critical to both the merits of Plaintiff's claims and the certification of the Settlement Class. (Hedin Decl. ¶¶ 17-18.) On October 25, 2016, the Parties exchanged initial disclosures pursuant to Federal Rule of Civil Procedure 26(a). (*Id.* ¶ 19.) On October 26, 2016, Caribou served requests for production of documents and interrogatories on Plaintiff, also seeking documents and information relating to both merits and class certification. (*Id.* ¶ 20.)

The Parties engaged in extensive discovery over the next four months, involving the preparation of an Agreed Confidentiality Order (ECF No. 43-1), the mutual exchange of voluminous responsive documents, communications and ESI, and numerous follow-up requests resulting from the Parties' analysis of previously-produced materials. (Hedin Decl. ¶ 21;

Declaration of David P. Milian ("Milian Decl.") ¶ 14, attached hereto as Exhibit "C".)   The Parties held many discovery conferences to address objections to particular requests and the sufficiency of certain productions; these discussions were thorough and, at many points, contentious, as the Parties' views differed greatly with respect to several key issues, in particular the appropriate scope of class-related discovery. (*Id.*)

At the same time the Parties were exchanging discovery amongst themselves, Plaintiff was also seeking documents, ESI and other materials via subpoena from various third parties, including Caribou's text marketing affiliates 3Seventy, Inc. ("3Seventy") and Givex Corporation ("Givex"), the wireless telephone carriers Sprint Corporation ("Sprint") and Republic Wireless, Inc., ("Republic Wireless") and an individual formerly employed by Caribou's marketing department.  (Hedin Decl. ¶ 22; Milian Decl. ¶ 15.)  Plaintiff's counsel engaged in numerous lengthy negotiations with counsel for the third parties concerning the scope of the documents and ESI requested and the forms of production, ultimately receiving several thousand additional pages of documents and extremely complex and voluminous ESI, all of which proved critical to evaluating the strength and weaknesses of Plaintiff's case and the likelihood of winning class certification.  (Hedin Decl. ¶ 23; Milian Decl. ¶ 16.)

Plaintiff subsequently retained the assistance of Mr. Randall Snyder, one of the country's foremost experts on automated dialing technology, including automated cellular communication via SMS text message, to serve as an expert witness in this case concerning the dialing technology used by Caribou to deliver text messages and the identities of individuals whose telephone numbers appear in Caribou's records.  (Hedin Decl. ¶ 24; Milian Decl. ¶ 17.)  Mr. Snyder reviewed and analyzed the complex written and electronic discovery produced by Caribou, 3Seventy, Givex, Sprint and Republic Wireless, and prepared a written report

regarding, inter alia, the feasibility of identifying Settlement Class Members in Caribou's records and the nature of the technology used by Caribou to deliver its text messages. (*Id*.)  Mr. Snyder's report is 45 pages long, well-reasoned and extremely helpful in understanding the complexities of this case.  (*Id*.)

As a result of this extensive discovery process, involving the production of materials from Caribou and various third parties and the preparation of an expert report on the issues most critical to liability and class certification, Plaintiff's counsel was in a position to intelligently assess the strengths and weaknesses of the Settlement Class Members' claims and Caribou's defenses. (Hedin Decl. ¶ 25; Milian Decl. ¶ 18.)

### D.    Settlement Discussions, Mediation and Confirmatory Discovery

In late-January 2017, the Parties agreed to attend private mediation in an attempt to resolve this case on behalf of the Settlement Class.  (Hedin Decl. ¶ 26; Milian Decl. ¶ 19.)  On February 8, 2017, the Parties notified the Court that they had agreed to attend mediation, and filed a motion to extend certain discovery and class certification related deadlines in view of the upcoming mediation, which the Court granted. (ECF No. 45.)

The Parties proposed various different mediators, and after several meet and confers scheduled mediation for April 13, 2017 in Chicago, Illinois before the Hon. Morton Denlow, a well-respected and experienced JAMS mediator and former U.S. Magistrate Judge for the Northern District of Illinois.  (Hedin Decl. ¶ 27.)

In advance of the mediation, Plaintiff's counsel requested, and Caribou's counsel provided, additional documents pertaining to, inter alia, the size and scope of the Settlement Class and various insurance-related information, including letters of declination for each of Caribou's policies.  (*Id*. ¶ 28; Milian Decl. ¶ 21.)  The Parties also exchanged confidential

mediation statements and proposed term sheets ahead of mediation, thoroughly articulating their respective positions on each of the key legal issues relating to liability, class certification and damages exposure. (*Id*.)

At mediation on April 13, 2017, the Parties discussed their competing views on various issues, including the relief to which the Settlement Class is potentially entitled, and eventually began exchanging counterproposals on key aspects of the Settlement. (Hedin Decl. ¶ 29; Milian Decl. ¶ 22.)  Plaintiff's counsel provided a copy of Mr. Snyder's report to Caribou's counsel to review at mediation. (*Id*.)  The Parties' negotiations were at all times highly adversarial and at arm's length. After ten hours of mediation, the Parties reached an agreement on the principal terms of the Settlement and signed a binding term sheet (subject to confirmatory discovery regarding the total size of the Settlement Class), which the Parties agreed would be used to memorialize the Settlement Agreement and select a Settlement Administrator.  (*Id.*)

On June 7, 2017, to confirm that the total number of Settlement Class Members provided by Caribou at mediation was accurate, Plaintiff's counsel deposed a representative of Caribou pursuant to Federal Rule of Civil Procedure 30(b)(6). (Milian Decl. ¶ 23).  Through this deposition, Plaintiff's counsel was able to confirm that the total number of Settlement Class Members, i.e., the total number of individuals who received at least one SMS text message from Caribou during the relevant time period, was consistent with the number provided by Caribou at mediation.  (*Id.*)

Prior to executing the Settlement Agreement, the Parties procured estimates from five (5) reputable and competent professional settlement administrators for the total cost of the Settlement Class Notice Program.  (Hedin Decl. ¶ 31; Milian Decl. ¶ 24.)  The estimates were prepared by the five settlement administrators based on detailed information provided by the

Parties regarding the number of Settlement Class Members, the form of Caribou's records, and the type and extent of contact information Caribou has on file for the Settlement Class Members. (*Id.*.)  The Parties ultimately selected Epiq, a reputable company with extensive TCPA experience, *see* Declaration of Cameron R. Azari ("Azari Decl.") ¶¶ 2-5, attached as Exhibit "D" hereto, as the Settlement Administrator. (Hedin Decl. ¶ 32; Milian Decl. ¶ 25.)  The Settlement Class Notice Program devised by Epiq will provide Notice to Settlement Class Members directly by e-mail and postal mail, by electronic publication and through the Settlement Website, and is estimated to cost $351,756.88.  (Hedin Decl. ¶ 32; Milian Decl. ¶ 25; Azari Decl. ¶ 23.)

Upon completion of confirmatory discovery and the selection of the Settlement Administrator, the Parties executed the Settlement Agreement.  (Hedin Decl. ¶ 32; Milian Decl. ¶ 26.)  The Settlement is thus the product of extensive litigation, a comprehensive formal discovery process, lengthy and arm's length negotiations, confirmatory discovery, and a competitive bidding process resulting in the selection of an experienced Settlement Administrator to effectuate Class Notice.  (Hedin Decl. ¶ 33; Milian Decl. ¶ 27.)

## III.    TERMS OF THE SETTLEMENT

The Settlement Agreement, attached hereto as Exhibit "A", contains the following key terms:

### A.    Class Definition

Pursuant to the Settlement Agreement, Plaintiff requests in this Motion that the Court provisionally certify the following Settlement Class:

> All Persons who, while residing in the United States, received one or more text messages sent by or on behalf of Caribou Coffee Company, Inc. at a cellular telephone number between May 5, 2012 and the Preliminary Approval Date.
>
> (i)    Specifically excluded from the Settlement Class are the following Persons:

    **a.**   Caribou Coffee Company, Inc., and its affiliates, employees, officers, directors, agents, and representatives and their immediate family members;

    **b.**   Class Counsel;

    **c.**   Any person who first received a text message from Caribou Coffee Company, Inc. after the Preliminary Approval Date and;

    **d.**   The Judge and U.S. Magistrate Judge who have presided over the Litigation and their immediate family members.

(Settlement Agreement § III.A.)

### B.    Monetary Relief

Caribou has agreed to pay, on a non-reversionary basis, cash in the amount of $8,500,000.00 to create the Settlement Fund, for the benefit of Settlement Class Members, and which will be used to pay all Settlement costs, including without limitation the Cash Awards, Notice and Administrative Costs, any Attorneys' Fee Award and Service Award awarded by the Court, and will be in full satisfaction of all of Caribou's monetary obligations under the Settlement and Settlement Agreement. (*Id.* § IV.A.)

After Notice and Administration Costs and any Attorneys' Fee Award and Service Award have been paid from the Settlement Fund, each Settlement Class Member who submits a Valid Claim will receive a pro rata share of the remainder of the Available Cash Award Total.[3] (*Id.* §

---

[3]    Any unclaimed funds will be distributed via subsequent distribution(s) to approved claimants to the extent the uncashed check funds allow for subsequent distribution of Cash Awards of $1.00 or more per claimant, after administration costs, and to the extent otherwise feasible. (Settlement Agreement § IV.F.) In the event uncashed check funds are of an amount that does not allow for a subsequent distribution of Cash Awards of $1.00 or more per claimant, after administration costs, or if it is otherwise infeasible to distribute uncashed check funds in the Settlement Fund, then the remaining uncashed funds shall be distributed as directed by the Court upon application made by Settlement Class Counsel and Defense Counsel for such funds to be distributed to a charitable organization, selected by the Parties, concerned with consumer

IV.B; *see also id.* § IV.D-G (timing of and process for payment distribution).)  Based on the typical claims rate in this type of case, and factoring in the potential Attorneys' Fee Award and Service Award deductions, each claiming Settlement Class Member would likely receive approximately $200.00. (Hedin Decl. ¶¶ 35-36.)  Regardless of the number of Valid Claims submitted, no portion of the Settlement Fund shall be returned or refunded to Caribou.  (*Id.* § IV.A, F.)

### B.    Prospective Relief

Pursuant to the Settlement Agreement, Caribou has agreed to implement significant changes to its consumer marketing practices going forward, to ensure that no text messages are transmitted to Settlement Class Members via ATDS absent express written consent.  (*Id.* § IV.C.) Specifically, Caribou has agreed to (1) discontinue its text message marketing program as of the Preliminary Approval Date (and instead offer its customers access to discounts and information through a downloadable application, which does not implicate the TCPA); and, should Caribou elect to restart a text marketing program in the future, (2) implement, and at all times going forward maintain, best practices policies and procedures that fully comply with the TCPA and related FCC regulations; and (3) institute and maintain significant TCPA compliance training of key personnel and enhancements to its systems aimed at preventing the transmission of text messages in violation of the TCPA.  (*Id.*)

---

protection issues of the general character presented by this case, such that the charitable organization's work coincides, or at least overlaps, with the interest of the Settlement Class. *Id.* Under no circumstances shall any money in the Settlement Fund revert to Caribou.  (*Id.*)

**C.     Notice and Settlement Administration Costs**

Caribou has agreed to pay from the Settlement Fund all Notice and Administration Costs to the Settlement Administrator.  (*Id.* § IV.D-E.)  The Settlement Administrator estimates that the total Notice and Administration Costs will be $351,756.88.  (Azari Decl. ¶ 23.)

The Notice Date is the date by which the Settlement Administrator must disseminate the Class Notice to Settlement Class Members; this date should be set for twenty-one (21) days after the Preliminary Approval Date, as set forth in the proposed order accompanying this Motion. The Court should set the Claim Deadline -- the deadline for Settlement Class Members to submit Claim Forms -- for ninety (90) days after the Notice Date, also set forth in the proposed order accompanying this Motion.

The form of the Class Notice and Claim Form, and information concerning the Settlement Class Notice Program, are discussed in detail in Section V, Part D of this Motion.

**D.     Service Award for Class Representative and Attorneys' Fees for Class Counsel**

Caribou has agreed to pay from the Settlement Fund, subject to Court approval, a reasonable Service Award to Plaintiff in recognition of the time and effort she expended in pursuing this action and in fulfilling her obligations and responsibilities as class representative. (Settlement Agreement § VI.A.)  Caribou has also agreed to pay from the Settlement Fund a reasonable Attorneys' Fee Award to proposed Class Counsel, as may be awarded by the Court. (*Id.* § VI.B.)  Proposed Class Counsel must file any application for an Attorneys' Fee Award and Service Award at least fourteen (14) days prior the Opt-Out and Objection Date, which, again, should be set for sixty (60) days after the Notice Date -- as set forth in the proposed order accompanying this Motion.  (*Id.* § IX.R.)

Plaintiff's counsel intends to make an application to the Court, at least fourteen (14) days prior to the Opt-Out and Objection Date, for a Service Award to Plaintiff in an amount not to exceed $10,000.00, and for an Attorneys' Fee Award in an amount not to exceed 35% of the Settlement Fund after all Notice and Administration Costs are first deducted, inclusive of costs expended by Plaintiff's counsel. (Hedin Decl. ¶ 35; Milian Decl. ¶ 29; Settlement Agreement § VI.A-B.)  The Settlement Agreement is not contingent on the amount of any Service Award or Attorneys' Fee Award.  (*Id.* § VI.C-D.)  The Class Notice will inform the Settlement Class that Plaintiff's counsel intend to request a Service Award in an amount not to exceed $10,000.00 and an Attorneys' Fee Award of not to exceed 35% of the net Settlement Fund after all Notice and Administration Costs are first deducted, inclusive of costs expended by Plaintiff's counsel.  (*Id.* § IX.C; *see id.* Exs. A-B (proposed Class Notices and Claim Form).)

### E.    Objections and Opt-Out Rights

Any Settlement Class Member who intends to object must do so on or before the Opt-Out and Objection Date, i.e., the date sixty (60) days after the Notice Date, as set forth in the proposed order accompanying this Motion.  (*Id.* § VII.A.)  Any attempted objection that fails to comply with the requirements set forth in Section VII of the Settlement Agreement will be deemed by the Parties and the Settlement Administrator to be wholly ineffectual, null, and void.[4] (*Id.*)  In order to object, a Settlement Class Member must timely file with the Court and timely serve copies on both Class Counsel and Defense Counsel a written objection containing all of the information set forth in Section VII, Part B. of the Settlement Agreement.  (*Id.* § VII.B.)

---

[4]    As set forth in the proposed order accompanying this Motion, the Court should require any member of the Settlement Class who wishes to exclude himself or herself from the Settlement Class, as well as any Settlement Class Member who wishes to object to the Settlement, the Attorneys' Fee Award or the Service Award, to strictly comply with all applicable requirements in the Settlement Agreement, as set forth in Sections VII and IX (Parts J-P) of the Settlement Agreement.

Any Settlement Class Member who wishes to opt out of the Settlement Class must complete and send to the Settlement Administrator a request for exclusion that is post-marked or submitted electronically no later than the Opt-Out and Objection Date, i.e., the date sixty (60) days after the Notice Date, as set forth in the proposed order accompanying this Motion.  (*Id.* § VII.C.)  The request for exclusion must comply with all of the requirements set forth in Section VII, Part C. of the Settlement Agreement.[5]  (*Id.*)

The Class Notice provided to the Settlement Class will contain language consistent with the provisions set forth in Section VII of the Settlement Agreement concerning objections and opt-outs.  (*Id.*; *see also id.* Ex. B.)

**F.     Release of Liability**

If the Settlement is finally approved and a Final Approval Order and Judgment entered by the Court, Caribou (along with its third-party text message marketing affiliates 3Seventy and Givex) will be released and forever discharged, in exchange for the monetary and prospective relief described above, from any and all claims arising from or relating to allegedly unauthorized text messages sent by Caribou to members of the Settlement Class (as set forth in Section X of

---

[5]     The Court should, as set forth in the proposed order accompanying this Motion, preliminarily enjoin all members of the Settlement Class unless and until they have timely and properly excluded themselves from the Settlement Class from filing, commencing, prosecuting, intervening in or participating as plaintiff, claimant or class member in any other lawsuit or administrative, regulatory, arbitration or other proceeding in any jurisdiction based on, relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to the Litigation and/or the Released Claims; (ii) filing, commencing, participating in or prosecuting a lawsuit or administrative, regulatory, arbitration or other proceeding as a class action on behalf of any member of the Settlement Class who has not timely excluded himself or herself (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action), based on, relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to the Litigation and/or the Released Claims; and (iii) attempting to effect Opt-Outs of a class of individuals in any lawsuit or administrative, regulatory, arbitration or other proceeding based on, relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to the Litigation and/or the Released Claims.  (Settlement Agreement § IX.T.)

the Settlement Agreement) – except that no claims of Settlement Class Members who timely and properly request exclusion will be released, as set forth in the Settlement Agreement. (*Id.* § X; *see also id.* § VII.D-E (concerning opt-outs).)

## IV.    THE CLASS ACTION SETTLEMENT APPROVAL PROCESS

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (collecting cases).

The approval process for a proposed class action settlement has three steps:

    (1) Preliminary approval of the proposed settlement at an informal hearing;

    (2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and

    (3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the

fairness, adequacy, and reasonableness of the settlement may
be presented.

*Manual for Complex Litigation* (Fourth) (2004) § 21.63.   This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. 4 *Newberg* § 11.25.  Plaintiff is presently at the first step of the process.

## V.    ARGUMENT

The proposed Settlement, negotiated at arm's length by competent, experienced counsel, provides Settlement Class Members substantial monetary and non-monetary relief, in a prompt and efficient manner.   The Court should (A) preliminarily approve the Settlement, (B) provisionally certify the Settlement Class, (C) appoint Plaintiff as class representative and her counsel as Class Counsel, (D) approve the proposed Settlement Class Notice Program, and (E) schedule the Fairness Hearing.

### A.    The Settlement Should Be Preliminarily Approved

Rule 23(e) provides that a court may approve a proposed class settlement "on a finding that it is fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *see also Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006); *Armstrong*, 616 F.2d at 314. At the preliminary approval stage, the district court need only assess whether the proposed settlement falls "within the range of possible approval," in order to "ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Id.*

While "[f]ederal courts naturally favor the settlement of class action litigation," *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010) (quoting *Isby*, 75 F.3d at 1196), district courts must nonetheless consider the following four factors to determine whether a proposed settlement is fair, reasonable and adequate: (1) the strength of the

plaintiff's case compared to the amount of the settlement offer, (2) the length, complexity, and expense of further litigation, (3) the opinion of competent counsel, and (4) the stage of the proceedings and amount of discovery completed.[6] *See Synfuel*, 463 F.3d at 653 (citing *Isby*, 75 F.3d at 1199). "Although this standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase," *Kessler v. Am. Resorts International's Holiday Network, Ltd.*, No. 05 C 5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314), under which the facts are viewed "in the light most favorable to the settlement," *Isby*, 75 F.3d at 1199.

Each of these four factors weighs in favor of finding the proposed Settlement fair, reasonable and adequate, warranting its preliminary approval.

### 1. The Settlement Provides Substantial Relief to the Settlement Class, Particularly Given the Risks Posed by Continued Litigation

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel*, 463 F.3d at 653 (internal quotes and citations omitted). "Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility*, 270 F.R.D. at 347 (citations omitted).

---

[6]    An additional factor considered at the final fairness hearing – the amount of opposition to the settlement – is not assessed at all at the preliminary approval stage, because notice of the proposed settlement has not yet been administered. *See In re AT&T*, 270 F.R.D. at 349.

The amount offered in the Settlement – $8.5 million – is substantial.  Should the Settlement be approved, each Settlement Class Member who submits a Valid Claim would likely receive a Cash Award of approximately $200.00 (Hedin Decl. ¶ 36; Milian Decl. ¶ 30) – far exceeding the per-claimant recovery provided by settlements in comparable TCPA cases.[7]

And while Plaintiff continues to believe that her claims against Caribou have merit, there are a number of legal uncertainties associated with continued litigation that pose substantial risk of non-recovery to the Settlement Class. *See In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) ("In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval.").

First, the Parties' primary disagreement in this case concerns the meaning of the term "automatic telephone dialing system," an issue presently on appeal before the D.C. Circuit in *ACA Int'l.* Plaintiff firmly believes Caribou's text messages were sent using technology that qualifies as an ATDS under either the current or former interpretation of the term.  But it is

---

[7]    *E.g., Weinstein v. The Timberland Co., et al*., No. 06-cv-00484, ECF No. 93 (N.D. Ill. 2008) (approving TCPA class action settlement providing $150.00 cash to each claiming class member); *Desai v. ADT Sec. Servs., Inc.*, Case No. 1:11-cv-01925, ECF No. 229 (N.D. Ill. Feb. 14, 2013) (between $50.00 and $100.00 cash); *Garret, et al. v. Sharps Compliance, Inc.*, Case No. 1:10-cv- 04030, ECF No. 65 (N.D. Ill. Feb. 23, 2012) (between $27.42 and $28.51 cash); *Douglas v. W. Union Co.*, No. 14-CV-1741, 2015 WL 9302316, ECF No. 96 (N.D. Ill. Nov. 10, 2015) ($95.90 cash); *Kolinek v. Walgreen, Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) ($30.00 cash ); *Kazemi v. Payless Shoesource, Inc.*, No. 3:09-cv-05142, ECF No. 94 (N.D. Cal. Apr. 2, 2012) ($25.00 voucher); *Satterfield v. Simon & Schuster, Inc., et al.*, No. 06-cv-2893, ECF No. 132 (N.D. Cal. 2010) ($175.00 cash); *Manouchehri v. Styles for Less, Inc.*, Case No. 14cv2521 NLS, 2016 WL 3387473, at *2, 5 (S.D. Cal. June 20, 2016) ($10.00 cash or $15.00 voucher); *Franklin v. Wells Fargo Bank, N.A.*, Case No. 14cv2349-MMA (BGS), 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) ($71.16 cash); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 3:11-md-02261, ECF No. 97 (S.D. Cal. Feb. 20, 2013) ($20.00 voucher or $15.00 cash); *Estrada v. iYogi, Inc.*, No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) ($40.00 cash); *Cubbage v. Talbots, Inc.*, No. 09-cv- 00911-BHS, ECF No. 114 (W.D. Wash. Nov. 5, 2012) ($40.00 cash or $80.00 certificate); *Melito v. Am. Eagle Outfitters, Inc.*, No. 1:14-CV-02440-VEC, 2017 WL 366247, at *1 (S.D.N.Y. Jan. 24, 2017) (between $142.00 and $285.00 cash).

possible the D.C. Circuit could vacate the 2015 FCC Order's interpretation of ATDS, at which point this Court could find Caribou's technology to fall outside the narrower, pre-2015 FCC Order definition; that scenario would leave Plaintiff and the Settlement Class Members with no cause of action under the TCPA and entitled to no relief.  Oral argument in *ACA Int'l* was held on October 19, 2016, and the D.C. Circuit's decision, while still pending, appeared imminent when the Parties attended mediation on April 13, 2017.  The pendency of *ACA Int'l* at the time of mediation was, by itself, a serious enough litigation risk to support finding the Settlement fair, reasonable and adequate.

Second, the Parties disagree whether the Settlement Class could be certified on a contested motion for class certification filed by Plaintiff. Caribou maintains, inter alia, that individual issues among Settlement Class Members, including on the key issue of consent, would predominate and preclude class certification. Plaintiff disagrees, but acknowledges that "[c]ourts determine whether issues of individualized consent defeat commonality and predominance in a TCPA cases on a case-by-case basis after evaluating the specific evidence available to prove consent."  *Physicians Healthsource, Inc. v. A-S Medication Sols.*, LLC, 318 F.R.D. 712, 725 (N.D. Ill. 2016); *compare, e.g.*, *G.M. Sign, Inc. v. Brink's Mfg. Co.*, No. 09 C 5528, 2011 WL 248511, at *8 (N.D. Ill. Jan. 25, 2011) (denying certification where defendant offered evidence that consent could not be shown with common proof), *and Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wyo. 2011) (declining to certify TCPA class in light of individualized inquiry "into whether each individual gave 'express consent' by providing their wireless number"), *with Savanna Grp., Inc. v. Trynex, Inc*., No. 10-CV-7995, 2013 WL 66181, at *15 (N.D. Ill. Jan. 4, 2013) (granting class certification and rejecting argument that questions of consent caused individual issues to predominate because defendant had not offered evidence that

any particular class member consented to the faxes at issue), *and Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 503 (S.D.N.Y. 2014) (holding defendant failed to make a sufficient showing that individualized issues of consent would predominate where defendant failed to keep records of consent), *and Green v. Serv. Master On Location Servs. Corp.*, No. 07 C 4705, 2009 WL 1810769, at *2 (N.D. Ill. June 22, 2009) (explaining that "the question of consent may rightly be understood as a common question and the possibility that some class members may have consented is not sufficient to defeat class certification"). Thus, if Caribou were able to present evidence of "prior express written consent" for a portion of the Settlement Class, there would be a risk of the Court denying class certification and the Settlement Class recovering nothing.

Third, Caribou asserts an affirmative defense of "excessive fines and due process" in its Amended Answer to the Complaint. (ECF No. 19 at 21 ("Plaintiff's and the proposed class's claim for statutory damages is grossly disproportionate to the conduct alleged, constitutes an excessive fine, and violates Caribou's due process rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.").) At least some courts view awards of aggregate, statutory damages with skepticism, occasionally going so far as to deny class certification or reduce a class award on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons--Algonquin, Inc.*, No. 09 C 910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case – between $100 and $1,000 per violation – would not violate Defendant's due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *Ehren v. Moon, Inc.*, No. 09-21222-CIV, 2010 WL 5014712, at *2 (S.D. Fla. Dec. 3, 2010) ("If class action treatment were applied here, where the complaint contains no indication of any actual damages, the aggregated relief could be

oppressive in consequence and difficult to justify.  Certifying a class action in this matter is not superior to other methods of litigation because a class action in this context could raise serious constitutional problems implicating the Defendant's Due Process rights."); *but see, e.g., Phillips Randolph Enterprises, LLC v. Rice Fields*, No. 06 C 4968, 2007 WL 129052, at *3 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple [statutory] violations.").  Thus, if Caribou were to prevail on this affirmative defense, any relief potentially available to the Settlement Class could be significantly reduced or even altogether barred.

Finally, even if Plaintiff were to win class certification, there would remain a risk of losing a jury trial. And even assuming Plaintiff prevailed at trial, any judgment could be reversed on appeal and, even if it were not, any class-wide damages award "would most surely bankrupt the prospective judgment debtor." *In re Capital One*, 80 F. Supp. 3d at 790.  A pyrrhic victory for the Settlement Class at trial is in no one's interest.

The $8.5 million Settlement is, by any reasonable measure, an excellent result for the Settlement Class.  The projected monetary award to each claiming Settlement Class Member far exceeds the per-claimant amounts in similar TCPA cases – which is all the more remarkable given the significant litigation risks Plaintiff and the Settlement Class would have faced going forward.  Accordingly, the first and most important factor weighs in favor of finding the Settlement fair, reasonable and adequate. *See Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 WL 8816289, at *3 (N.D. Ill. Sept. 10, 2010) (where a "settlement appears relatively generous when compared to settlements in analogous circumstances[, it] is sufficient to satisfy the standard for *preliminary* approval") (emphasis in original).

24

### 2.  Continued Litigation Would Be Complex, Costly and Lengthy

Preliminary approval is also favored where "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011).

If this litigation were to continue, it would be lengthy and very expensive and involve extensive motion practice, including a motion for class certification (and possibly a motion for decertification), motions for summary judgment and various pretrial motions, as well as the retention of additional experts, preparation of expert reports, and expert depositions. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("[C]lass action suits have a well deserved reputation as being most complex."). The case would probably not go to trial for over a year. And even if the Settlement Class recovered a judgment at trial in excess of the $8.5 million provided by the Settlement, post-trial motions and the appellate process would deprive them of any recovery for years, and possibly forever in the event of a reversal.

Rather than embarking on years of protracted and uncertain litigation, Plaintiff and her counsel negotiated a Settlement that provides immediate, certain, and *meaningful* relief to all Settlement Class Members. *See Schulte*, 805 F. Supp. 2d at 586. Accordingly, the second factor weighs in favor of finding the Settlement fair, reasonable and adequate. *See Borcea v. Carnival Corp.*, 238 F.R.D. 664, 674 (S.D. Fla. 2006) (noting that " [i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush").

### 3.  Proposed Class Counsel Is Competent, Well-Informed and Experienced, and Strongly Endorses the Settlement

The third factor examines the opinion of competent counsel as to whether a proposed settlement is fair, reasonable, and adequate. *Isby*, 75 F.3d at 1200. In assessing the qualifications

of counsel under this factor, a court may rely upon affidavits submitted by class counsel as well as its own observations of class counsel during the litigation. *Id.*

Plaintiff's counsel and proposed Class Counsel, David P. Milian and Frank S. Hedin of Carey Rodriguez Milian Gonya, LLP, have significant experience in consumer privacy class action litigation, and have been appointed and served as class counsel in a similar TCPA case involving the transmission of allegedly unsolicited text message advertisements. (Milian Decl. ¶¶ 4-7; Hedin Decl. ¶¶ 4-7.) Both Mr. Milian and Mr. Hedin strongly endorse this Settlement, which they negotiated at arm's length before an experienced mediator.  (Milian Decl. ¶ 31; Hedin Decl. ¶ 37.)

Accordingly, the third factor weighs in favor of finding the Settlement fair, reasonable and adequate. *See, e.g., McKinnie v. JP Morgan Chase Bank, N.A.,* 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator . . . suggest that the settlement is fair and merits final approval."); *see also In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys").

### 4.  The Settlement Was Reached After Significant Litigation, Wide-Ranging Discovery and Arm's Length Negotiations

The last factor concerns the stage of the proceedings and amount of discovery completed at the time the settlement is reached. *Synfuel,* 463 F.3d at 653. This factor is significant because "it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims."  *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) (quoting *Armstrong,* 616 F.2d at 325) (internal quotations omitted).

The proposed Settlement was reached after nearly a year of hard-fought litigation and was informed by counsel's thorough review and analysis of significant amounts of documents and ESI produced by Caribou and several third parties, concerning every aspect of this case. (*See generally* Milian Decl.; Hedin Decl.)  Plaintiff's counsel additionally retained an expert to investigate and prepare a report concerning Caribou's dialing technology and the feasibility of identifying Settlement Class Members in Caribou's records.  (Milian Decl. ¶ 17; Hedin Decl. ¶ 24.)  Armed with this information, Plaintiff and her counsel had "a clear view of the strengths and weaknesses" of the case and were in a strong position to negotiate a fair, reasonable, and adequate settlement on behalf of the Settlement Class at mediation.  *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd* 798 F.2d 35 (2d Cir. 1986).

Mediation was also hard-fought.  Although the Parties were able to reach an agreement in principle after ten hours of extensive negotiations, the Settlement Agreement was only executed after Class Counsel confirmed the size of the Settlement Class by deposing a Caribou representative.  (Milian Decl. ¶¶ 22-23; Hedin Decl. ¶¶ 29-30.)  Because the Settlement is the product of "arm's length negotiations between experienced counsel after significant discovery ha[s] occurred, the Court may presume the settlement to be fair, adequate, and reasonable." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) (citations omitted); H. Newberg, A. Conte, Newberg on Class Actions § 11.41 (4th ed. 2002) (presumption of fairness exists where a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced.").[8]

---

[8]      *See also, e.g.*, *Adams v. Inter-Con Sec. Sys., Inc.*, No. 06-cv-5428, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *In re Indep. Energy Holdings PLC*, No.

Accordingly, the final factor weighs in favor of finding the Settlement fair, reasonable and adequate.

**B.      The Settlement Class Should Be Provisionally Certified for Settlement Purposes**

The Court should next find that the proposed Settlement Class is appropriate for provisional certification pursuant to Rule 23(a) and that it fits into one of the three subsections of Rule 23(b). *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 621 (1997); *In re AT&T Mobility*, 270 F.R.D. at 340-345 (citations omitted); *see also* Manual for Complex Litigation § 21.632 (4th ed. 2004).   Provisional certification will allow the Settlement Class to receive notice of the Settlement and its terms, including the rights of Settlement Class Members to submit a Claim Form and recover a Cash Award if the Settlement is finally approved, to be heard on the Settlement's fairness at the Fairness Hearing, and to opt out of the Settlement.

For the reasons below, the Court should provisionally certify the Settlement Class – defined as "[a]ll Persons who, while residing in the United States, received one or more text messages sent by or on behalf of Caribou Coffee Company, Inc. at a cellular telephone number between May 5, 2012 and the Preliminary Approval Date" – under Rule 23(a) and Rule 23(b)(3).

**1.   The Requirements Of Rule 23(a) Are Satisfied**

Rule 23(a) requires that (a) the proposed settlement is so numerous that joinder of all individual class members is impracticable (numerosity); (b) there are questions of law or fact common to the proposed settlement class (commonality); (c) plaintiff's claims are typical of those of the class (typicality), and (d) the plaintiff and class counsel will adequately protect the

---

00-cv-6689, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable").

interests of the class (adequacy). Fed. R. Civ. P. 23(a)(1)–(4); *In re AT & T*, 270 F.R.D. at 340–44.  The Settlement Class satisfies each of these requirements.

### a.    Numerosity

The first requirement of Rule 23(a) is that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  The Settlement Class consists of nearly 530,000 individuals dispersed throughout the United States. Joinder of all Settlement Class Members is obviously impractical.  *See McCabe v. Crawford & Co.,* 210 F.R.D. 631, 643 (N.D. Ill. 2002) (forty or more class members is generally sufficient to establish numerosity).

Accordingly, the numerosity requirement of Rule 23(a) is satisfied.

### b.    Commonality

The second requirement is that "there are questions of law or fact common to the class." Rule 23(a)(2).   The commonality requirement is satisfied where a plaintiff asserts claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011).

Many questions of law and fact are common to the Settlement Class in this case, including whether Caribou's dialing technology constitutes an ATDS, whether Caribou's text messages are "advertisements" under the TCPA, whether Caribou obtained express written consent, and whether Caribou's violations were willful or knowing.  *See Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002) ("[A] common nucleus of operative fact is usually enough to satisfy the [commonality] requirement."); *see also, e.g., G.M. Sign, Inc. v. Finish Thompson, Inc*., No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869, *12 (N.D. Ill. Aug. 20, 2009) (finding the following common questions: "1) whether Defendant violated the TCPA by

faxing advertisements without first obtaining express invitation or permission to do so; 2) whether Plaintiff and other class members are entitled to statutory damages; and 3) whether Defendants acts were 'willful' or 'knowing' under the TCPA and, if so, whether Plaintiff and other class members are entitled to trebled damages.").

Accordingly, the commonality requirement of Rule 23(a) is satisfied.

### c.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement is not demanding." *Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005).

Plaintiff's claims are typical of the claims of Settlement Class Members because Plaintiff's claims arise out of the same "event, practice or course of conduct that gives rise to the claim[s] of the other class members" and "are based on the same legal theory." *Parker*, 206 F.R.D. at 213. Plaintiff and each Settlement Class Member received one or more text message from Caribou, sent via the same dialing technology and to a number enrolled in the same text message marketing campaign.  Moreover, Plaintiff and the putative Settlement Class members all seek statutory damages.

Accordingly, the typicality requirement of Rule 23(a) is satisfied.

### d.    Adequacy of Representation

The fourth and final Rule 23(a) requirement is "adequacy of representation," Fed. R. Civ. P. 23(a)(4), which has two components: (1) "the representatives must not possess interests which are antagonistic to the interests of the class;" and (2) "the representatives' counsel must be qualified, experienced and generally able to conduct the proposed litigation."  *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 698 (S.D. Fla. 1992) (citation omitted).

The first component is satisfied because Plaintiff's interests in this litigation are aligned with, and not antagonistic to, those of the Settlement Class. *See G.M. Sign,* 2009 U.S. Dist. LEXIS 73869, at *15-16; *Zyburo*, 44 F. Supp. 3d at 503 (holding that "the adequacy requirement is satisfied with respect to the lead plaintiff in this kind of consumer case unless plaintiff's interests are antagonistic to the interest of other members of the class") (quotation omitted). Plaintiff challenges the same alleged unlawful conduct and seeks the same monetary relief for herself and all Settlement Class Members. Plaintiff retained counsel, assisted with the litigation, and vigorously prosecuted the case on behalf of the Settlement Class.

The second component of Rule 23(a)(4) is satisfied because Plaintiff hired qualified and competent counsel who are experienced in class actions generally and TCPA litigation in particular. (Milian Decl. ¶¶ 4-7; Hedin Decl. ¶¶ 4-7.) Plaintiff's counsel have successfully investigated, commenced, and prosecuted many complex cases and class actions, including the instant action. (*Id.*)

Accordingly, the adequacy of representation requirement of Rule 23(a) is satisfied.

### 2. The Requirements Of Rule 23(b)(3) Are Satisfied

Finally, because Plaintiff seeks provisional certification under Rule 23(b)(3), Plaintiff must additionally show (a) that common questions of law or fact predominate over questions affecting only individual class members (predominance); and (b) that a class action is superior to other available methods of resolving the controversy (superiority). Fed. R. Civ. P. 23(b)(3); *In re AT&T Mobility*, 270 F.R.D. at 344-45.[9]  Both requirements are easily satisfied by the proposed Settlement Class.

---

[9]     Because the Court is called upon to assess the requirements of Rule 23 in the context of a settlement, the Court need not consider whether any manageability problems would arise at trial if the Settlement Class is certified. *Amchem*, 521 U.S. at 620 ("Confronted with a request for

31

### a.    Common Questions Predominate

The predominance requirement of Rule 23(b)(3) is satisfied because common questions comprise a substantial aspect of the case and can be resolved for all Settlement Class members in a single adjudication. *See Roach v. T.L Cannon Corp.*, 773 F.3d 401, 405 (2d Cir. 2015) (predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof").

This entire case is focused on Caribou's alleged common practice of using 3Seventy's dialing technology to transmit the same text message advertisements to cellular telephone numbers stored in the same Givex database. *See, e.g., Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 U.S. Dist. LEXIS 41766, *13 (N.D. Ill. May 27, 2008) (finding common issues such as "how numbers were generated from Defendant's database and whether Defendant's actions . . . violated the TCPA" to predominate, and that the issue of consent might be resolved through common proof such as "the source of the numbers" and "how Defendant selected who was to receive the [ ] faxes").

Thus, the central questions in this case – whether Caribou sent text message "advertisements" using an "automatic telephone dialing system" to cell phones without "express written consent" – are capable of resolution on a class-wide basis by looking to Caribou's and Givex's records and 3Seventy's technology.  Because Caribou used the same 3Seventy technology to transmit all of its text messages, whether that technology constitutes an ATDS is a question capable of resolution on a class-wide basis with common proof.  Moreover, unlike

settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

many TCPA actions, individualized issues of consent do not predominate. Whether the text messages sent by Caribou are "advertisements" within the meaning of the TCPA (they clearly are) is a question of law that can be resolved in one stroke for the entire Settlement Class – and, if answered in the affirmative, would subject Caribou to the heightened requirement of "prior express <u>written</u> consent" for the entire Settlement Class.  In any event, Caribou has the burden to plead and produce evidence of consent for entire Settlement Class, *see Johansen v. GVN Michigan, Inc.*, No. 1:15-cv-00912, 2015 WL 3823036, at *1 (June 18, 2015) (noting burden is on the defendant to plead consent affirmative defense), and thus far Caribou has produced no evidence of such consent for any Settlement Class Member.

Because there are no apparent issues requiring individualized proof, the predominance requirement is satisfied for purposes of preliminary approval.

### b.    Class Treatment of Plaintiff's Claims is Superior

Rule 23(b)(3) also requires that a class action be superior to other available methods for adjudicating the controversy. "The superiority requirement is often met where class members' claims would be too small to justify individual suits, and a class action would save litigation costs by permitting the parties to assert their claims and defenses in a single proceeding." *Kaye v. Amicus Mediation & Arbitration Group, Inc.*, 300 F.R.D. 67, 81 (D. Conn. 2014); *see also Amchem,* 521 U.S. at 617 (noting that "the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all").

A class action is the superior method for the fair and efficient adjudication of these claims.  Plaintiff's claims are shared by nearly 530,000 other consumers, each of whom received at least one text message advertisement from Caribou via the same dialing technology.  The resolution of all claims of all Settlement Class Members in a single proceeding promotes judicial

efficiency and avoids inconsistent decisions. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (noting "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23"). Further, the statutory damages available under the TCPA ($500.00 per violation, or $1,500.00 if the violation is willful) are small in comparison to the costs of litigation. As a result, it is unlikely any Settlement Class Member would be willing or able to pursue relief on an individual basis.

Accordingly, the superiority requirement is satisfied for purposes of preliminary approval. The Court should provisionally certify the Settlement Class.

### C.    Plaintiff's Counsel Should Be Appointed Class Counsel

Upon certifying a class, Rule 23 requires that a court appoint class counsel who will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B), (2), (4); *Harris v. Circuit City Stores, Inc.*, No. 07-cv-2512, 2008 WL 400862, at *11 (N.D. Ill. Feb. 7, 2008) (citation omitted). In appointing class counsel, the court must consider (1) the work counsel has done in identifying or investigating potential claims; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the case; (3) counsel's knowledge of the applicable law, and (4) the resources class counsel has committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv); *Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 498 n.7 (7th Cir. 2013).

In this case, proposed Class Counsel readily satisfy the criteria of Rule 23(g). First, Plaintiff's counsel have devoted substantial time, effort and resources to this litigation, beginning with their initial investigation of Plaintiff's allegations, continuing through almost a year of vigorous litigation, formal discovery and expert consultation, and ending with hard-fought

settlement negotiations, a lengthy mediation and confirmatory discovery. (Milian Decl. ¶¶ 8-23; Hedin Decl. ¶¶ 8-30.) Second, Plaintiff's counsel have extensive experience in complex class action litigation, in district courts of the Seventh Circuit and elsewhere (Milian Decl. ¶¶ 6-7; Hedin Decl. ¶¶ 6-7), and previously served as class counsel in another similar case involving a national retailer's alleged transmission of unsolicited text messages in violation of the TCPA, *see id.* (citing *Chimeno-Buzzi, et al. v. Hollister, Co.*, Case No. 14-cv-23120-MGC, ECF No. 155 (S.D. Fla.) ($10 million class settlement finally approved on behalf of 3.7 million settlement class members, with each claiming settlement class member receiving $40)).

Accordingly, the Court should appoint Plaintiff's counsel, David P. Milian and Frank S. Hedin, as Class Counsel.

**D.    The Court Should Approve the Proposed Notice, and Direct the Settlement Administrator to Provide Notice to the Settlement Class**

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit., supra*, at § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The notice must contain specific information in plain, easily understood language, including the nature of the action and the rights of class members. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii); *see also In re AT&T Mobility*, 270 F.R.D. at 352.

Pursuant to the Settlement Agreement, the Class Notice will provide information to Settlement Class Members regarding the filing of Claim Forms, (Settlement Agreement § V.A.; *see also id.* § V.E., Ex. B (sample Class Notices)), and additionally will: (i) describe the essential

terms of the Settlement; (ii) disclose Class Counsel's intention to file an application with the Court for a Service Award to the Class Representative; (iii) provide information regarding the application for an Attorneys' Fee Award that Class Counsel intend to file with the Court; (iv) indicate the time and place of the hearing to consider final approval of the Settlement, and the method for objection to and/or opting out of the Settlement; (v) explain the procedures for allocating and distributing the Settlement Fund; and (vi) prominently display the address of Class Counsel and the procedure for making inquiries, (*id.* § IX.C); *see also In re AT&T Mobility*, 270 F.R.D. at 352 (the notice should contain specific information, in plain, easily understood language, concerning the nature of the action and the rights of class members).

Claim Forms will be available from the Settlement Administrator, upon request, and on the Settlement Website. (*Id.* § V.A; *see also id.* § V.E., Ex. A (sample Claim Form).)  Settlement Class Members will be able to submit their respective Claim Forms through the Settlement Website, by e-mail, or by U.S. postal mail.  (*Id.* § V.A.) In order to file a Valid Claim, as necessary to receive a Cash Award, Settlement Class Members must sign and return by the Claim Deadline a fully completed Claim Form containing the following required information: (1) name; (2) current address; (3) cellular telephone number at which claimant received one or more text(s) from Caribou Coffee Company, Inc.; (4) cellular telephone carrier for cellular telephone number at which claimant received texts from Caribou Coffee Company, Inc.; (5) certification under Penalty of Perjury that claimant was texted by Caribou Coffee Company, Inc., on the identified cellular telephone number between May 5, 2012 and the Preliminary Approval Date; (6) another contact telephone number, if available; and (7) a contact email address, if available. (*Id.* § V.A-B; *see also id.* § V.C-D (process for determining validity of Claim Forms and resolving concerns of suspected fraud).)

The Settlement Agreement requires the Settlement Administrator to implement a comprehensive Settlement Class Notice Program for providing the Class Notice to Settlement Class Members and otherwise notifying the Settlement Class of the Settlement and the Settlement Agreement. (*Id.* § II.LL; *see also* Azari Decl. ¶¶ 8-23.) Immediately after the Court enters the Preliminary Approval Order directing commencement of the Settlement Class Notice Program, Caribou will provide the Settlement Administrator a list of all cellular telephone numbers appearing in its records as having received one or more text message during the class period, as well as all names, physical addresses and e-mail addresses corresponding to those numbers. (Azari Decl. ¶ 9.) Caribou has physical addresses for approximately 89% of the Settlement Class Members. (*Id.*) The Settlement Administrator will update these records through "change of address" procedures, as necessary, to ensure that the physical addresses Caribou has on file for Settlement Class Members are as current as possible, and will utilize additional reverse-lookup procedures to attempt to identify physical addresses for the remaining 11% of Settlement Class Members for whom no address or e-mail address is presently on file. (*Id.*. ¶ 10.) The Settlement Administrator will then directly notify via double-sided postcard (with the Class Notice on one side and a Claim Form with pre-paid return postage on the reverse) all Settlement Class Members whose physical addresses is on file, and directly notify via e-mail all Settlement Class Members whose e-mail address is on file (with the Class Notice and a link to the Settlement Website's Claim Form in the e-mail). (*Id.* ¶¶ 12-14.); *see also Mullane*, 339 U.S. at 314 (explaining that Rule 23 "requires that individual notice in 23(b)(3) actions be given to class members who can be identified through reasonable effort."). *See* David F. Herr, MANUAL FOR COMPLEX LITIGATION §21.311 at 287 (4th ed. 2004) ("When the names and addresses of most class members are known, notice by mail usually is preferred.").

In addition to direct notice, the Settlement Class will also be notified with electronic advertisements published by the Settlement Administrator on widely utilized Internet search engines, in online databases, and through online banner advertisements.  (Azari Decl. ¶¶ 15-19.); *see* Fed. R. Civ. P. 23(e)(1) (calling for notice to be provided in a "reasonable manner to all class members who would be bound by the proposal"); *In re Northfield*, 2012 WL 366852, at *7. This electronic publication campaign will be targeted both on a regional basis in Minnesota and Wisconsin (where most Caribou stores are located and where most Settlement Class Members reside), as well as nationally for maximum reach.  (*Id.* ¶ 15.)

The postcards, e-mails and electronic advertisements will also direct Settlement Class Members to the Settlement Website, which will contain the Class Notice and an electronic version of the Claim Form that can be submitted online, as well as answers to frequently asked questions, the toll-free Settlement telephone number, and copies of the full Settlement Agreement and other important documents (including the Complaint, this Motion, all Orders of this Court concerning the Settlement, and Plaintiff's forthcoming motions for attorneys' fees and service award and final approval of the Settlement). (Azari Decl. ¶ 20.)

The proposed Settlement Class Notice Program is robust, comprehensive and informative, effectuating the Class Notice directly to more than 90% of Settlement Class Members, (*id.* ¶ 9); notifying additional members of the Settlement Class through regional and national publication, the Settlement Website and the toll-free Settlement number; and providing for the filing of Claim Forms by postal mail and e-mail and on the Settlement Website.  (*Id.* ¶¶ 9-22.)

Accordingly, Plaintiff respectfully requests that the Court, as set forth in the proposed order accompanying this Motion, find that the notice provided by the Settlement Class Notice

Program: (i) is the best practicable notice; (ii) is reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of the Litigation and of their right to object to or to exclude themselves from the proposed settlement; (iii) is reasonable and constitutes due, adequate and sufficient notice to all Persons entitled to receive notice; and (iv) meets all requirements of applicable law. *See* Settlement Agreement § IX.G; *see, e.g., Touhey v. U.S.*, No. 08-cv-1418, 2011 WL 3179036, at *11 (C.D. Cal. July 25, 2011) (finding mail, publication, website and toll-free number sufficiently calculated to reach class members and satisfied Rule 23 notice requirements).

Further, Plaintiff respectfully requests that the Court, as set forth in the proposed order accompanying this Motion, approve the Class Notice and Claim Form, appoint Epiq as the Settlement Administrator, direct the Settlement Administrator to disseminate the Class Notice in accordance with the Settlement Class Notice Program by the Notice Date (i.e., within twenty-one (21) days after the Preliminary Approval Date), require the Settlement Administrator to file proof of compliance with the Settlement Class Notice Program no later than seven (7) days before the Fairness Hearing, and set a Claim Deadline ninety-days (90) after the Notice Date. (Settlement Agreement § IX.E-F, H-I.)[10]

### E.    The Court Should Schedule The Fairness Hearing

The last step in the settlement approval process, after completion of the Settlement Class Notice Program, will be a Fairness Hearing on final approval of the Settlement and Settlement Agreement to consider the fairness, reasonableness and adequacy of the proposed Settlement and whether it should be finally approved by the Court, and to determine the reasonableness of the

---

[10]    Within ten (10) days of the filing of this Motion and the attached Settlement Agreement, Caribou will serve or cause the Class Administrator to serve CAFA Notice in full compliance with 28 U.S.C. § 1715. Settlement Agreement § V.F.

requested Attorneys' Fee Award and Service Award. (*Id.* § IX.D.)  Plaintiff respectfully requests that the Court schedule the Fairness Hearing to be held fourteen (14) days after the Claims Deadline or another date thereafter as convenient for the Court, as set forth in the proposed order accompanying this Motion.

Finally, the Court should order all documents in support of final approval of the Settlement Agreement, and in response to any objections filed by Settlement Class Members, to be filed with the Court on or before seven (7) days prior to the Fairness Hearing, as set forth in the proposed order accompanying this Motion.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion and, consistent with the proposed order attached hereto, enter an order:

(A) preliminarily approving the Settlement;

(B) provisionally certifying the Settlement Class and appointing Plaintiff as class representative and Plaintiff's counsel as Class Counsel;

(C) approving the Class Notice and Settlement Class Notice Program, appointing Epiq as Settlement Administrator, ordering that the Settlement Class Notice Program be effectuated, and ordering that proof of compliance with the Settlement Class Notice Program be filed by the Settlement Administrator no later than seven (7) days before the Fairness Hearing;

(D) setting a Notice Date of twenty-one (21) days after the Preliminary Approval Date;

(E) setting a Claims Deadline of ninety (90) days after the Notice Date;

(F) establishing the procedure for Settlement Class Members to object to the Settlement or exclude themselves from the Settlement Class, and setting an Opt-Out and Objection Date of sixty (60) days after the Notice Date;

(G) ordering the motion for final approval and any response to any objection to be filed with the Court no later than seven (7) days prior to the Fairness Hearing;

(H) directing Class Counsel to file any application for an Attorneys' Fee Award and Service Award at least fourteen (14) days prior to the Opt-Out and Objection Date;

(I) ordering the Settlement Administrator to provide the Opt-Out List to Class Counsel and Defense Counsel no later than seven (7) days after the Opt-Out and Objection Date and to then file with the Court the Opt-Out List with an affidavit attesting to the completeness and accuracy thereof no later than seven (7) days before the Fairness Hearing;

(J) preliminarily enjoining Settlement Class Members who have not excluded themselves from initiating or participating in litigation related to the underling facts of this case, consistent with the language in the proposed order attached to this Motion;

(K) staying all proceedings, except those related to effectuating the Settlement, pending final determination of whether the Settlement should be approved; and

(L) scheduling a Fairness Hearing for a date fourteen (14) days after the Claims Deadline or another date thereafter as convenient for the Court, as set forth in the proposed order accompanying this Motion.

Dated: June 12, 2017                    Respectfully submitted,

                                         By: /s/  Frank S. Hedin

                                         **CAREY RODRIGUEZ
                                         MILIAN GONYA, LLP**

                                         David P. Milian
                                         Florida Bar No. 844421
                                         dmilian@careyrodriguez.com
                                         Frank S. Hedin
                                         Florida Bar No. 109698
                                         fhedin@careyrodriguez.com
                                         1395 Brickell Avenue, Suite 700

Miami, Florida 33131
Telephone: (305) 372-7474
Facsimile:  (305) 372-7475

*Counsel for Plaintiff*