## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

KRISTIE FARNHAM, on behalf of
herself and all others similarly situated,

        Plaintiff,

    v.

CARIBOU COFFEE COMPANY, INC.

        Defendant.

Case No. 16-CV-00295-wmc

---

## OBJECTION OF SUSAN STRADTMANN TO THE PROPOSED SETTLEMENT AND CLASS COUNSELS' REQUEST FOR ATTORNEYS' FEES

---

# INTRODUCTION

This litigation is the product of a relentless autodial text marketing campaign by Caribou Coffee that violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Kristie Farnham, the class representative, received approximately fifty (50) SMS text message advertisements between March and May, 2016.[1] Even more substantial, this class member, Susan Stradtmann, received *hundreds* of texts during the class period.[2]

Presumably, Caribou Coffee engaged in similar practices with the 530,000 class members[3] bound by the proposed settlement. If each member received fifty texts (far fewer than the hundreds received by Ms. Stradtmann), Caribou Coffee, or an entity on its behalf, would have sent 26.5 million violative texts. Considering the minimum statutory penalty of $500 per violation, the class damages in that case would exceed $13 billion. 47 U.S.C. §227(b)(3).

While the parties have disclosed class size, it does not appear they have submitted an estimate on the number of text messages sent by or on behalf of Caribou Coffee. Without this, the Court cannot adequately consider the range of possible outcomes, nor can the class members fairly evaluate the extent to which

---

[1] ECF Doc. 1, at 4.

[2] Exhibit 1, Declaration of Susan Stradtmann, attached hereto and incorporated herein by reference.

[3] ECF Doc. 51, at 9.

their claims are marked down. The settlement cannot be approved on the information submitted.

If, as postulated, 50 texts were sent to each class member, then the $5.4 million[4] that will actually reach the class members (after fees and administrative costs are deducted) is .04% (four one hundredths of one percent) of the potential $13 billion in damages.[5] The risks in this TCPA litigation are not so great as to require that substantial of a discount.

Further, the settlement fails to take any account for the variance in quantity of texts received by members. Ms. Stadtmann may have received hundreds more texts than other class members, yet she is arbitrarily entitled to the same fixed *pro rata* figure. A class member who received 1,000 texts should not receive the same compensation as a member who received 1.

In addition to objections to the settlement itself, Ms. Statdmann also submits her objection to class counsels 33% fee request, which cannot be justified in the context of the inadequate relief offered.[6] Class counsel overstate the risk, while

---

[4] $8,500,000 settlement fund - $2,712,747.70 attorneys' fees - $351,756.88 notice costs - $10,000 incentive fee = $5,425,495.42.

[5] 530,000 class members x 50 texts = 26,500,000 texts. 26,500,000 texts x $500 minimum statutory damages = $13,250,000,000.

[6] Objector recognizes that briefing in opposition to class counsels' motion for attorneys' fees and service award is not due until November, 20, 2017 as provided in this Court's October 2, 2017 docket entry. Objector submits her opposition to class counsels' fee request, along with her objections to the settlement itself, herein. Objector reserves the right to amend or supplement her objection to fees should class counsel submit additional filings in support of their motion for fees between the date of this filing and the November 20, 2017 deadline.

inflating the claimed TCPA market-rate for fees, which is somewhere between 20% to 25%, and not 30% to 36% as claimed. The fact that they are asking for five times their lodestar in a case which settled in about a year exposes the extent to which this fee overreaches.

## STANDING AND PROCEDURES TO OBJECT

Objector's full name, address, and cellular telephone number are as follows: Susan Stradtmann, 264 Hurley St. E., West St. Paul, MN, 55118-1526; (651) 208-2397. The cell phone number at which Ms. Stradtmann received text messages from Caribou Coffee Company, Inc., between May 5, 2012 and July 28, 2017 was (651) 208-2397.

Objector is a person who received one or more text messages sent by or on behalf of Caribou Coffee Company, Inc., at a cellular telephone number between May 5, 2012 and July 28, 2017, and is a member of the Settlement Class as defined in the Class Notice. Declaration of Susan Stradtmann, Exhibit "A" hereto, incorporated by reference as though set forth in full. Additionally, Objector received a postcard notice of settlement in the mail, and thereafter filed a claim. *See* Exhibit A-1. As such, Objector is a class member and has standing to make her objection.

Objector is represented by local counsel, Thomas Ogorchock (Wisconsin State Bar number 1000628) and Patrick Miller (Wisconsin State Bar number

1016563), Miller & Ogorchock, S.C., 740 N. Plankinton Ave, Suite 310, Milwaukee, Wisconsin 53203. Their email addresses are tom@miller-ogorchock.com and pat@miller-ogorchock.com, respectively, and their phone number is (414) 272-4100. Objector is also represented by Christopher Bandas (Texas State Bar number 00787637), Bandas Law Firm, PC, as his general counsel in objecting to the settlement. Mr. Bandas's address is 500 North Shoreline Blvd., Suite 1020, Corpus Christi, Texas 78401. His email address is cbandas@bandaslawfirm.com. His phone number is (361) 698-5200. Mr. Bandas does not presently intend on making an appearance for himself or his firm.

Objector objects to the proposed settlement in *Kristie Farnham on behalf of herself and all others similarly situated v. Caribou Coffee Company, Inc.*, Case No. 16-CV-00295-WMC. The statement of the objections and the grounds therefore are set forth below. Objector does not intend on appearing or testifying at the fairness hearing either in person or through counsel, but asks that this objection be submitted on the papers for ruling at that time. Objector will not call any persons to testify at the Final Approval Hearing in support of the objection. Objector relies upon the documents contained in the Court's file in support of these objections. Objection is made to any procedures or requirements to object in this case that require information or documents other than those that are contained herein on grounds that such requirements seek irrelevant information to the objections, are

vague and unnecessary, are not adequately described in the class notice, are unduly

burdensome, are calculated to drive down the number and quality of objections to

the settlement and violate Objector's and counsel's due process rights and/or Rule

23. Objector joins in and incorporates by reference the objections filed by other

class member-objectors to the extent not inconsistent with this Objection.

## OBJECTIONS

### I. The Settlement Should Not be Approved without Disclosure of the Approximate Number of Text Messages Sent so that the Range of Reasonable Recovery Can be Accurately Evaluated.

Ms. Stradtmann received more than 350 texts from Caribou Coffee.[7] The

class representative received at least 50. Simply disclosing the number of class

members, 530,000, given the obviously aggressive text campaign, is not enough to

fairly evaluate the settlement relative to the class claims.

"[T]he proponents of any class settlement always bear the burden of proof

on the issue of fairness[.]" *In re Gen. Motors Corp. Engine Interchange Litig.*, 594

F.2d 1106, 1126 n.30 (7th Cir. 1979); *accord In re Dry Max Pampers Litig.*, 724

F.3d 713, 719 (6th Cir. 2013); *In re Baby Products Antitrust Litig.*, 708 F.3d 163,

175 (3d Cir. 2013) ("counsel did not provide information to the Court, preventing

it from properly assessing whether the settlement was in the best interest of the

class as a whole"). The "most important factor relevant to the fairness of

---

[7] Exhibit 1, Declaration of Susan Stradtmann.

a class action settlement' is . . . 'the strength of plaintiff's case on the merits balanced against the amount offered in the settlement.'" *Synfuel Tech., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir. 2006) (quoting *Gen. Motors,* 594 F.2d at 1132).

The Seventh Circuit instructs that the $8.5 million common fund, or $5.4 million earmarked for the class, cannot be considered in a vacuum. It must be weighed against the claims released. *See Synfuel*, 463 F.3d at 653; *see also People ex rel. Wilcox v. Eq. Funding Life Ins. Co.*, 335 N.E.2d 448, 456 (Ill. 1975) ("[b]asic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation") (quoting *TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-425 (1968)). In conducting a fairness analysis, "the district court should begin by 'quantifying the net expected value of continued litigation to the class.' To do so, the court should 'estimate the range of possible outcomes and ascribe a probability to each point on the range.'" *Synfuel*, 463 F.3d at 653 (quoting *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 284–85 (7th Cir. 2002)).

Without any idea of the number of texts sent by Caribou, there can be no fair estimation of what the class is giving up. *See Haight v. Bluestem Brands, Inc.*, 613CV1400ORL28KRS, 2015 WL 12830482, at *10–11 (M.D. Fla. May 14, 2015), *report and recommendation adopted,* 613CV1400ORL28KRS, 2015 WL

12835994 (M.D. Fla. June 1, 2015) (denying preliminary approval of TCPA settlement based on failure to submit evidence on the total number of calls, explaining that "[w]ithout some means of identifying the number of calls implicated in this class action or otherwise estimating the potential class-wide damages, the Court cannot reasonably evaluate the range of possible monetary recovery or the point on that range at which the settlement is fair") (citing *Zaldivar v. T-Mobile USA, Inc.*, No. C07-1659 RAJ, 2009 U.S. Dist. LEXIS 64091, at *7 (W.D. Wash. July 10, 2009) (noting that the parties' failure to disclose an estimate of damages to the class "prevent[ed] the court from assessing the fairness of the settlement")).

This information should be provided to the Court, and in addition, disclosed to the class with attendant notice and opportunity to object. Additionally, the expert report of Randall Snyder should be disclosed to the class and reviewed by this Court in evaluating the range of possible outcomes. Class counsel made clear they relied on it "to intelligently assess the strengths and weaknesses of the class claims" and produced it to Defendant during mediation.[8]

As one court explained, "[c]lass members cannot participate meaningfully in the process contemplated by Federal Rule of Civil Procedure 23(e) unless they can review the bases of the proposed settlement and the other documents in the court

---

[8] ECF Doc. 51, at 8.

record." *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 309 (6th Cir. 2016). In *Shane Group*, the Sixth Circuit vacated approval of the settlement where an expert report discussing damages (and other documents), which the parties considered in signing on to the proposed settlement, were not made accessible to the class. *Id*. at 306, 309 (vacating approval where expert report, "whose valuation of the class's claims by all accounts was the keystone of the settlement agreement," was kept under seal). Because class members could not view this critical information, the Court found that "[t]he Rule 23(e) objection process seriously malfunctioned." *Id*. at 309.

The class members here have had no occasion to analyze an estimate of the number of texts at issue, which necessarily factored in to the parties negotiations and settlement. They have also not been provided the report relied on by the parties in reaching the settlement.

The result here, as with *Shane Group*, is a serious malfunction in the objecting process. Approval of the settlement should not be granted. Further, to the extent Snyder's report is subject to the agreed confidentiality order,[9] Ms. Stradtmann moves that it be unsealed or removed from the ambit of the order.

---

[9] ECF Doc. 43-1, 44.

## II. Four One Hundredths of One Percent Recovery is not Fair, Reasonable, or Adequate.

District courts must "exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions." *Synfuel,* 463 F.3d at 652. This Circuit recognizes that "the structure of class actions under Rule 23 ... gives class action lawyers an incentive to negotiate settlements that enrich themselves but give scant reward to class members, while at the same time the burden of responding to class plaintiffs' discovery demands gives defendants an incentive to agree to early settlement that may treat the class action lawyers better than the class." *Thorogood v. Sears, Roebuck & Co.,* 627 F.3d 289, 293 (7th Cir.2010) (emphasis omitted).

In this regard, the factors that a court must consider in evaluating the fairness of a settlement include: "the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement." *Synfuel,* 463 F.3d at 653 (quoting *Isby v. Bayh,* 75 F.3d 1191, 1199 (7th Cir.1996)).

As already described, there is inadequate information on the first and most important factor, the strength of the case relative to the settlement offer. From the

information available, however, the settlement does not fall within the range of reasonable recovery. If Ms. Farnham's receipt of 50 texts is typical, then roughly 26.5 million texts were sent. That amounts to $13,250,000,000 in potential liability without considering the possibility of treble damages. The $5.4 million class benefit, or .04% recovery, is scarcely a drop in the bucket. *See In re Ravisent Techs., Inc. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted); *In re Newbridge Networks Sec. Litig.,* 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("an agreement that secures roughly six to twelve percent of a *potential* trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness").

By comparison, a recent TCPA settlement in the Northern District of Illinois involving around twice as many class members and an estimated 50 million calls resulted in a $56-$76 million recovery. *See e.g., Grant Birchemeier, et al. v. Berley Group, Inc., et al.*, No. 1:12-cv-04069, ECF Doc. 533-3, at 18 (discussing 50

million calls), ECF Doc. 596, at 2-3, 8 (approving $56-$76 million settlement for more than 1 million class members) (Mar. 2, 2017, N.D. Ill.).

In another case, a comparable $8.2 million TCPA settlement was approved where the defendant sent 66,000 text messages. *See Gutierrez v. Barclays Grp.,* No. 10–CV–1012, Docket No. 58 (S.D. Cal. Mar. 12, 2012). That is nearly the same fund for 12% of the text messages assuming each of the 530,000 members in this case received just a single text (which appears to be a gross underestimation).

If the average class member received 20 texts (still an apparent underestimation based on the text messages received by Ms. Stradtmann and Ms. Farnham), that would amount to 10.6 million text messages. A settlement in Washington produced a fund three times greater for far fewer calls. *See Arthur v. Sallie Mae, Inc.,* 2012 WL 4075238 (W.D. Wash. Sept.17, 2012) (approving a TCPA settlement of $24.15 million where 7,880,040 text messages were sent). These cases illustrate the extent to which the settlement deviates from typical TCPA recovery.

And, the suggested $200 per-claimant recovery, which is only the result of an anticipated meager 5% claims rate,[10] does not mask the inadequacy of the overall recovery. *DeLeon v. Bank of Am.*, No. 6:09-cv-1251, 2012 WL 2568142,

---

[10] ECF Doc. 61, at 25.

2012 U.S. Dist. LEXIS 91124 (M.D. Fla. Apr. 20, 2012) (finding that a low-value settlement would "surely result in a low claims rate" and recommending that the settlement be rejected for failing the fairness inquiry), *adopted in full*, 2012 U.S. Dist. LEXIS 91126 (M.D. Fla. July 2, 2012). Indeed, "[p]oor response rates may indicate that the settlement is not particularly beneficial." *Michel v. WM Healthcare Solutions, Inc.*, No. 1:10-cv-638, 2014 WL 497031, at *15 n. 8 (S.D. Ohio Feb. 7, 2014) (discussing that a 3.7% claims rate was law, and that class counsel in that case typically achieve "a response rate of 10% to 15% in TCPA class action litigation"). Nor do the proposed practices changes. Class counsel, who bear the burden of establishing fairness, offered no estimation of the value of such changes, if any.

Further, though there were risks in this TCPA litigation, as there are with all litigation, they are overstated by class counsel. The same risks named by class counsel are faced routinely in TCPA cases. *See e.g., Wilkins v. HSBC Bank Nevada, N.A.*, 14 C 190, 2015 WL 890566, at *11(N.D. Ill. Feb. 27, 2015) (noting defenses included "the class members' alleged consent to receive automated phone calls; Rule 23 manageability issues; and potentially forthcoming FCC orders"); *Aboudi v. T-Mobile USA, Inc.,* No. 12cv2169, 2015 WL 4923602, at *4 (S.D. Cal. Aug. 18, 2015) (involving issue of class certification and argument that the class was not ascertainable); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 229,

238-39 (N.D. Ill. 2016) (involving *Spokeo* standing question and the appeal of the FCC ruling).

Meanwhile the strict liability component of the TCPA, and minimum statutory penalty of $500 make these cases highly desirable, particularly in the context of an aggressive text messaging campaign. This case should not be settled for fractions of a penny on the dollar.

## III. The Settlement Allocation Fails to Appropriately Compensate those with the Greatest Damages.

Regardless of the number of text messages they received, class members are limited to a single claim. They receive one payment, which will be determined by a *pro rata* division of funds among members who file valid claims.[11] That means Ms. Stradtmann, who received more than 350 messages, takes the same amount as a class member who received one text message.

At least one court has rejected this arrangement. *Haight v. Bluestem Brands, Inc.*, 613CV1400ORL28KRS, 2015 WL 12830482, at *11 (M.D. Fla. May 14, 2015), *report and recommendation adopted*, 613CV1400ORL28KRS, 2015 WL 12835994 (M.D. Fla. June 1, 2015). In *Haight*, the court disapproved a settlement where the class representative "bargained away all but one claim for each settlement class member irrespective of the number of calls arguably made in violation of the TCPA that the settlement class members received." *Id.* The fact

---

[11] Class Notice, at 4.

that the class representative himself gave up his claim for damages for thirty calls did not ameliorate this defect. *Id*. Like here, the settlement agreement called for a $10,000 service award for the representative. *Id*. The court explained that "[w]hile service fees are permitted, in the context of determining whether a settlement is fair, reasonable and adequate, the Court should not overlook Haight's significant monetary incentive to agree to limit the number of claims that can be submitted by putative settlement class members." *Id*.; *see also Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ("if the reason other class members get relief worth about 1% of the minimum statutory award is that the suit has only a 1% chance of success, then how could Murray personally accept 300% of the statutory maximum?").

No settlement in this case should be approved that ignores considerable disparity in damages such as the settlement here. *Compare with Johnson v. Meriter Health Services Employee Ret. Plan*, 10-CV-426-WMC, 2015 WL 13546111, at *3 (W.D. Wis. Jan. 5, 2015) (Conley, J.) (approving a plan that "allocates the net settlement proceeds on an individualized basis by taking into consideration each class member's claimed damages"); *Wilder Chiropractic, Inc.*, Case No. 10-CV-229-SLC, Dkt Nos. 67, at 3 (W.D. Wisc. July 28, 2011) (Crabb, J.) (finally approving settlement allocation providing $332.11 for *each* TCPA violation identified by claimants).

## IV.    Class Counsels' 33% Fee Request is Excessive.

The Seventh Circuit also demands careful review of fee awards in light of the conflict between the class and class counsel at the fee-setting stage. "Judicial scrutiny of class action fee awards . . . is based on the assumption that class counsel behave as economically rational actors who seek to serve their own interests first and foremost." *In re Southwest Voucher Litigation*, 799 F.3d 701, 712 (7th Cir. 2015); *accord In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010) ("the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage"). Further, "inflated attorneys' fees are an endemic problem in class action litigation and the fee applications of such attorneys must therefore be given beady-eyed scrutiny by the district judge." *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 286 (7th Cir. 2002).

In applying a critical eye to the fee request, "courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir.2001) ("*Synthroid I* "). Market rate depends on the "(1) the risk of nonpayment a firm agrees to bear, in part (2) the quality of its performance, in part on (3) the amount of work necessary to resolve the litigation, and in part on (4) the stakes of the case." *Id.* at 721.

Class counsels' request for a third is incongruent with this market-based approach.

**A. The Market for TCPA Litigation is Below 25%.**

*First*, the *ex ante* market is not 30%-40%. While there are outliers, the "data available on past awards in TCPA cases and other class actions show[s] that the median fee for large TCPA class actions were between 20% and 24% of the settlement fund[.]" *Wilkins v. HSBC Bank Nevada, N.A.*, 14 C 190, 2015 WL 890566, at *10 (N.D. Ill. Feb. 27, 2015) (citing *Capital One*, 2015 WL 605203, at *11-12, 15). In recent TCPA cases, courts have commonly awarded a percentage of 20% or less to class counsel. *See Bayat* v. *Bank of the West*, 2015 WL 1744342, at *10 & n.10 (N.D. Cal. Apr. 15, 2015) (opting for the lodestar method but awarding the equivalent of 13.5% of the over $3.3 million settlement fund); *Rose* v. *Bank of Am. Corp.*, 2014 WL 4273358, at *5, *13 (N.D. Cal. Aug. 29, 2014) (choosing the lodestar method and awarding a fee that constituted about 7.5% of the over $32 million fund); *Michel*, 2014 WL 497031, at *23 (awarding 15% of the $4.3 million settlement fund); *Wilkins* v. *HSBC Bank Nev., N.A.*, 2015 WL 890566, at *12 (N.D. Ill. Feb. 27, 2015) (awarding 23.75% of a nearly $40 million fund);

*Arthur* v. *Sallie Mae, Inc.*, 2012 WL 4076119, at *2 (W.D. Wash. Sept. 17, 2012)
(awarding 20% of the about $24 million fund).[12]

Class counsel take a number of large-scale TCPA settlements out of context
in suggesting 30% or greater is the market rate. These opinions apply a sliding
scale, starting with a higher initial rate of 30%, and diminishing percentages for
subsequent tiers. Significantly, *none* of the courts awarded anything close to 30%
upon application of the scale. *See Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C
4069, 2017 WL 1369741 (N.D. Ill. Apr. 10, 2017) (awarding between 25%-27%
for a $56-$76 million settlement); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D.
215 (N.D. Ill. 2016) (awarding 25% for $34 million); *Wilkins*, 2015 WL 890566, at
*1 (awarding 23.7% for a settlement with a $39.9 million fund); *Capital One*, 2015
WL 605203, at *16 (awarding 19.9% for a settlement with a $75.5 million fund).
This Court should not apply

Additionally, while it appears class counsel have served as class counsel in a
total of two other TCPA cases.[13] The market for attorneys with limited experience
in TCPA litigation would certainly not be greater than median fees in these cases.

---

[12] Objector would urge that non-TCPA cases cited by class counsel be given no deference in
determining the percentage of the fund recovery here.

[13] ECF Doc. 63, at 2-3 (declaration of Frank S. Hedin; identifying two TCPA cases); ECF Doc.
62, at 1-2 (declaration of David P. Milian; identifying one TCPA case); ECF Doc. 64, at 1-2
(declaration of Patrick E. Gonya, Jr.; identifying no prior TCPA cases); ECF Doc. 65, at 1-3
(declaration of Thomas K. Landry; identifying no prior TCPA cases).

## B. The $5.4 Million Actual Relief Relative to the Potential Billions in Damages Released Does Not Support 33%.

*Second*, the results achieved do not allow for one third. There is no reason for this Court to award anything above the 20% to 25% marketplace for TCPA settlements. *See Meriter Health Services*, 2015 WL 13546111, at *5 ("[t]he court next considers whether specific aspects of this case would either warrant a departure from this range, or if not, the appropriate award within this range"). "[I]n determining the reasonableness of the attorneys' fee agreed to in a proposed settlement, the central consideration is what class counsel achieved for the members of the class. . . .". *Redman v. RadioShack Corp.*, 768 F.3d 622, 633 (7th Cir. 2014)

Without even considering the possibility of treble damages, the settlement offers a 0.4% percent recovery if we assume Ms. Farnham's 50 texts are typical. In a similar case, a district court remarked that the class recovery under the TCPA settlement "represents a whopping 99.5% discount from the theoretical verdict value were statutory damages to be awarded to the entire class. This cannot be credibly called an 'outstanding' result." *Bayat v. Bank of the W.*, 2015 WL 1744342, at *5.

In four cases involving *larger* settlements, the fees were all below 25%. *See Gehrich*, 316 F.R.D. at 237-38 (awarding class counsel 21% of a $34 million common fund); *Wilkins*, 2015 WL 890566 (awarding 23.75% in a case involving a

$39 million settlement fund); *Capital One*, 80 F. Supp. 3d at 808 (awarding 20.77% in a $75 million settlement); *Duke v. Bank of Am., N.A.*, No. 5:12-cv-04009, ECF Doc. 59 (N.D. Cal.) (awarding 7.5% of a $32 million fund on a percentage cross-check); *Rose*, 2014 WL 4273358, at *5, *13 ($32 million fund; awarding attorneys' fees via lodestar method that amounted to approximately 7.5%); *Arthur* v. *Sallie Mae, Inc.*, 2012 WL 4076119, at *2 (W.D. Wash. Sept. 17, 2012) ($24 million fund; awarding 20% attorneys' fees).

Nor is a $200 per-claimant recovery is not exceptional for class members such as Ms. Stradtmann, who received more than hundreds of texts, and are giving up tens of thousands if not more in damages based on the vigorous text campaign. In *Wilder Chiropractic, Inc.*, Case No. 10-CV-229-SLC, Dkt Nos. 67, at 3 (W.D. Wisc.), (cited by class counsel), for example, the settlement provided $332.11 for *each* TCPA violation identified by claimants.

### C. Class Counsel Invested Limited Time and Labor.

*Third*, the amount of work involved, though not trivial, does not justify the proposed 33% fee. *See Meriter Health Services*, 2015 WL 13546111, at *6 (in analyzing the market rate, "the court also considers the amount of work involved"). This case settled in just over a year. Agreement in principal was reached in less

than a year.[14] Class counsels' base lodestar is $520,833—they ask for more than *five times* that amount. There results of this settlement do not justify that substantial of an upward adjustment.

The norm in TCPA class settlements is to award fees that are a small multiple of a reasonable lodestar. *Americana Art China Co.* v. *Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 246 (7th Cir. 2014) (affirming the district court's decision to apply the lodestar method and use a multiplier of 1.5); *Landsman & Funk, P.C.* v. *Skinder–Strauss Assocs.*, 2015 WL 2383358, at *8 (D.N.J. May 18, 2015) ("the proposed fee is about twice the lodestar fee, which is within the acceptable range and reasonable"); *Bayat* v. *Bank of the West*, 2015 WL 1744342, at **8–9 (N.D. Cal. Apr. 15, 2015) (applying the lodestar method and finding the proposed multiplier of 2.76 unjustified and reducing it to 1.5); *Grant* v. *Capital Mgmt. Servs., L.P.*, 2014 WL 888665, at *7 (S.D. Cal. Mar. 5, 2014) (no lodestar multiplier requested or applied); *Michel*, 2014 WL 497031, at *23 (reducing class counsel's requested multiplier of 4.3 to 1.8); *Vandervort* v. *Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (finding a multiplier of 2.52 within the acceptable range); *Bellows* v. *NCO Fin. Sys., Inc.*, 2009 WL 35468, at *8 (S.D. Cal. Jan. 5, 2009) (multiplier of 1.793 appropriate). This case, if anything, warrants an award below the norm because of the nominal relief relative to potential

---

[14] Suit was filed on May 5, 201, and the parties reached an agreement on the principal terms on April 13, 2017. ECF Doc. 1, ECF Doc. 61, at 6.

damages, the failure to take varying damages into account, and how quickly it settled.

**D. The Risks are Overstated.**

*Fourth*, class counsel significantly exaggerate the risk involved in this TCPA action. The TCPA is a strict liability statute. A single text message results in recovery between $500 and $1,500. See 47 U.S.C. §227(b)(3).

This makes TCPA class actions very likely to settle. *See*, *e.g.*, *Rose*, 2014 WL 4273358, at *12 (reducing requested attorneys' fee award and noting "because the TCPA has the potential of ruinous financial liability . . . defendants will almost always settle if there is any merit at all to the case"); *Bayat*, 2015 WL 1744342, at *9 (noting that there is less risk in a TCPA case "where the potential recovery of statutory damages is as large as it is here . . . due solely to the size of the class and damages fixed by statute"); *see also Gehrich*, 316 F.R.D. at 237 ("this case settled contemporaneously with or after several recent cases in this District and elsewhere that had established a template for TCPA litigation against large financial institutions, vastly reducing the uncertainty and risk for Class Counsel").

While class counsel describe the risk as significant, the defenses outlined by class counsel are not unlike other TCPA actions. *See e.g., Wilkins*, 2015 WL 890566, at *11 (noting defenses included "the class members' alleged consent to receive automated phone calls; Rule 23 manageability issues; and potentially

forthcoming FCC orders"). In *Wilkins*, a TCPA settlement which provided a larger $39.9 million fund, the court remarked, "this case is an average TCPA class action. There are serious obstacles for Plaintiffs to overcome in establishing liability, but they are typical obstacles faced by most TCPA plaintiffs." *Id*. (concluding that the risk of TCPA litigation did not warrant exceeding the scale). As in *Wilkins*, the defenses, obstacles, and risks here do not warrant going above the norm for fees in TCPA settlements.

In short, class counsels' request for 33% of the net settlement fund departs from the interests of the Class and should not be granted.

**E. The $10,000 Incentive Fee is Excessive.**

Finally, class counsel failed to substantiate the $10,000 incentive fee for Ms. Farnham. In deciding whether an incentive award is appropriate and what the amount should be, the Seventh Circuit advised that courts may consider "the actions the plaintiff has taken to protect the interest of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Meriter Health Services*, 2015 WL 13546111, at *4 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

True, this Court has acknowledged awards may range from $5,000 to $25,000. *Meriter Health Servs.*, 2015 WL 13546111, at *4 (collecting cases). Yet

in *Johnson*, the Court upheld a $5,000 award where the representatives were consulted through years of litigation, communicated with co-workers and former co-workers, responded to discovery requests, produced documents, responded to interrogatories, sat for depositions, and risked retaliation by their employer. *Id*.; *see also Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming incentive award of $25,000 where class representative spent hundreds of hours with attorney, providing them with an abundance of information, and reasonably feared workplace retaliation); *Heekin v. Anthem, Inc.*, No. 1:05-cv-01908-TWP-TAB, 2012 WL 5878032, at *1 (S.D. Ind. Nov. 20, 2012) (awarding $25,000 each to two class representatives based on extensive involvement over seven years of litigation); *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 412 (E.D. Wis. 2002) (approving $5,000 awards where plaintiffs were "required to respond to discovery requests, produce documents, meet with counsel in preparation for their depositions and undergo depositions").

Ms. Farnham, by contrast, was not required to consult with class counsel over multiple years of litigation. This class action settled in about a year. While she was required to respond to some written and electronic discovery, she was not required to sit for deposition. Simply serving as the class representative for around a year, conferring with class counsel, and carefully reviewing the settlement

agreement is not justification for $10,000, particularly given the poor return on the class damages achieved here.

## CONCLUSION

The proposed settlement should not be approved. Because of the aggressive text marketing campaign undertaken, a proper fairness analysis must include an estimate of the total text messages sent. Considering the number received by this Objector and the class representative, the $5.4 million earmarked for the class appears nominal. And, the plan of allocation arbitrarily limits class members to a single claim, thus providing class member who received 1,000 texts the same recovery as those who received one.

In the unlikely event the settlement is nevertheless approved, in no case should class counsel be awarded 33%. That is not the market rate in TCPA litigation. And, the fact that it would produce an excessive fee is borne out by the 5.2 lodestar multiplier. If fees are awarded, they should fall somewhere between 20%-25%, in line with comparable TCPA settlements.

Dated at Milwaukee, Wisconsin this 13th day of October, 2017.

**MILLER & OGORCHOCK, S.C.**
Attorneys for Objecting Class Member, Susan Stradtmann


By:       <u>s/ Thomas Ogorchock</u>
Thomas Ogorchock
Bar No. 1016563
Patrick C. Miller
Bar No. 1016563
Attorneys for Objecting Class Member Susan Stradtmann
Miller & Ogorchock, S.C.
740 North Plankinton Avenue
Suite 310
Milwaukee, Wisconsin 53203
Telephone: (414) 272-4100
Direct Dial: (414) 935-4992
Fax: (414) 272-4777
Email: tom@miller-ogorchock.com, pat@miller-ogorchock.com

**Certificate of Service**

I hereby certify that today, October 13, 2017, I filed the foregoing objection and supporting exhibits on ECF which will send electronic notification to all attorneys registered for ECF-filing. The foregoing objection and supporting exhibits were also mailed today to the following:

United States District Court for the Western District of Wisconsin
120 N. Henry Street
Madison, WI 53703

David P. Milian, Esq. and Frank S. Hedin, Esq.
Carey Rodriguez Milian Gonya, L.L.P.,
1395 Brickell Avenue, Suite 700
Miami, Florida, 33131

s/ Thomas Ogorchock