# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

KRISTIE FARNHAM, on behalf of
herself and all others similarly situated,

   Plaintiff,

 v.

CARIBOU COFFEE COMPANY, INC.

   Defendant.

Case No. 16-CV-00295-wmc

---

**OBJECTOR SUSAN STRADTMANN'S RESPONSE TO PLAINTIFF'S MOTION TO PROHIBIT UNAUTHORIZED COMMUNICATIONS WITH UNNAMED CLASS MEMBERS AND TO DISQUALIFY CHRISTOPHER BANDAS AND BANDAS LAW FIRM, PC**

---

## PRELIMINARY STATEMENT

Susan Stradtmann, an undisputed member of the settlement class, filed a timely objection through her attorneys in accordance with the procedures outlined in the class notice. The class notice, as with other class notices, invites class members who "want to be represented by another lawyer [to] . . . hire one to appear in Court" at their own expense[1] It also calls for class members wishing to object "to produce the name(s) of any attorneys representing them."[2] Ms. Stradtmann, after contacting the Bandas Law Firm and filing an objection through local counsel Thomas Ogorchock, complied with this requirement.

Rather than address the substance of Ms. Stradtmann's complaints with the settlement (including class counsels' failure to estimate the number of violative text messages sent, the apparent enormity of the discount on class damages, an arbitrary allocation of funds among class members, and an unjustified $2.7 million fee request), class counsel have embarked on a scorched-earth campaign, attempting to short-circuit Ms. Stradtmann's objection before it can even be considered. Class counsel subpoenaed Ms. Stradtmann for deposition even though she definitively established her standing as a class member by declaration. Worse, they are attempting to subpoena the files of her attorneys, unabashedly seeking

---

[1] Class notice, at 5, accessible at
https://www.cariboutcpasettlement.com/Content/Documents/Long%20Form%20Notice.pdf
(last visited Oct. 30, 2017) (emphasis added); ECF Doc. 53-5.

[2] *Id.* at 6.

attorney-client and work product materials. They have threatened sanctions, and filed this motion asking the Court to (1) remove the advertisement of an attorney who has not appeared in this case, (2) prohibit Ms. Stradtmann's attorneys from communicating with any member of the settlement class (presumably including Ms. Stradtmann) about the subject matter of the litigation, (3) disqualify Christopher Bandas and Bandas Law Firm, and (4) order the production of nonparty attorney-client material outside the purview of Rule 45.

This motion is frivolous in its entirety. As Rule 23 and even the class notice recognize, Ms. Stradtmann was free to hire the counsel of her choice in objecting to the settlement. She was not bound to accept class counsels' assurances that this is an "excellent outcome."[3]

Ms. Stradtmann was not solicited. She contacted the Bandas Law Firm after reviewing the website referenced by class counsel— www.classactionsettlementguide.com/caribou.

There is not a single inaccurate statement on the website, and the only way class counsel can suggest otherwise is by isolating text and making strained readings. Further, the Bandas Law Firm is entirely within its constitutional right, and in compliance with the rules of ethics, in its website advertisement. *See e.g., Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985); SCR 20:7.2;

---

[3] ECF Doc. 61, at 26.

ABA Mod. R. Prof. Cond. 7.2. The website does not violate any rule of ethics, including those referenced by class counsel.

Nathaniel Cade, Jr., an expert in legal ethics, agrees.[4] Mr. Cade is an attorney who served on the State Bar of Wisconsin's Standing Ethics Committee for seven years, including its Chair for three, and who also served on the ABA's Standing Committee on Ethics and Professional Responsibility for three years.[5] In Mr. Cade's opinion, Ms. Stradtmann's attorneys have not violated any rule of professional responsibility in connection with the Bandas website.[6]

Otherwise, class counsels' motion is an excuse to make *ad hominem* attacks on one of Ms. Stradtmann's attorneys, Christopher Bandas, and to poison the well for her on-point objections. Class counsels' personal attacks are a substitute for legal argument, and provide no basis for this Court to entertain any of the relief sought in the motion.

<h2 align="center">BACKGROUND</h2>

Ms. Stradtmann, through local counsel Thomas Ogorchock, filed a timely objection to the settlement and fee request on October 13, 2017.[7] Ms. Stradtmann supported her objection with a declaration establishing her standing in the class, a

---

[4] Exhibit 1, Declaration of Expert Nate Case and attached curriculum vitae.

[5] *Id*. at 2-3 and attached curriculum vitae.

[6] *Id*. at 15.

[7] ECF Doc. 66.

copy of the class notice she received in the mail, and copy of the confirmation page for her claim filed on the settlement website.[8]

Contrary to the representations in class counsels' motion, Mr. Ogorchock did not state the objection was "written entirely by Bandas and his office." Rather, he stated that the Bandas Law Firm drafted the objection.[9] Once they provided a draft of the objection, Mr. Ogorchock reviewed and edited it, and confirmed it was valid before signing and filing it.[10]

Class counsels' representation that "Mr. Ogorchock was unable to even provide Class Counsel with such basic information as the legal or factual basis for Ms. Stradtmann's objection" is also inaccurate. On October 23, 2017, the day Mr. Ogorchock received class counsels' email, he replied that he was in the middle of jury duty, and would defer to the Bandas Law Firm to discuss the objection.[11] Two days later, Mr. Ogorchock responded to class counsels' misguided concerns about the legal and factual basis for the objection. As he noted, class counsel were reduced to referencing an errant pronoun ("his" instead of her) in characterizing the objection as boilerplate. Mr. Ogorchock corrected class counsels' ill-founded

---

[8] ECF Doc. 67 & 67-1, 67-2.

[9] The Bandas Law Firm's limited-scope representation is authorized, and was properly disclosed in the objection. *See* ABA Standing Committee on Ethics and Professional Responsibility, Formal Opinion 07-446 (May 5, 2007); SCR 20:1-2.

[10] Exhibit 2, Declaration of Thomas Ogorchock, at 2.

[11] *Id.*

attack on the objection, explaining that every single point of law and fact in Ms. Stradtmann's objection is meritorious.[12]

**ARGUMENT & AUTHORITY**

**I. The Website is Not Misleading; Class Counsels' Portrayal of it Is.**

Class counsels' accusations regarding the website are unfounded. It does not fail to provide "any indicia of advertising[,]" as they claim.[13] Rather, it specifically states, "Legal Advertisement. Chris Bandas, licensed Texas lawyer, is responsible for the content of this advertisement."



It also not misleading as to the claims deadline, which is correctly listed as November 13, 2017, no fewer than *six different times* on the website, including near the top of the site. Not once does the site list an incorrect date. While a sentence does state in bold, "Important Deadlines for Filing Claims. . . ." with two

---

[12] *Id.*

[13] ECF Doc. 69, at 8.

paragraphs then describing the exclusion and objection deadlines, class counsel conveniently omit that the two preceding paragraphs list the November 13, 2017 claims deadline:

> Any claim for money by a member of the class must be made on the settlement website or mailed no later than November 13, 2017. Class members who do not file claims by this date will receive no compensation and will release their claims against Caribou Coffee Company, Inc. and other entities.
>
> Considering the November 13, 2017 claim-filing deadline, and the October 13, 2017 exclusion and objection deadlines, taking prompt action is critical.

### IMPORTANT DEADLINES FOR FILINGS CLAIMS IN THE CARIBOU COFFEE COMPANY TCPA CLASS ACTION SETTLEMENT TCPA CLASS ACTION SETTLEMENT.

Thus, the suggestion that the website is misleading about the claims deadline is a farce. Further, the site repeatedly links those interested to the actual settlement website for additional information. To be certain, there is nothing false or misleading about the information conveyed.

The site also correctly states that class members must act before October 13th to preserve all their legal rights. Indeed, class members who failed to assert an objection or seek an exclusion by this date waived their right to do so.

And under the statement concerning the class members' legal rights, the site again explains that "Obtaining a settlement award check requires filing a claim by November 13, 2017."[14] This sentence was *not* in fine print as claimed by class counsel, who ostensibly went so far as to reduce the font size on page 10 of their motion. The only way to come away with confusion from visiting the Bandas

---

[14] Contrary to class counsels' skewed reading, this statement was a correct reminder of the claims period, and not an acknowledgement of anything improper.

website is to set out deliberately to do so as class counsel have done, viewing snippets of text in isolation while making tortured readings.

## II. Class Members are Entitled to their Own Counsel in Objecting to the Settlement.

Class counsels' motion depends on the belief that their representation of absent class members is exclusive as in a traditional attorney-client relationship. That is a false premise. *William B. Rubenstein*, NEWBERG ON CLASS ACTIONS § 19.2 (5th ed. 2017) ("[a]s is evident, there is no one easy answer to the question of whether class counsel has an attorney-client relationship with absent class members. The Treatise earlier stated that '[t]he law knows few odder parties than the absent class member in a class action lawsuit,' and nowhere is that more evident than in the context of professional responsibility norms."); *In re "Agent Orange" Prod. Liab. Litig.,* 800 F.2d 14, 18–19 (2d Cir.1986) ("the traditional rules that have been developed in the course of attorneys' representation of the interests of clients outside of the class action context should not be mechanically applied to the problems that arise in the settlement of class action litigation").

It should be recalled that the interests of class counsel and the class members often diverge. *See e.g., In re Southwest Voucher Litigation*, 799 F.3d 701, 712 (7th Cir. 2015) ("[j]udicial scrutiny of class action fee awards and class

settlements more generally is based on the assumption that class counsel behave as economically rational actors who seek to serve their own interests first and foremost"); *accord In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010) ("the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage"). Accordingly, Rule 23 specifically recognizes "a class member may enter an appearance through an attorney if the member so desires[.]" FED. R. CIV. P. 23(c)(2)(B)(iv); *Tobin v Beer Capitol Distrib. Inc.*, 12-C-0274, 2012 WL 5197976, at *3 (E.D. Wis. Oct. 19, 2012) (noting Rule 23 requires notice "explain[ing] that class members may hire their own attorney"). Meanwhile this class notice, as with all class notices, expressly invites class members who "want to be represented by another lawyer [to] . . . hire one to appear in Court for you at your own expense."[15] It also contemplates separate counsel for those wishing to object, requiring objecting class members to list:

> Your name, address, telephone number, the cell phone number at which you received text messages from Caribou Coffee Company, Inc., between May 5, 2012 and July 28, 2017, *and if represented by counsel, the name, bar number, address, and telephone number of your counsel*[.]"[16]

---

[15] Class notice, at 5, accessible at
 https://www.cariboutcpasettlement.com/Content/Documents/Long%20Form%20Notice.pdf
(last visited Oct. 30, 2017) (emphasis added); ECF Doc. 53-5.

[16] *Id.* at 6.

The notion that there is anything improper about Ms. Stradtmann seeking counsel to represent her interests, or Mr. Bandas representing her in objecting to the settlement without consent of class counsel is absurd. It is class counsel whose interests are in conflict, which is one of reasons objections through the assistance of counsel is expressly contemplated in Rule 23.

## III. The Website is an Appropriate Form of Attorney Advertisement and Does Not Violate any Rule of Professional Conduct, Nor Does it Authorize Disqualification.

It is well settled that attorney advertisement is protected under the First Amendment. *See e.g., Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985). Attorney advertising through electronic communication, including public media, is approved by the Wisconsin Rules and the Model Rules of Professional Conduct. SCR 20:7.2; ABA Mod. R. Prof. Cond. 7.2. The Bandas website is a valid form of attorney advertisement, and in the opinion of ethics expert Nathaniel Cade, Jr. (again, who has served on various ethics committee, including Chair of Wisconsin's Standing Ethics Committee for three years, and in fact, assisted in revising Wisconsin's Rules of Professional Responsibility), does not violate any ethical rules.[17]

Class counsel argue the website violated Wisconsin Rule 20:7.1. This is not a good-faith argument. Rule 20:7.1 is facially inapplicable because the Bandas

---

[17] Exhibit 1, Declaration of Expert Nathaniel Cade, Jr., at 2-3, 8, 14-15, and attached curriculum vitae.

website does not make false communications about the Bandas Law Firm or Mr. Bandas.

Rule 20:7.1 provides:

Communications **concerning a lawyer's services**. A lawyer shall not make a false or misleading communication **about the lawyer or the lawyer's services**. A communication is false or misleading if it:

(a) contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading. . . .

SCR 20:7.1 (emphasis added).

Class counsel have not identified any misrepresentation about the Bandas Law Firm or Mr. Bandas or their services.[18] Even assuming all of the allegations in class counsels' motion are true (they are decidedly not), there is still no Rule 20:7.1 violation because there was no misrepresentation about the lawyer or his services. In any event, there are no misrepresentations on the website on any subject matter, as explained *supra*.

The Bandas website also does not violate Wisconsin Rule 20:4.2. That rule, which tracks ABA Rule 4.2, provides:

In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

---

[18] Exhibit 1, Declaration of Expert Nathaniel Cade, Jr..

*First*, as Mr. Cade's expert declaration explains, Ms. Stradtmann was not "represented" by class counsel when she initiated contact with the Bandas Law Firm under the meaning of the rule.[19] Absent class members "are not represented parties for purposes of the Model Rules prior to certification of the class and the expiration of the opt-out period[.]" ABA Standing Committee on Ethics and Professional Responsibility, Formal Opinion 07-445. Ms. Stradtmann initiated communication with the Bandas Law Firm ahead of the opt-out period.

*Second*, as further explained by ethics' expert Nathaniel Cade, Jr.'s declaration, the website is not a communication by the Bandas Law Firm.[20] It is "static" meaning that while one can locate the website with an internet search, it does not seek out individuals. This is not a situation where there was a list of names that were entered and those individuals specifically contacted.

The website does nothing more than provide information. It is no different than numerous websites, including class counsels' own firm website, that provides information on a particular legal subject. Under class counsels' interpretation of the rules, any website providing information about an area of the law could be construed as a "communication" with a represented client in violation of Rule 20:4.2 or Rule 4.2. That is obviously not the law.[21]

---

[19] Exhibit 1, at 13-15.

[20] *Id*. at 8-12.

[21] *Id.* at 9.

*Third*, even if the website could be construed as a communication under Rule 4.2, it would be a communication permitted by law. Attorney advertising is authorized by the U.S. Supreme Court and rules of professional conduct. Further, the Bandas Website is a permitted communication pursuant to Comment 4 of Rule 4.2:

> [4] . . . . Nor does this Rule preclude communication with a represented person who is seeking advice from a lawyer who is not otherwise representing a client in the matter. . . . Also, a lawyer having independent justification or legal authorization for communicating with a represented person is permitted to do so.

Neither the law firm of Miller & Ogorchock, S.C., nor the Bandas Law Firm were representing any person in the purported class when the website was posted. And, the Bandas Website was not sent out to members of the class advising them to object. Instead, it provided information to individuals concerning their various rights, including their right to object. In fact, a member of the class, such as Ms. Stradtmann, could have reviewed the Bandas Website, and sought counsel from a lawyer other than Mr. Bandas or Mr. Ogorchock in order to file an objection on her behalf. Under the theory proffered by class counsel, any lawyer who answered a call from a class member and advised them about objecting would be guilty of a Rule 4.2 violation. If that is the law, how could a class

member ever object with the assistance of counsel?[22]

Thus, absent class members' contacting other counsel and seeking their legal advice about interposing an objection to the settlement is permissible within the meaning of comment 4 to Rule 4.2.

Even if there were an arguable violation of an ethical rule (there is not), class counsel fail to explain how the alleged violation in attorney advertising amounts to conduct warranting disqualification. *See Owen v. Wangerin,* 985 F.2d 312, 317 (7th Cir.1992). Disqualification is a drastic remedy that deprives a litigant of counsel of their choosing. Courts should hesitate to disqualify "except when absolutely necessary." *Schiessle v. Stephens*, 717 F.2d 417, 419-20 (7th Cir. 1983). This is particularly so when, as here, the motion, and class counsels' kitchen-sink approach, exposes the effort as a litigation tactic to harass one's opponent. *Freeman v. Chicago Musical Instrument Co.,* 689 F.2d 715, 722 (7th Cir.1982).

Class counsels' lone case in support of disqualification,[23] a 2007 unpublished order from the Northern District of California, does nothing to suggest disqualification here. *Moreno v. Autozone, Inc.*, No. C05-04432 MJJ, 2007 WL 4287517, at *17 (N.D. Cal. Dec. 6, 2007). The attorneys in *Moreno*, had existing clients opposing a settlement when they sent letters out to members of the

---

[22] *Id.* at 13.

[23] ECF Doc. 69, at 19.

class after final approval of the settlement. *Id*. at *7-8. As the court explained, "[u]pon final approval, every . . . class member who declined to opt-out or object to the settlement formed an attorney-client relationship with the court-appointed counsel." *Id*. at *7.

Here, the Bandas Law Firm did not send a letter or "communicate" with the class members. It posted a website providing information about the settlement. Ms. Stradtmann contacted the Bandas Law Firm in response before final approval (yet to occur) and before the opt-out/objection deadline. And, unlike the attorneys in *Moreno*, the Bandas Law Firm did not represent any class members when it posted the website. The violations and conflicts in *Moreno* are simply not present here.

The Bandas Law Firm is not, as class counsel falsely allege, "actively seeking to represent . . . individuals who are not only already represented by Class Counsel but are directly adverse to Ms. Stradtmann."[24] Its sole client in this litigation is Ms. Stradtmann, who contacted the firm prior to the objection/opt-out deadline after reviewing the Bandas website, which simply provides information about the settlement. Further, now that the objection deadline has passed, there would be no action for the firm to take in terms of representing a class member.

---

[24] ECF Doc. 69, at 17.

**IV.    Class Counsels' Request for this Court to Remove the Advertisement is Beyond the Jurisdiction of this Court.**

As a threshold matter, class counsel fail to identify the jurisdictional basis for their request for the Court to order the website of an attorney removed who has not made an appearance before the Court, or why this Court is the appropriate forum to address any claimed ethical violations. Any ruling imposed upon Mr. Bandas or the Bandas Law Firm *in absentia* would implicate the Fourteenth Amendment right to due process as well as his Sixth Amendment rights to effective assistance of counsel, compulsory process, and to a defense. *Cf. Shade v. Bank of America, N.A., USA,* 2009 WL 2252551, at * 2 (E.D. Cal. July 28, 2009) ("Plaintiff is advised that neither Bank of America nor attorneys Reed Smith have appeared in this action; thus, this court has no jurisdiction to make such a sanctions order. Plaintiff's motion will be denied."); *Blanchard v. Edgemark Financial Corp.,* 175 F.R.D. 293, 303 n. 12 (N.D. Ill. Aug. 25, 1997) (noting that an attorney who represented the class representative in a separate litigation had not filed an appearance in the class action and was "thus outside the purview of this Court's jurisdiction" for purposes of sanctions).

**V.    Class Counsel Should Not be Permitted to Obtain Nonparty Discovery Through this Motion, which Bypasses Fed. R. Civ. P. 45.**

Continuing on with their shotgun approach, class counsel ask for this Court to order the production of a number of materials within 48 hours of entry of the

court's order in an apparent attempt to circumvent the rules of discovery, and in particular the various protections afforded by Federal Rule of Civil Procedure 45.[25] Of note, all of the material sought by class counsel are overtly attorney-client and work product material. Class counsel have also attempted to subpoena this material from the Bandas Law Firm. That subpoena must be litigated in the Southern District of Texas, which is the district where compliance is required. Fed. R. Civ. P. 45(d)(3). Class counsels' unauthorized backdoor attempt at nonparty attorney-client discovery should be rejected.

## VI. Class Counsels' Misleading *Ad Hominem* Attacks on Mr. Bandas are Not Legal Argument.

Class counsel dedicate a considerable amount of their motion to personal attacks on one of Ms. Stradtmann's attorneys, Christopher Bandas. These attacks are replete with half-truths and falsehoods. Courts *do not*, as class counsel state, "regularly sanction and hold Bandas in contempt" for "bad faith obstructionist conduct." Tellingly, class counsel cite a single case for that proposition, *Embry v. Acer Americana Corp.*, and discuss a contempt order, 2012 WL 3777163 (N.D.

---

[25] ECF Doc. 69, at 19. Class counsel request that the Court order Mr. Bandas, the Bandas Law Firm, PC, and local counsel Thomas A. Ogorchock and Patrick Miller to "(3) . . . complete the following two tasks within forty-eight hours of the entry of the Court's Order: (a) advise Class Counsel whether, since the Settlement Class was certified, any communications with unnamed Settlement Class members other than Ms. Stradtmann have taken place; and (b) deliver to Class Counsel for examination and copying all documents (including notes or memoranda) constituting or referring to any such communications to or from any Settlement Class member." Allowing this type of free-for-all discovery would seriously quell speech, and in particular objections to class action settlements as authorized by Rule 23.

Cal. Aug. 29, 2012), without referencing a subsequent order concluding Mr. Bandas was in compliance with its previous order. *Id*. at 09-01808, ECF Doc. 282 (N.D. Cal. Oct. 22, 2012).

The fact that Mr. Bandas has represented other class members wishing to object to settlements does not make Ms. Stradtmann's meritorious objection any less valid. Indeed, it "has no greater bearing on the merits of the objection . . . than a plaintiff's counsel's experience in filing class actions speaks to the merits of claims he brings." *True v. American Honda Motor Co.*, 749 F. Supp. 2d. 1052, 1079 (C.D. Cal. 2010).

Further, class counsels' smear leaves out the numerous cases in which Mr. Bandas' clients have succeeded in overturning unfair settlements and excessive fee awards. *See, e.g., In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 12-4671-CV, 2016 WL 3563719, at *12 (2d Cir. June 30, 2016) (Mr. Bandas' client was part of an effort in which the court "vacate[d] the district court's certification of the class, reverse[d] approval of the settlement, and remand[ed] for further proceedings not inconsistent with this opinion"); *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) ("The judgment [approving the settlement] is reversed and the case remanded for further proceedings"); *Litwin v. iRenew Bio Energy Sols.*, LLC, 172 Cal. Rptr. 3d 328, 333 (Cal. App. 2d Dist. 2014), *as modified* (May 29, 2014) (in a case in which Mr. Bandas

represented the objector in the lower court, the "the order granting final approval of the settlement must be reversed"); *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 181-82 (3d Cir. 2013) ("We vacate the District Court's orders approving settlement and the fund allocation plan[;] "[w]e vacate the Court's order awarding attorneys' fees and costs because this award was based on the now-vacated settlement"); *Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012) ("we reverse the district court's order approving the settlement and dismissing the case, vacate the judgment and award of attorneys' fees, and remand for further proceedings").

Recently, one of Mr. Bandas' clients assisted in returning $4.3 million in excessive fees to the class members. *See Edwards v. National Milk Prod. Fed.*, 11-04766, Doc. 485, at 12, 19 (N.D. Cal. June 26, 2017); Doc. 441 (objection of Ira Conner Erwin). The court in *Edwards* discounted the labeling of litigants as "professional objectors[,]" and reminded the parties to focus on the substance of the objections. *Id.* at ECF Doc. 485, at 2.

Earlier this year, another one of Mr. Bands' clients also successfully prosecuted an objection to an excessive fee request. *Jeffrey A. Thomas v. Dun & Bradstreet Credibility Corp.*, 2-15-CV-03194, Doc. 70, at 1, 6-11 (objection), Doc. 80 (C.D. Cal. Mar. 22, 2017) (order awarding fees). The district court specifically "agree[d] with several of the objections made by" Mr. Bandas' client,

including his "contention that a 30% fee award is inappropriate." *Id*. at 38. As a result, the court reduced fees from 30% to 27%. *Id*. at 37-38, 42.

And around sixteen months ago, still another client succeeded in reducing class counsels' attorneys' fees by $1.2 million, resulting in a direct benefit to the class in *JPMorgan Chase Bank*, No. SA-14-CA-00912-FB, Docs. 85, 93, 94 (W.D. Tex. June 20, 2016).

To be certain, courts have recognized the validity of objections asserted by Mr. Bandas' clients. Some courts have taken the torch from class counsel and labeled Mr. Bandas a "professional objector," while still considering the objections of his clients. But, "[m]erely characterizing . . . attorneys as 'professional objectors' without specifying what, exactly, they have done that is either in bad faith or vexatious, is not enough." *Blessing v. Sirius XM Radio, Inc.*, 2011 WL 5873383, No. 09 CV 10035(HB) (S.D.N.Y. Nov. 22, 2011).

Other courts have recognized the essential role objectors play in the approval process of class action settlements. "Objectors can also "add value to the class-action settlement process by . . . preventing collusion between lead plaintiff and defendants." *UFCW Loc. 880-Retail Food Employers Jt. Pension Fund v. Newmont Min. Corp.*, 352 Fed. Appx. 232, 236 (10th Cir. 2009). Further, "[o]bjectors can encourage scrutiny of a proposed settlement and identify areas that need improvement. They can provide important information regarding the

fairness, adequacy, and reasonableness of the settlement terms." *Pallister v. Blue Cross and Blue Shield of Montana*, 285 P.3d 562, 568 (Mont. 2012).

Of course, it is neither logically nor legally permissible to conclude that an objection is either proper or improper based outcomes in other cases, especially when those outcomes are mixed. *A fortiori*, these mixed results are no basis for disqualification or any of the other unfounded measures sought here by class counsel.

## CONCLUSION

Objecting class member Susan Stradtmann requests this Court deny class counsels' motion and for such further relief to which she is justly entitled.

Dated at Milwaukee, Wisconsin this 1st day of November, 2017.

**MILLER & OGORCHOCK, S.C.**
Attorneys for Objecting Class Member, Susan Stradtmann


By:      <u>s/ Thomas Ogorchock</u>
           Thomas Ogorchock
           Bar No. 1016563
           Patrick C. Miller
           Bar No. 1016563
           Attorneys for Objecting Class Member Susan Stradtmann
           Miller & Ogorchock, S.C.
           740 North Plankinton Avenue
           Suite 310
           Milwaukee, Wisconsin 53203
           Telephone: (414) 272-4100
           Direct Dial: (414) 935-4992

Fax: (414) 272-4777
Email: tom@miller-ogorchock.com,
pat@miller-ogorchock.com

## Certificate of Service

I hereby certify that today, November 1, 2017, I filed the foregoing document and supporting exhibits on ECF which will send electronic notification to all attorneys registered for ECF-filing.


<u>s/ Thomas Ogorchock</u>