**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| KRISTIE FARNHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civ. Action No. 16-CV-295 |
| v. | ) |
| | ) |
| CARIBOU COFFEE COMPANY, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**DEFENDANT CARIBOU COFFEE COMPANY, INC.'S MEMORANDUM
IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL**

1

**INTRODUCTION**

Caribou joins in Plaintiff's motion for final approval. The Settlement satisfies the Seventh Circuit's five-factor test for approval and is "fair, reasonable, and adequate" under Fed. R. Civ. P. 23(e)(2). *See Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652-53 (7th Cir. 2006).

Caribou submits this brief to address the "most important" factor in the Court's evaluation of the Settlement: "a comparison of the strengths of plaintiffs' case versus the amount of the settlement offer . . . ." *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). When the strength of Caribou's case is taken into account, the "fairness" arguments of sole-objector[1] Susan Stradtmann are rendered irrelevant. Indeed, the "most important" factor bears directly on the issue of fairness and strongly favors approval because Plaintiff' claims for statutory damages under the Telephone Consumer Protection Act ("TCPA") are weak for three reasons. *See Synfuel Tech., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (the "most important factor relevant to the fairness of a class action settlement [is] the strength of a plaintiff's case on the merits balanced against the amount offered in settlement.").

First, Caribou complied with the TCPA by obtaining its customers' "prior express consent" to send text messages to their cell phones using an autodialer. For customers receiving text messages from 2012 to October 16, 2013, Caribou obtained consent when customers opted in to receiving texts via short code. When Caribou launched its Perks

---

[1] The other objections to the settlement agreement were from parties who believed the settlement was unfair to Caribou because, despite being members of the putative class, they believed they provided consent to receive text messages. *See* Dkts. 59, 60, 65.

2

program on January 2, 2014, it included additional consent language outlined in more detail below. And finally on August 20, 2015, Caribou provided updated consent language that required a customer to provide his or her electronic signature prior to receiving any text messages. Regardless of whether a customer opted-in before 2014 or after 2015, all of the numbers to which Caribou sent text messages were provided to Caribou with the express desire to receive text messages. And in the case of Ms. Stradtmann, like all other current Perks members, she provided her consent anew each time Caribou provided additional affirmative steps. Because it is likely to be determined that Caribou had consent to text each and every customer that received messages, it did not violate the TCPA when it sent texts to its customers, and thus the putative class's claims have no value.

  Second, Plaintiff's claims are unlikely to meet Rule 23's typicality requirement and thus could not be litigated in a class. For example, the named plaintiff Ms. Farnham received text messages via a "shadow number" that had previously been provided to Caribou by a Perks member. Under Farnham's circumstances, Caribou's text messages were intended for the prior owner of the number who had consented to receiving Caribou's messages—they reached Farnham by mistake. But Farnham sought to represent a class of Caribou customers who provided their cell phone numbers with the desire of receiving text messages from Caribou. Unlike Farnham, these members of the putative class requested that Caribou send them text messages and provided the necessary prior express consent to receive them. A claim from a Caribou customer who intentionally provided his or her number to Caribou with the desire to receive text message from Caribou lacks the same "essential characteristics" as Farnham's narrow reassigned-number claim.

Third, the proposed class is not ascertainable and therefore does not meet the Seventh Circuit's requirements to be approved as a class. *See Buonomo*, 301 F.R.D. at 299–300 (citing *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006) ("Although not an express requirement of Rule 23, Seventh Circuit precedent requires the plaintiff to demonstrate that his or her proposed class is ascertainable or, in other words, that it 'is indeed identifiable as a class.'"). Farnham sought to represent a class consisting of individuals like her who were mistakenly contacted because of reassigned numbers. Identifying other putative class members who share Farnham's reassigned number issue is nearly impossible. Moreover, as part of the same class, Farnham also sought to represent individuals who received text messages from Caribou because they provided Caribou their cell phone numbers for that very purpose. But "[t]o satisfy ascertainability, the [Farnham] must [be able to] identify a method of determining class membership based on "precise, objective criteria."' *Id.* Farnham likely could not offer a reasonable way to determine class membership by requisite reference to objective criteria applied class-wide.

The Settlement more than adequately compensates class members, given the weakness of their claims, cash payments, and the information provided to class members of their legal rights. *See In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, No. 09-cv-7670 (N.D. Ill. Nov. 30, 2011) (Dkt. 113) (Holderman, J.) (noting that costs of notice can "be viewed as benefitting the Settlement Class" because notice "alert[s] individuals to their potential right to recover"). Caribou therefore respectfully asks the Court to approve the Settlement as "fair, reasonable, and adequate" under Fed. R. Civ. P. 23(e)(2).

## ARGUMENT

The putative class members' TCPA claims are likely to fail because Caribou had the required consent to text customers who provided their cell phone numbers to Caribou for the purpose of receiving text messages. Because the TCPA imposes "draconian" statutory penalties, however, *see Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 915 (7th Cir. 2011), Caribou negotiated a settlement with Plaintiff to mitigate even the small risk it bore of paying those penalties. Under the "most important" factor this Court applies to evaluate the fairness of a class settlement—namely, comparing "the strengths of plaintiffs' case versus the amount of the settlement offer," *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985)—the $8.5 million Settlement is more than adequate because it amply compensates Plaintiff and the putative class for their claims. Caribou therefore joins in Plaintiff's motion for granting final approval to the Settlement under Fed. R. Civ. P. 23(e)(2).

If a class were certified, the putative class's TCPA claims suffer from several fatal flaws that could render them virtually valueless. As a result, Ms. Stradtmann's three primary arguments that, 1) settlement should not be approved without disclosure of the number of texts, 2) the total recovery is "unfair" based on the estimated percentage of exposure to Caribou and, 3) the settlement allocation fails to appropriately compensate the putative class members with the greatest "damages," all fail. Indeed, each argument is based on the presumption that each individual putative class member has a legitimate claim against Caribou for each individual text message received. But the opposite is true: the majority of putative class members provided prior express consent to Caribou to receive text messages

and therefore have no claims. And even if they hadn't provided prior express consent, the Plaintiff's class was unlikely to be certified due to typicality and ascertainability issues.

### A. Plaintiff's and the Putative Class's TCPA Claims Have Limited Value Because Caribou Had Prior Express Consent To Text Message Its Customers.

Ms. Stradtmann argues that the Settlement's total value is insufficient given the size of class members' potential statutory damages under the TCPA. She also argues that the Settlement should not be approved until Caribou discloses the number of text messages sent, because the value cannot be appropriately assessed without that information. But Ms. Stradtmann—an extremely active Caribou customer and Perks member[2]—ignores the most relevant fact in this litigation: that because Caribou had "prior express consent" to text customers' cell phones, including hers, the text messages did not violate the TCPA. *See* 47 U.S.C. § 227(b)(1)(A)(iii); *see also* Dkt. 86, Stradtmann Depo. at p. 20, ¶¶ 14–24 (explaining that she knew she could unsubscribe but chose not to because she wanted to continue receiving the benefits of the Perks text messages). Whether Caribou sent one text message or one million text messages to customers who provided consent is irrelevant to this case because those messages do not violate the TCPA. Ms. Stradtmann cannot explain how the Settlement inadequately compensates the class for claims that will likely fail under the clear terms of the TCPA. Her objection should be overruled.

Each cell phone number to which Caribou sent text messages was provided to Caribou by its owner for purposes of receiving text messages and benefits from Caribou. Indeed, Ms. Stradtmann signed up for Caribou Perks, consented to receive text messages

---

[2] *See* Declaration of E. Hoffman, Exhibit 1 (Ms. Stradtmann's Caribou Perks transaction history.)

from Caribou, and has used hundreds of rewards and discounts since 2014 delivered to her via text message as a result. (Hoffman Declaration at Ex. 1.) In short, like objector Stradtmann, the people who provided Caribou with their cell phone numbers for the purpose of receiving text messages and rewards opted-in and consented to receiving texts from Caribou. Because Caribou had customer consent to send text messages, it did not violate the TCPA. 47 U.S.C. § 227(b)(1)(A).

The definition of "consent" under the TCPA and how it is obtained has changed over the last five years, and Caribou's methods of obtaining consent have changed with it. Prior to October 16, 2013, an advertiser could obtain prior express consent under the TCPA by receiving a person's cell phone number as a contact number. The FCC instructed that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given." *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8769 (1992). Text messages sent prior to October 16, 2013, were sent only to those who provided their cell phone numbers to Caribou. As a result, Caribou would likely face no liability for those texts.

As of October 16, 2013, callers can no longer obtain consent to use an ATDS to send telemarketing texts to cell phones simply by receiving a contact number. Instead, they must obtain prior express written consent. 47 C.F.R. § 64.1200(a)(2). Caribou obtained this consent for each text message sent. For a period of time, Caribou sent text messages to cell phone numbers that requested to receive Caribou text messages by sending a keyword, such as "Caribou" or "Enroll" to a five-digit short code number. These individuals were not solicited by Caribou, and Caribou did not call or text them first to obtain their numbers, nor

7

did Caribou purchase or otherwise obtain these numbers from any third parties. Rather, these individuals chose to send a text to Caribou opting into the text program via short code and, therefore, affirmatively sought to receive text message offers from Caribou. These initiating text messages show an affirmative written request to receive texts from Caribou, and meet the prior express written consent requirement effective October 16, 2013.

When Caribou launched its Perks program, it had additional consent language in place. As of January 2, 2014, Caribou provided the following consent language:

> *By providing your mobile number and texting "ENROLL" to 65017, you consent to receive marketing text messages using automated technology at the mobile number provided from Caribou Coffee. You understand that you don't have to sign up for this mobile program in order to make any purchases, and your consent above is not a condition of purchase. By texting in to the shortcode, you've read, understood and agree to the Terms & Conditions (http://www.cariboucoffee.com/page/1/terms-of-use.jsp) and you are over the age of 13. Your mobile information will not be shared for other marketing purposes. You may receive up to 8 text messages per month. Text HELP for help, text STOP to stop. Message & data rates may apply.

Finally, effective August 20, 2015, Caribou required a customer to provide his or her electronic signature by affirmatively electing "yes" or "no" prior to sending any customer a text message. This updated language seen below meets all the requirements of prior express written consent under today's TCPA requirements even more clearly than earlier versions:

> Would you like to be notified of your Caribou rewards and other special offers via text message? By providing your mobile number, you consent to receive text messages from **65017** using automated technology. Text **STOP** to end, text **HELP** for help. Up to 30 messages/month. Messages and data rates may apply. View Terms & Conditions and Privacy Policy. Consent to these terms is not a condition of purchase. If you select "No", you will not be alerted to your perks via text message.
> ○ Yes  ● No

All of the numbers to which Caribou sent text messages were provided to Caribou with the express desire to receive text messages and were provided under the terms of the language above depending on when the Caribou customer opted in to receiving texts. Caribou had valid express written consent to send text messages under the TCPA and has a complete merits defense to the majority of any putative class Farnham seeks to represent.

### B. Plaintiff's TCPA Claims Have Little Value Because a Class Is Unlikely to Be Certified Under Rule 23

Plaintiff's claims are unlikely to be certified under Rule 23. This weakness is another reason for the Court to find that the Settlement fairly and adequately compensates Plaintiff and the putative class for their claims. *See In re Mexico Money Transfer Litig. (W. Union & Valuta)*, 164 F. Supp. 2d 1002, 1017 (N.D. Ill. 2000) (approving a class settlement and recognizing that "certification of a class for litigation purposes is … uncertain").

#### 1. Farnham could not likely satisfy Rule 23(a)(3)'s typicality requirement

Rule 23(a)(3) demands that, for a class to be certified, "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *see also Muro v. Target Corp.,* 580 F.3d 485, 492 (7th Cir. 2009) (quoting *Williams v. Chartwell Fin. Servs., Ltd.,* 204 F.3d 748, 760 (7th Cir. 2000)). Generally, a claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [is] based on the same legal theory." *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992)). "Although '[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members,'" the named plaintiff's claims must share "the same essential characteristics

9

as the claims of the class at large." *Muro,* 580 F.3d at 492 (quoting *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983)). Farnham is neither typical of the Caribou customers she seeks to represent, nor is she adequate to represent them.

Ms. Farnham received text messages via a "shadow number" that had previously been provided to Caribou by a Perks member who wanted to receive texts. Neither Caribou nor Farnham understood why Farnham continued to receive text messages after she requested that they stop—Farnham was not aware that she had a second number assigned to her and neither was Caribou. So Caribou's text messages intended for the prior owner of Farnham's shadow number were sent to Farnham by mistake. But Farnham proposed to represent a class made up of Caribou customers who actively sought to receive text messages from Caribou. These customers—including Ms. Stradtmann—suffered no harm as a result of receiving the text messages they specifically requested. *See* Dkt. 86, Stradtmann Depo. at p. 20, ¶¶ 14–24 (explaining her desire to get text messages because of the benefit they conferred). In similar cases where the named plaintiff was contacted by mistake, courts in the Seventh Circuit have refused to recognize a broad litigation class that includes intentionally contacted individuals.

In *Buonomo v. Optimum Outcomes, Inc.*, for example, the Northern District of Illinois concluded that where a named plaintiff in a TCPA debt collection case was called as a result of a reassigned number, he could not represent a broader class that included actual debtors who had previously provided their cell phone numbers to the defendant. 301 F.R.D. 292, 297 (N.D. Ill. 2014). The court reasoned that the "central inquiry in a 'wrong party' case [like this one] is *who* provided consent, whereas the central inquiry in an actual debtor case is

10

*whether* the plaintiff provided consent to receive calls on his or her cell phone." *Id.* (emphasis in original). The court concluded for that reason the plaintiff "fails to satisfy rule 23(a)(3)'s typicality requirement because his 'wrong party' claim lacks the same 'essential characteristics' as the claims of actual debtors included in the proposed class." *Id.*

The same is true here. A claim from a Caribou customer who intentionally provided his or her number to Caribou with the desire to receive text message from Caribou lacks the same "essential characteristics" as Farnham's reassigned-number group. Like the wrong-party plaintiff in *Buonomo*, Farnham would likely fail to satisfy Rule 23(a)(3)'s typicality requirement for a broad class made up almost exclusively of Caribou customers—including the sole objector—who sought to receive text messages from Caribou and provided prior express consent to receive them. *Id.*

### 2. Plaintiff's proposed class is not ascertainable

"Although not an express requirement of Rule 23, Seventh Circuit precedent requires the plaintiff to demonstrate that his or her proposed class is ascertainable or, in other words, that it 'is indeed identifiable as a class.'" *Buonomo*, 301 F.R.D. at 299–300 (citing *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006); *see also Jamie S. v. Milwaukee Public Schs.*, 668 F.3d 481, 495–96 (7th Cir. 2012) (determining that the certified class failed because "there is no way to know or readily ascertain who is a member of the class"). "To satisfy ascertainability, the plaintiff must identify a method of determining class membership based on "precise, objective criteria.'" *Id.* (citing *G.M. Sign, Inc. v. Franklin Bank, S.S.B.*, 2008 WL 3889950, at *5 (N.D. Ill. Aug. 20, 2008); see also *Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*, 271 F.R.D. 139, 146 (N.D. Ill. 2010) ("[A] class is sufficiently definite if its members can

11

be ascertained by objective criteria and may be defined by reference to defendant's conduct." (quoting *Hinman v. M & M Rental Ctr., Inc.*, 545 F.Supp.2d 802, 806 (N.D. Ill. 2008)).

The proposed class in this case consists of individuals who, like Ms. Farnham, received unwanted text messages from Caribou as a result obtaining a reassigned number previously belonging to a Caribou customer who opted-in to receiving text messages from Caribou. As addressed above, it also consists in large-part of Caribou customers who took affirmative steps to receive text messages from Caribou. While Caribou's records can be scoured to determine when part of the class opted-in and provided consent to receive text messages, the other portion of the proposed class who received text messages as a result of reassigned numbers is substantially more difficult to ascertain.

Neither Caribou nor Farnham understood why Farnham continued to receive text messages after she requested that they stop. Farnham was not aware that she had a second number assigned to her that had previously belonged to a Perks subscriber; neither was Caribou. Farnham did not and likely cannot offer a reasonable way to determine whether a putative class member received texts as a result of a reassigned number or some other unknown reason.

Over 37 million wireless numbers are reassigned each year. Dissenting Statement of Commission Ajit Pai, *See In the Matter of Rules & Regulations of the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 8077 (July 10, 2015) (2015 TCPA Order). Often consumers do not inform the companies to which they have subscribed for text messages of this change, and there is no way for companies to avoid the reassigned-number problem, aside from discontinuing all text messaging. The largest database of reassigned numbers includes

12

only "80 percent of wireless . . . numbers," so even with elaborate precautions, text messages may still accidentally reach reassigned numbers. *See* 2015 TCPA Order 30 FCC Rcd. at 8007–08, n. 301. And determining when numbers were historically reassigned presents even more problems, as no database exists of those changes, and there is no legal requirement for cell phone carriers to keep or even possess this information.

At minimum, the shadow-number portion of the class is not ascertainable. Consequently, Farnham cannot define a class "satisf[ies] the established meaning of ascertainability by defining [a class] clearly and with objective criteria" and it therefore could not be certified. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 672 (7th Cir. 2015); *see also* Fed. R. Civ. P. 23(b)(3).

## CONCLUSION

The Settlement is "fair, reasonable, and adequate" under Fed. R. Civ. P. 23(e)(2) because the value it offers class members compares favorably to the exceedingly high risk those class members would face in litigation of not prevailing due to their weak claims, as well as the high risk that a class would not be certified. Caribou therefore respectfully requests the Court to grant final approval of the Settlement.

Dated: November 20, 2017

/s/ Erin L. Hoffman
Leita Walker, (MN #387095)
Erin L. Hoffman (MN #0387835)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
Fax: (612) 766-1600
Leita.Walker@FaegreBD.com
Erin.Hoffman@FaegreBD.com

*Attorneys for Defendant Caribou Coffee Company, Inc.*

## CERTIFICATE OF SERVICE

I certify that on November 20, 2017, a copy of the foregoing **DEFENDANT CARIBOU'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL** was filed electronically. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

/s/ Erin L. Hoffman

Leita Walker, (MN #387095)
Erin L. Hoffman (MN #0387835)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
Fax: (612) 766-1600
Leita.Walker@FaegreBD.com
Erin.Hoffman@FaegreBD.com

*Attorneys for Defendant Caribou Coffee Company, Inc.*