UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

_____

KRISTIE FARNHAM, individually and on
behalf of all those similarly situated,

      Plaintiff,

 -vs-                        Case No. 16-CV-295-WMC

CARIBOU COFFEE COMPANY, INC.,      Madison, Wisconsin
                                  November 27, 2017
        Defendant.          10:05 a.m.

_____

STENOGRAPHIC TRANSCRIPT OF SETTLEMENT APPROVAL HEARING
HELD BEFORE U.S. DISTRICT JUDGE WILLIAM M. CONLEY

APPEARANCES:

For the Plaintiff:

                Carey Rodriguez Milian Gonya, LLP
                BY:  DAVID P. MILIAN
                     FRANK HEDIN
                1395 Brickell Avenue, Suite 700
                Miami, Florida  33131

For the Defendant:

                Faegre Baker Daniels LLP
                BY:  ERIN L. HOFFMAN
                90 South 7th Street, Suite 2200
                Minneapolis, Minnesota  55402-3901

             Jennifer L. Dobbratz, RMR, CRR, CRC
          U.S. District Court Federal Reporter
            United States District Court
           120 North Henry Street, Rm. 410
            Madison, Wisconsin  53703
               (608) 261-5709

APPEARANCES CONTINUED:

For the Objector, Susan Stradtmann:

> Miller & Ogorchock, S.C.
> BY:   THOMAS A. OGORCHOCK
> 740 North Plankinton Avenue, Suite 310
> Milwaukee, Wisconsin  53203

                              * * *

7          (Proceedings called to order at 10:05 a.m.)

8          THE CLERK:  Case No. 16-CV-295-WMC, *Kristie Farnham v.*

9   *Caribou Coffee Company.*  Court is called for a settlement

10  approval hearing.  May we have the appearances, please.

11          MR. HEDIN:  Good morning, Your Honor.  Frank Hedin,

12  Carey Rodriguez Milian Gonya, on behalf of the class.

13          MR. MILIAN:  And David Milian on behalf of the class as

14  well.  Good morning, Your Honor.

15          MS. HOFFMAN:  Good morning, Your Honor.  Erin Hoffman

16  on behalf of defendant, Caribou Coffee.

17          MR. OGORCHOCK:  Good morning, Your Honor.  Attorney Tom

18  Ogorchock on behalf of the objector, Susan Stradtmann.

19          THE COURT:  I've never had anyone sit off to the side

20  whose made an appearance, so I would suggest you sit at counsel

21  table.  Right there at the end would be fine and just move the

22  mic towards you.

23          MR. OGORCHOCK:  No problem.

24          THE COURT:  Thank you for your appearances, and good

25  morning, all.  We are here for a fairness hearing on a proposed

1    final settlement agreement.  I will address that motion for

2    final settlement agreement in a moment, but because we have

3    this -- what has become a satellite dispute over the appearance

4    of the Bandas Law Firm and its proposed representation of Susan

5    Stradtmann, I will take that matter up first.

6         Let me say at the outset that the Court found all of the

7    time and energy spent on this to be much ado about nothing.  In

8    fact, to the extent there seems to be a dispute between the

9    objector and the class members, it is wholly unimpressive.  What

10   is impressive and a waste of the Court's time is the amount of

11   effort put in by counsel for the class and by counsel for

12   Ms. Stradtmann on matters which seem to spend almost -- most if

13   not all of their efforts on conduct involving other cases not

14   before this Court and not something that I intend to take up.

15        I will note that I've received yet two more written

16   submissions over the last few days from objector Susan

17   Stradtmann, *Motion to Strike Plaintiff's Reply in Support of the*

18   *Motion to Prohibit Unauthorized Communication With Unnamed Class*

19   *Members and to Disqualify the Bandas Law Firm* or, alternatively,

20   a *Motion for Leave to File a Surreply*.  Although I found the

21   surreply as equally unhelpful as the original response, I will

22   grant the latter motion for leave to file surreply and deny the

23   motion to strike, and so those motions are addressed.  I have

24   considered those submissions.

25        Let me then turn to the *Motion to Prohibit Unauthorized*

1    *Communication*.  The argument by counsel for the class is that

2    the Bandas website is "remarkably deceptive and misleading in

3    both appearance and substance."  I just simply disagree.  There

4    isn't anything particularly misleading about it.  I understand

5    that class counsel would prefer that they not have attempted to

6    obtain -- that is to say that the Bandas Law Firm not have

7    attempted to obtain objectors to the proposed settlement, but

8    there wasn't barratry here.  The website wasn't particularly

9    misleading.  It pretty much stated what their role would be.

10   It, as has been pointed out, provided links to the actual class

11   representative -- I should say to the class's law firm or class

12   counsel which provided all the details.  They never suggested

13   they were representing the class.  In fact, the very notices

14   that they emphasized were to object to the class settlement.

15        As for the Rules of Professional Conduct, I didn't see

16   anything in this case that suggests those statements about the

17   Bandas Law Firm or Mr. Bandas were false.  If you want to take

18   that up with the appropriate professional responsibility

19   authority, do it on your own time.

20        As for -- that addresses the disqualification.  I thought

21   both sides were less than straightforward in the deposition of

22   the objector, Ms. Stradtmann, and I am amazed that after all of

23   the efforts that were put into this back-and-forth, including a

24   deposition of Ms. Stradtmann, that so little is really presented

25   in terms of a basis to disqualify.  I will deny the motion to

1   disqualify.

2       At the same time I found very little helpful provided by

3   the Bandas Law Firm, beginning with the objection that was filed

4   by Ms. Stradtmann.  There is now before me a motion by

5   Ms. Stradtmann for leave to file an opposition to the class

6   motion for final approval for class action.  You have offered me

7   nothing -- Mr. Ogorchock, you have offered me nothing that would

8   suggest you have anything more to add than the objection itself.

9   You had all this time to file all of these responses to motion

10  to strike, and if you had anything more you wanted to add with

11  respect to the objections that your client had already raised,

12  you should have done so before this.

13      You know, the settlement itself, as your website

14  demonstrates, has been -- was preliminarily approved on July 28,

15  2017.  You had more than ample time to raise any legitimate

16  objections, and the only examples you give in your motion for

17  leave to file formal opposition to the final request for

18  approval, which substantively doesn't change in any material

19  respect from that which the Court approved months ago, is that

20  you claim there's a misleading portrayal of authority in the

21  Seventh Circuit.  This Court is well aware of what the Seventh

22  Circuit authority is.  You're unlikely -- you certainly haven't

23  provided me with anything enlightening so far, so I'm not going

24  to hold up this hearing because of the possibility that you have

25  some unique insight about Seventh Circuit case law, although

1    you're welcome to raise it today if you really think that's the

2    case.

3         As for the claim that class counsel has falsely represented

4    a 30 percent benchmark for attorney's fees in the Seventh

5    Circuit, that is straightforward as well, and I didn't need your

6    assistance to provide this Court with an understanding of its

7    responsibilities to review the merits of the proposed attorney's

8    fees and to decide what those are.  So nothing you provided me

9    so far would suggest there's any reason to delay this hearing,

10   and I deny your motion for leave to file an opposition, although

11   I will take up your objections.

12        I believe that addresses all of the preliminary motions

13   that were proposed by both counsel for the class and for the

14   objector, Ms. Stradtmann, and so I will move on to the reason

15   why we are here, which is the final fairness hearing.  This case

16   involves a lawsuit filed by Kristie Farnham on behalf of herself

17   and those similarly situated on May 5, 2016, alleging that

18   Caribou Coffee, the defendant, had violated the Telephone

19   Consumer Protection Act, the TCPA, by sending advertisements via

20   SMS text messaging en masse to cell phones of class members

21   through use of an automatic telephone dialing system, an ATDS

22   system, without express written consent.

23        As I've mentioned, the Court granted preliminary approval

24   of the proposed class action settlement on July 28, 2017, and

25   that settlement is essentially the same as before the Court

1    today with the exception that there was a higher response rate

2    than expected, so the individual recovery will be reduced from

3    approximately an estimated $200 to about $70, and the

4    administrative costs apparently have now doubled as represented

5    by Epiq, who was the claims administrator, Epiq Class Action and

6    Claims Solution, Inc.  The number of respondents has resulted in

7    a substantial increase in the costs in dealing with class

8    members, and that resulted in, according to them by affidavit

9    submitted to the Court, in a doubling of the overall costs of

10   administration.  Other than those distinctions, I don't see any

11   substantial difference from that proposed class action that the

12   Court approved in July.

13        As for the motion for final approval then, it is the

14   Court's responsibility to evaluate the fairness of the

15   settlement considering the strengths of plaintiff's class --

16   plaintiff's case compared to the amount of defendant's

17   settlement offer and assessment of the likely complexity,

18   length, and expense of the litigation and evaluation of the

19   amount of opposition to settlement among affected parties, the

20   opinion of competent counsel, and the stage of proceedings as

21   well as the amount of discovery completed at the time of

22   settlement.

23        The notice indicates that plaintiff's counsel represented

24   the court-approved notice procedures and contacted hundreds of

25   thousands of members of the settlement class by both mail and

1  email as well as by executing an extensive online publication

2  notice campaign.  According to counsel, this means that 99

3  percent of the people associated with the telephone numbers

4  received individual notice.  Additionally, notice was

5  electronically published in banner advertisements on *Yahoo Ad*

6  *Network* delivering over 10 million impressions on both a

7  national and geo-targeted basis.

8      I certainly find that notice was adequate, and that is

9  reflected by a total of some 73,703 members, 13.9 percent of the

10  total number of potential claimants, and as indicated, it

11  appears that those class members who did respond and opt in are

12  likely to receive approximately $75 from the -- actually I

13  suppose it will be a little less than that now that we've got

14  the double in projected costs, but it will still be a sum -- do

15  you have an approximate total now with that sum?

16      MR. HEDIN:  Yes, Your Honor.  Once the updated claims

17  costs are deducted from the fund and the requested attorney's

18  fees, assuming that request is granted, the per claimant

19  recovery will be $70.80.

20      THE COURT:  All right.  I am going to adjust the class

21  counsel's request, but I find the $70 to be reasonable

22  compensation under all the circumstances here, and I'll explain

23  why briefly, from the plaintiff's perspective, the $8.5 million

24  offered by Caribou Coffee is substantial -- I should say by

25  plaintiff's counsel's perspective and obviously by the class

1    representative's perspective.  And in particular they note the

2    legal uncertainties associated with continued litigation that

3    pose substantial risk of nonrecovery to the settlement class.

4    I'm not sure that nonrecovery is likely, although I do agree

5    that the D.C. Circuit's decision in *ACA International* could

6    result in some change in the definition of automatic telephone

7    dialing system and, given ongoing changes in the United States

8    Supreme Court, perhaps even review by that Court.

9         But the case law is fairly substantial and long standing,

10   so while I think there's some risk, I don't overestimate that

11   risk, but I do think that there are individual issues that

12   arguably could have affected the recovery of the class,

13   including whether or not there was really any receipt and how

14   one would measure an appropriate damage calculation for the

15   individual members, even if there is joint liability.  I also do

16   not dismiss the possibility that a substantially larger recovery

17   by the plaintiff's class could result in defendant seeking

18   relief in bankruptcy and find that those risks are sufficient to

19   justify the proposed settlement of $8.5 million.

20        I note that the defendant had, in particular, raised some

21   legitimate concerns with respect to prior consent being obtained

22   from a number of those people who received text messages via

23   autodialer, and that would have substantially complicated the

24   typicality requirement of Rule 23, which further complicated

25   this case.  Ultimately, therefore, I have no substantial

1    difficulty finding the $8.5 million settlement to be reasonable.

2        I will address the objections raised first as to the three

3    class members other than Ms. Stradtmann.  They actually assert,

4    I suppose one could say refreshingly, that the lawsuit itself

5    was frivolous, arguing that the entire lawsuit was a waste of

6    the Court's resources, wholly unwarranted, and that any alleged

7    suffering they found to be I think one essentially said

8    laughable or, I guess more accurately, practically made him

9    laugh out loud.

10       I think given the changes in technology and the ability to

11   deliver text messages without involving autodialing does raise a

12   legitimate question as to whether these lawsuits are becoming or

13   should be treated as somewhat arcane, but the law is the law,

14   and I find no particular merit in these objectors.  Whatever

15   legitimate question they may have raised with respect to the

16   efficacy of restrictions on telephone use for purposes of

17   texting, that is, nevertheless, the law.  Caribou violated it,

18   and so I'm not sure what to do with these objections other than

19   to say the Court has noted them but finds no merit in them, at

20   least as concerns the current state of the law.

21       I do have a recovery as to -- I'm sorry.  I do have a

22   question as to the right of recovery of these three members or

23   whether the Court should even consider simply relieving them of

24   the burden of receiving payment, but I'm not sure what authority

25   I have to do that under the case law.  Can class counsel provide

1    me any guidance in that respect?

2          MR. HEDIN:  Your Honor, none of those three class

3    members excluded themselves from the settlement, and so they --

4    and I believe that they did, in fact, file claims in order to

5    file these objections.

6          THE COURT:  The objections.  Yeah.  That's the great

7    irony of their objection is that they are, nevertheless,

8    seeking -- effectively seeking it, although I'm not sure that's

9    really their intent.

10          MR. HEDIN:  Your Honor, if I may, to the extent that --

11    they're going to receive a check in the mail.  If they don't

12    cash that check, it will become an unclaimed fund -- it will go

13    to the unclaimed fund portion of the settlement, which will then

14    revert back to the remaining class members who did file claims,

15    and the process will continue until a check to a claiming member

16    would be under a dollar, in which case the relief -- the

17    remainder of the fund will go to a *cy pres* recipient approved by

18    Your Honor.

19          THE COURT:  What I would direct is that you provide

20    specific notice to these three objectors that while the Court

21    noted and found some merit in their concern, there is no

22    question under the case law that -- or the statute and the case

23    law that, at least in the Court's view, the claims were

24    meritorious and that I did provide final approval of the class,

25    and then indicate what their option is if they do not wish to

1    actually receive the payments and what will happen to those

2    funds.

3            MR. HEDIN:  Absolutely.  We'll do that forthwith.

4            THE COURT:  All right.  Any concerns for the defendant

5    with respect to that approach?

6            MS. HOFFMAN:  No.  Thank you, Your Honor.  That's fine.

7            THE COURT:  Any for the other objector?

8            MR. OGORCHOCK:  No.

9            THE COURT:  All right.  Let me move on then to the

10   objections raised by Susan Stradtmann, which obviously take a

11   very different tact arguing fairly comprehensively that the

12   settlement is insufficient, both in terms of the dollars that

13   are being provided, which she suggests should be differentially

14   awarded based on the number of text messages received by

15   individuals, which strikes the Court as incredibly cumbersome --

16   an objection that I have not seen undertaken in other similar

17   cases, and I find very little merit in them, although I will

18   hear briefly from counsel for Ms. Stradtmann in that regard --

19   and then an objection that the attorney's fees and the incentive

20   to reward are too great, which I will address in a moment, but I

21   didn't find anything particularly enlightening in the objection

22   with respect to either and were going to be issues for this

23   Court, as is consistent with my regular practice, whether or not

24   Ms. Stradtmann had ever filed an objection.

25            As to the numbers, there are some -- as to the settlement

1    amount and the -- the suggestion that settlement should consider

2    the number of texts that individual class members received,

3    there are some 530,000 class members receiving, I think as

4    Ms. Farnham puts it, only 50 text messages while Ms. Farnham

5    reports she received far more messages, indeed that she received

6    hundreds of such text messages.

7         I just can't imagine that this Court would upset this

8    entire settlement over a concern that there may be individual

9    differences in the number of calls that were received, and

10   Ms. Stradtmann is the sole objector on that basis.  To me the

11   best measure of the injury, if you will, or disruption in one's

12   life that resulted from these text messages is not necessarily

13   the number of text messages but if the person cared.  If you

14   were someone who really disliked receiving these kinds of text

15   messages, 50 may well have been incredibly upsetting.  If you're

16   someone who really doesn't care about spam and knows how to

17   redirect spam, hundreds may not have been upsetting at all.

18        To me the best measure of whether or not this was upsetting

19   or injurious is whether or not the individual class member opted

20   into the class, and, indeed, that percentage who actually opted

21   into the class of 13.9 percent are almost certainly those who

22   were bothered by this as well as likely some who just see an

23   opportunity to receive payment, but I don't see a good way to

24   differentiate that nor any practical way for class counsel to --

25   much less defendant to have started to differentiate between

1    them.  We would have eaten up any settlement through the expense

2    of that kind of individualization and, indeed, would have upset

3    the class -- or certification of the class altogether because of

4    the concern that Ms. Stradtmann would raise.

5          So I see no merit in that, but I said I would hear briefly

6    from you, Mr. Ogorchock, so I will.

7                MR. OGORCHOCK:  Well, and given the Court's comments, I

8    don't know that anything I say would have any impact --

9                THE COURT:  Give it your best shot.

10               MR. OGORCHOCK:  But obviously if -- from my

11   perspective, people receive text messages, people receive emails

12   that are not wanted, you know, spam, as the Court mentioned.  I

13   think there is a big difference between getting one text message

14   or one email versus having your phone flooded on a constant

15   basis, and I think --

16               THE COURT:  Even if that were true, how would the class

17   counsel have possibly tried to attempt to differentiate among

18   the class members, and why wouldn't that have resulted in my

19   denying class certification as to damages to begin with?

20               MR. OGORCHOCK:  I don't know but --

21               THE COURT:  Well, that's a bad response for someone

22   who's purporting to represent an objector on this basis.

23               MR. OGORCHOCK:  What I meant to say was, Your Honor,

24   what -- one of the options they could have done is on the claim

25   card, they could have -- you might have to rely on the honesty

1    of the class members --

2          THE COURT:  It's wholly impractical to do that,

3    Counsel, and you know that, and why you think that's a basis for

4    objection of this class, I don't know and I have yet to hear.

5    It's not practical.  It wasn't practical, and it's no basis for

6    an objection.  Is there anything else you want to -- something

7    else that I'm missing in the nuance of this argument?

8          MR. OGORCHOCK:  No.

9          THE COURT:  All right.  I don't know that there's

10   anything else in your objection other than the attorney's fees

11   and award to the representative for the class, but if I haven't

12   addressed it and you think there's something else, I will.

13         MR. OGORCHOCK:  No, I think the Court has already

14   addressed the other objection as far as the amount.  I think the

15   Court has already addressed that so --

16         THE COURT:  All right.  Very good.  Then I will move on

17   to the suggestion by Ms. Stradtmann that the settlement deviates

18   from that of a typical TCPA recovery.  There was cherry picking

19   that went on in the submission.  I also find, you know, on

20   average the vast majority of the settlements in these cases have

21   been less than $7 million, at least as the Northern District of

22   Illinois was able to document them in *Capital One*.  I've already

23   addressed why I think the settlement is appropriate here.

24      As to the complexity and length and expense of the

25   litigation, although, as I say, I think liability was fairly

1    straightforward, I have already addressed the difficulties

2    presented by individual class member claims as well as the

3    possibility of bankruptcy.  I do think that counsel for the

4    class appears to have moved expeditiously and with some

5    efficiency to arrive at a fair and reasonable settlement.  I

6    also find counsel certainly competent to play the role that they

7    did in this case and their overall work to have been quite good

8    and effective.

9        After preliminary approval, there was substantial motion

10   practice.  There was joint discovery, and discovery was wide

11   ranging, as represented by the class -- by class counsel, which

12   lasted for some five months.  In fact, the parties ultimately

13   reached this settlement only following what has been described

14   as ten hours of contentious, arm's-length negotiation at

15   mediation with former Magistrate Judge Morton Denlow, and I have

16   no reason to doubt that it was exactly that, and under all these

17   circumstances, I, therefore, find the settlement to be fair,

18   reasonable, and adequate.

19       As I said, then there is the question of attorney's fees

20   and the incentive award for the class representative,

21   Mr. Farnham -- or, I'm sorry, Ms. Farnham.  The proposal is

22   $10,000.  I do find that as the sole representative, regardless

23   of some variation in what these awards are, that Ms. Farnham had

24   to play an important role, not only agreeing to sue on behalf of

25   the class but ultimately retaining counsel, participating in

1    discovery, and providing information to class counsel.  She

2    submitted a declaration supporting the supplemental brief that

3    opposed Caribou Coffee's motion to stay.  She also remained

4    generally informed about the case and reviewed and executed the

5    settlement agreement ultimately obtaining substantial relief for

6    the class.  While we could have some argument about whether a

7    $5,000 award, which has been made by other courts, versus a

8    10,000 award is more appropriate, I -- at the end of the day I

9    think a $10,000 incentive fee is perfectly reasonable, and I

10   will approve it.

11         The question as to the attorney's fees is always a more

12   difficult one, particularly when you have a settlement of the

13   size here.  Class counsel asks for roughly $2.7 million in fees

14   inclusive of its own out-of-pocket expenses and argues that the

15   Court should defer to contingency fee arrangements that

16   typically provide for 30 to 40 percent of the recovery plus

17   expenses.

18         If class counsel wished to proceed on a contingency fee

19   basis, they could have sought approval of this Court at the

20   outset as the Seventh Circuit contemplates.  They did not, and

21   so I don't find much guidance in the contingency fee

22   arrangements nor in plaintiff's retainer agreement in terms of

23   arriving at an appropriate fee award.  Counsel did provide a

24   summary of their hours and fees that would provide for a

25   lodestar cross-check.  The base lodestar here would be $520,833,

1    which would mean that the requested fee would be 4.86 times the

2    base lodestar and expenses or 5.2 times the base lodestar

3    itself.

4         I am not inclined to look purely at a lodestar any more

5    than I am to the contingency given the uncertainties that the

6    Court has already noted in these cases.  Stradtmann in her

7    objections cites market rates for TCPA attorney's fees at most

8    of 20 percent, which is simply not accurate and is, again,

9    another example of how unhelpful the objections were that she

10   raised, but I've already mentioned the *Capital One* decision,

11   which does a fairly good job of summarizing TCPA class

12   settlements beginning at those of less than $345,000, which

13   resulted in a median fee of 31.2 percent, and ranging up to 15.9

14   million to $39.9 million, which resulted in a mean fee of 17.2

15   percent.

16        The fees in the range that the Court is considering here,

17   which I'll put in 4.6 million to 9.8 million, show relative

18   fees -- contingency fees of 24.1 percent up to $7 million and

19   25.8 percent up to $9.8 million, but the median fee in both was

20   25 percent, and I think that's probably a reasonable starting

21   point to consider an appropriate market fee award here.

22        There is an argument that counsel asks for a 6 percent

23   premium based on risk.  As I've already addressed, I think there

24   were some significant risks here given the potential for a

25   substantial defense to the claims based on the defendant,

1    Caribou Coffee, having received permission to send some of these

2    texts to some of the class members as well as the risk of

3    bankruptcy.  On the other hand, this is now long-standing case

4    law, and I don't see a 6 percent premium being a fair reflection

5    of the additional risk of this particular class action.

6        I admit that there's never an exact science to arriving at

7    an award, but in considering all factors, I am of a mind to

8    award 30 percent after total costs of -- or the additional costs

9    of administration are removed from the settlement because those

10   were not anticipated in the Court's preapproval, and it seems to

11   me that that accommodates and provides some substantial premium

12   over the 25 percent but is fairer to the class members given the

13   size of the award here.

14       So I have not done the math, and I will permit plaintiff's

15   counsel to address both my proposed award as well as the best

16   manner to arrive at the final award, but it is intended to be

17   30 percent of the total settlement minus the costs of

18   administration and notice above $343,052.48.

19       Any questions or comments for class counsel?

20       MR. HEDIN:  Thank you, Your Honor.  Just in terms of

21   the breakdown in arriving at the number, Your Honor is correct

22   that obviously the 657,000 should be reduced from the total fund

23   prior to factoring any attorney's fees based upon the percentage

24   that the Court decides upon.  I will note that after the 657,000

25   are deducted, plaintiff's requested fee of one-third would

1    equate to roughly a 4.6 multiplier as opposed to the 5

2    multiplier that was originally mentioned in the papers.

3         In terms of --

4              THE COURT:  And I think I noted it was 4.6 when I was

5    discussing that.

6              MR. HEDIN:  Okay.

7              THE COURT:  5.2 if we didn't reduce by the costs.

8              MR. HEDIN:  Certainly.  The *In re Capital One* court did

9    a survey of TCPA settlements in district courts of the Seventh

10   Circuit and elsewhere and arrived at the conclusion that the

11   first 10 percent of the total fund -- or, I'm sorry, the first

12   $10 million of any TCPA fund should be used to allocate fees of

13   30 percent of that first 10 million and then a decreasing

14   sliding scale as the bands --

15             THE COURT:  I'm familiar with how they arrived at their

16   number.

17             MR. HEDIN:  Several of the cases involving the lower

18   settlements that were relied upon by the *Capital One* framework

19   were settlements where court-approved fees were based upon the

20   entire settlement fund as opposed to the net settlement fund

21   after the administration costs are deducted because many of

22   those cases were prior to --

23             THE COURT:  I agree it's difficult to rely upon those

24   exact calculations.

25             MR. HEDIN:  The one case I would -- two cases I would

1    point the Court to in figuring fees in this particular case for

2    an $8.5 million settlement, in *Kolinek v. Walgreens* the Northern

3    District of Illinois considered an $11 million TCPA settlement

4    in a text message case and actually awarded the full 36 percent,

5    the 30 percent base plus the 6 percent risk premium articulated

6    *In re Capital One*, in determining the appropriate fee award

7    based on the first $10 million band.  Similarly, in another case

8    that class counsel recently discovered --

9            THE COURT:  What was the date of that case?

10           MR. HEDIN:  I believe *Kolinek v. Walgreens* is a 2015

11   case.  I don't have the specific cite handy, but it is cited in

12   our papers.  The most helpful case though is probably *Grant v.*

13   *Commonwealth Edison Company*.  This is an unpublished case.  It's

14   not on WestLaw, and it's not reported.  This is another Northern

15   District of Illinois TCPA settlement of 4.95 million.  This is a

16   2013 case, but settlement was approved in 2015, and the case

17   number is 13-CV-8310, and ECF numbers 58 and 68 provide the

18   information that I just mentioned about the request and the

19   Court's approval of the request.  The Court approved 36 percent

20   of the 4.95 million again under the *In re Capital One* framework.

21       The other thing I'd like to point out is that our request

22   does not include additional out-of-pocket expenses to be

23   reimbursed to class counsel.  We've requested 33.3 percent --

24           THE COURT:  I understand that, Counsel.  I understand

25   that.

1          MR. HEDIN:  So taking into account the *In re Capital*
2    *One* framework and just the general Seventh Circuit guidance that
3    the Court should look to an *ex ante* negotiation between counsel
4    and the client at the outset, a hypothetical negotiation --
5          THE COURT:  And the Seventh Circuit has also made clear
6    if you want to rely upon that, it's a single individual member
7    of the class, you should seek preapproval by the Court, and we
8    might be having a different discussion today had you done that,
9    but you didn't.
10         MR. HEDIN:  I agree that the Seventh Circuit has
11   instructed counsel that they have the option of doing that, but
12   I don't know that the failure to do so --
13         THE COURT:  I'm not saying it's not relevant.  I'm not
14   ignoring that that was the contingency arrangement that you
15   entered into.  I'm just saying I don't find it particularly
16   persuasive in these cases given the history of liability that
17   has been -- has already been established.
18         MR. HEDIN:  Understood, Your Honor.  So for those
19   reasons we believe that 33.3 percent is a fair and reasonable
20   amount in light of the *In re Capital One* decision and its
21   progeny, and that's essentially what we have to offer on that
22   point.  Thank you, Your Honor.
23         THE COURT:  Understood.  Thank you.  Did defendant want
24   to be heard as to the fees?
25         MS. HOFFMAN:  No, Your Honor.  Caribou did not take a

1    position on the plaintiff's class counsel's request for fees.

2    The one suggestion that I might have is before the Court enters

3    a final decision, perhaps we could speak with the claims

4    administrator to get a not-to-exceed final number for claims

5    administration just so that we could have a final number for the

6    Court to work from.

7            THE COURT:  All right.  Mr. Ogorchock, I'll hear

8    briefly if you have anything else you want to add.

9            MR. OGORCHOCK:  Your Honor, I think the Court has

10   summarized things, so I don't think there's anything we need to

11   add at this point.

12           THE COURT:  All right.  I will take under advisement

13   the request for some additional amount.  I do want to look at

14   the *Kolinek* and *Grant* decisions because I had not reviewed them

15   in advance of this hearing, so I will, as part of my final

16   approval, give you a final decision on the fee award, but I

17   otherwise approve a settlement.  I would encourage both sides to

18   work with the claims administrator to arrive at a final number.

19   And just to confirm the parties' agreement, it is that the total

20   cost of administration is to be taken from the $8.5 million

21   settlement before any percentage is applied; is that correct?

22           MR. HEDIN:  That's absolutely correct, Your Honor.

23           MS. HOFFMAN:  Yes, Your Honor, that's correct.

24           THE COURT:  All right.  Is there anything else that the

25   plaintiff's class wants to add -- or I should say plaintiff's

```
 1    counsel as well want to add before I close this hearing?
 2              MR. HEDIN:  No, Your Honor.  Thank you very much.
 3              THE COURT:  Anything more for the defendant?
 4              MS. HOFFMAN:  No.  Thank you, Your Honor.
 5              THE COURT:  Anything more for the objector,
 6    Ms. Stradtmann?
 7              MR. OGORCHOCK:  No, Your Honor.
 8              THE COURT:  Thank you, all, for your time today, and
 9    this matter is under advisement as to the last issue of class
10    fee.  We are adjourned -- actually, we're in recess.  Thank you.
11              THE CLERK:  All rise.
12         (Proceedings concluded at 10:53 a.m.)
13                              ***
14
15
16
17
18
19
20
21
22
23
24
25
```

1          I, JENNIFER L. DOBBRATZ, Certified Realtime and Merit

2     Reporter in and for the State of Wisconsin, certify that the

3     foregoing is a true and accurate record of the proceedings held

4     on the 27th day of November, 2017, before the Honorable William

5     M. Conley, U.S. District Judge for the Western District of

6     Wisconsin, in my presence and reduced to writing in accordance

7     with my stenographic notes made at said time and place.

8          Dated this 30th day of November, 2017.

9

10

11

12

13

14                              /s/ Jennifer L. Dobbratz

15                    Jennifer L. Dobbratz, RMR, CRR, CRC
                            Federal Court Reporter

16

17

18

19

20

21

22

23

24     The foregoing certification of this transcript does not apply to
       any reproduction of the same by any means unless under the
25     direct control and/or direction of the certifying reporter.