## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| KRISTIE FARNHAM, on behalf of herself and all others similarly situated, | CASE NO. 16-CV-00295-wmc |
| Plaintiff, | |
| v. | |
| CARIBOU COFFEE COMPANY, INC., | |
| Defendant. | |

### PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO STRIKE NOTICE OF APPEAL

Plaintiff and Class Representative Kristie Farnham hereby submits this reply in further support of the Motion to Strike (ECF No. 109) the untimely Notice of Appeal filed by Objector Susan Stradtmann ("Stradtmann") (ECF No. 106).

### ARGUMENT

**I.  Controlling Seventh Circuit Precedent Confirms that the Notice of Appeal is Untimely as to the November 27, 2017 Order**

As far as Stradtmann is concerned, all issues in this litigation were finally resolved on November 27, 2017. The Notice of Appeal filed January 9, 2018 was therefore untimely.

Stradtmann objected to both the fairness of the Settlement and to Class Counsel's proposal of attorneys' fees of 33-1/3%. (ECF No. 66.) At the fairness hearing on November 27, 2017, the Court completely rejected Stradtmann's objections as to the merits and as to attorneys' fees. (ECF No. 99 (minute entry

reflecting final fairness hearing); ECF No. 103, Transcript of Proceedings, Nov. 27, 2017 ("Final Hearing Tr."), a copy of which is attached hereto, at 12:17 (finding "very little merit" in Stradtmann's objections on merits); *id.* at 15:5-15:6 (rejecting Stradtmann's objections on the merits as "not practical" and "no basis for an objection"); *id.* at 18:6-18:10 ("Stradtmann in her objections cites market rates for TCPA attorney's fees at most of 20 percent, which is simply not accurate and is, again, another example of how unhelpful the objections were that she raised . . . .").) Later that day, the Court entered the November 27, 2017 Order finally approving the Settlement in which the Court stated: "Stradtmann's objections (ECF No. 66) are rejected for lack of merit." (ECF No. 98 at 2.) The litigation was finally resolved as to Stradtmann on November 27, 2017, and the Notice of Appeal filed January 9, 2018 was untimely.

In the opposition to the motion to strike, Stradtmann offers only one reason, not supported by legal authority, why her Notice of Appeal as to the Court's final approval of the Settlement is timely: "Because class counsels' fee directly impacts class recovery in a common fund settlement, fees are not collateral to settlement approval," and, as a result, "the first order approving the settlement did not become final until the Court issued its second order designating class counsels' fee, and in turn, the class members' recovery." (ECF No. 112 at 2 (citing to no legal authority); *see also id.* at 7 ("[W]hereas attorneys' fees may generally be considered a collateral issue, they are not when it comes to a common fund settlement." (citing to no legal

authority)) (emphasis added).) Stradtmann has picked the wrong spot to wager all her chips.

Contrary to what the opposition brief would have the Court believe, controlling Seventh Circuit precedent, since cited with approval by the Supreme Court, confirms that a court's decision on an award of attorneys' fees, <u>even one paid from a common fund established in a class action settlement</u>, is a collateral issue separate from the merits, has no bearing on whether the merits have been finally decided, and therefore has no bearing on the point at which a decision on the merits becomes final and appealable. *Swanson v. Am. Consumer Indus., Inc.*, 517 F.2d 555, 559 (7th Cir. 1975) (award of attorneys' fees from common fund in class action settlement is incidental to merits of litigation, and reservation of decision on fees does not affect finality and appealability of decision on merits of case); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 481 n.5 (1980) (citing *Swanson* and finding untimely defendant's attempt to attack district court's judgment finally approving common-fund class action settlement where defendant had only appealed award of attorneys' fees from common fund, explaining that although judgment of district court "did not fix the amount of attorney's fees to be assessed against absentee class members, its judgment terminated the litigation between Boeing and the class concerning the extent of Boeing's liability," such that "the judgment awarding the class a fixed recovery was final and appealable" upon entry). The Seventh Circuit subsequently reaffirmed *Swanson* when it reached the same result in *Overseas Development Disc Corp. v. Sangamo Construction Co.*, 840 F.2d 1319, 1324 (7th Cir.

3

1988) (citing, inter alia, *Swanson* and *Boeing*, and holding that "a decision awarding or denying attorney's fees and expenses from a common fund (as opposed to from an adverse party) is severable from the decision on the merits and separately appealable").[1]

The rationale for treating an award of attorneys' fees from common-fund settlements no differently than other attorneys' fee awards is that the award resolves an outstanding issue that exists only between counsel and client (i.e., the class), not between adverse parties. *See, e.g.*, *Swanson*, 517 F.2d at 560 ("This distribution of costs is 'between solicitor and client' . . . and not between the adverse parties to the case.") (quoting *Trustees v. Greenough*, 105 U.S. 527, 531 (1882)). It is therefore collateral to the underlying merits, just like any other fee award.

Thus, well-established Seventh Circuit and Supreme Court precedent confirms that the 30-day period for Stradtmann to have appealed the Court's decision granting final approval of the Settlement commenced on November 27, 2017. The Notice of Appeal filed January 9, 2018 was therefore untimely.

Stradtmann makes a last-ditch attempt to salvage the purported appeal by arguing that the Court should at least refrain from striking the Notice of Appeal as to the issue of attorneys' fees, even if the Court holds the appeal untimely as to the merits. (ECF No. 112 at 8 ("Finally, even assuming arguendo that the November

---

[1] The opposition brief's reliance on *Lobatz v. U.S. West Cellular of California, Inc.*, 222 F.3d 1142 (9th Cir. 2000), is misplaced. As a threshold matter, *Lobatz* could not override the settled authority in the Seventh Circuit. Moreover, *Lobatz* does not even support Stratdtmann's argument that an appeal of an order approving a common fund settlement on the merits must await a decision on attorneys' fees.

4

27, 2017 order was a final judgment, there is no question Ms. Stradtmann's January 9, 2018 notice of appeal was timely at least on the issue of attorney's fees. It cannot be the case that Ms. Stradtmann's failure to file a notice of appeal from an order that did not reach the substance of her fee objection can result in waiver of that objection.").) Stradtmann is incorrect that the November 27, 2017 Order "did not reach the substance of her fee objection." (*Id.*) The Court made clear in the fairness hearing that it was rejecting Stradtmann's fee objection (Final Hearing Tr. at 18 (stating that objection was "simply not accurate" and "again, another example of how unhelpful the objections were that she raised")), and followed that statement on the same day with the November 27, 2017 Order in which the Court stated without qualification or limitation that "Stradtmann's objections (ECF No. 66) are rejected for lack of merit" (ECF No. 98 at 2). The November 27, 2017 Order finally disposed of all of Stradtmann's objections, both as to the merits and as to fees. It was therefore a final order as to Stradtmann, and the January 9, 2018 Notice of Appeal was untimely.

Nevertheless, even if Stradtmann's fall-back position were correct and the Notice of Appeal were timely with respect to the objection as to fees, the premise of that position is that the Notice of Appeal is untimely as to the merits. Accordingly, even if the Court were to accept Stradtmann's attempt to salvage the appeal as to fees, the Court should at a minimum strike the Notice of Appeal as to the merits and hold the Notice of Appeal timely only as to fees. Such a ruling would be of great importance because, as explained below, Stradtmann's objection as to fees is holding

5

the class members' distributions hostage to a collateral issue. A ruling that the appeal is untimely as to the merits (even if timely as to fees) would permit distribution of the settlement fund and thus serve the interests of justice.

## II. This Court Continues to Have Jurisdiction Because the Notice of Appeal Was Plainly Untimely

Stradtmann argues that the Court has no power to strike the Notice of Appeal because its filing divested the Court of jurisdiction. Stradtmann is incorrect.

Although genuine disputes about appellate jurisdiction are for the appellate court to decide, a district court is not deprived of jurisdiction when a litigant files a plainly deficient notice of appeal. Otherwise, a litigant could throw a spanner into the works of the court system at will, delaying and effectively staying district court proceedings for the length of time required for an appellate court to dismiss a plainly deficient appeal. That is not how it works.

Professor Moore's treatise explains:

> A notice of appeal that is deficient because it is untimely or because it lacks the essential recitals does not transfer jurisdiction to the circuit court. If it is clear to the district court that the notice of appeal is deficient, it may disregard the purported notice and proceed with the case. Thus, if an appeal is filed after the filing deadline has passed and no extension is granted, the case may proceed in the district court.

20 James W. Moore, *Moore's Federal Practice* § 303.32[2][b][iv][A] (3d ed. 1997) (footnotes omitted). The Moore treatise reflects essentially uniform agreement in the federal courts. Sitting en banc, the Court of Appeals for the Ninth Circuit issued a seminal decision on the subject:

> The only thing that is accomplished by a proper notice of appeal is to transfer jurisdiction of a case from a district court to a court of appeals. If, by reason of defects in form or execution, a notice of appeal does not transfer jurisdiction to the court of appeals, then such jurisdiction must remain in the district court; it cannot float in the air.
>
> Where the deficiency in a notice of appeal, by reason of untimeliness, lack of essential recitals, or reference to a non-appealable order, is clear to the district court, it may disregard the purported notice of appeal and proceed with the case, knowing that it has not been deprived of jurisdiction. If the district court is in doubt as to whether the notice of appeal is inoperative by reason of some such defect, it may decline to act further until the purported appellee obtains dismissal of the appeal in the court of appeals. In the rare instance where the district court proceeds with a case under the mistaken belief that a notice of appeal is inoperative, the appellant may apply to the court of appeals for a writ of prohibition.

*Ruby v. Sec'y of U.S. Navy*, 365 F.2d 385, 388-89 (9th Cir. 1966) (en banc), *cert. denied*, 386 U.S. 1011 (1967).

The Seventh Circuit has explicitly agreed with *Ruby*. *King v. Gibbs*, 876 F.2d 1275, 1278 (7th Cir. 1989) ("We agree with the statement of the court in *Ruby* that '[i]f, by reason of defects in form or execution, a notice of appeal does not transfer jurisdiction to the court of appeals, then such jurisdiction must remain in the district court; it cannot float in the air.'") (alteration in original) (quoting *Ruby*, 365 F.2d at 388); *Local P-171, Amalgamated Meat Cutters & Butcher Workmen of N. Am. v. Thompson Farms Co.*, 642 F.2d 1065, 1074-75 (7th Cir. 1981) (following *Ruby*).

Contrary to Stradtmann's characterization, other federal courts are in accord. *See Gilda Indus., Inc. v. United States*, 511 F.3d 1348, 1350-51 (Fed. Cir. 2008)

7

("Ordinarily, the act of filing a notice of appeal confers jurisdiction on an appellate court and divests the trial court of jurisdiction over matters related to the appeal. That rule, however, does not extend to deficient notices of appeal." (citations omitted)); *Rucker v. Dep't of Labor*, 798 F.2d 891, 892 (6th Cir. 1986) ("As a general rule, a district court loses jurisdiction over an action when a party perfects an appeal unless that appeal is untimely, is an appeal from a non-appealable non-final order, or raises only issues that were previously ruled upon in that case by the appellate court."); *In re Grand Jury Proceedings*, 795 F.2d 226, 231 (1st Cir. 1986) (stating that while the filing of a notice of appeal generally divests a district court of jurisdiction, "an untimely, impermissible or frivolous appeal does not vest jurisdiction in the court of appeals"); *Arthur Andersen & Co. v. Finesilver*, 546 F.2d 338, 340–41 (10th Cir. 1976) (agreeing with *Ruby*); *Armstead v. HSBC Card Servs.*, 935 F. Supp. 2d 907, 908 (C.D. Ill. 2013) ("Generally, the filing of a notice of appeal confers jurisdiction on the court of appeals, and divests the district court of jurisdiction. However, when a notice of appeal is deficient, the district court retains jurisdiction over the case." (citation omitted)); *United States v. Fischer*, No. 87-cr-40070-JPG, 2009 WL 458564, at *1 (S.D. Ill. Feb. 24, 2009) (following *Ruby* and *Gilda* and holding "Fischer's notice of appeal did not divest the Court of jurisdiction to hear the motions pending in this case because his appeal was untimely").

The unpublished Seventh Circuit decision on which Stradtmann relies, *United States v. Real Property Located at 886 N. Hamilton St. Clair Cty., Marissa, Ill.*, 34 F. App'x 235 (7th Cir. 2002), concerned a wholly different situation in which

8

a district court had completely failed for three years to transmit to the appellate court a notice of appeal that was not deficient. The *Real Property* court's observation that a district court cannot strike a notice of appeal was therefore made in the usual context of a nondeficient notice of appeal, to which the general rule that filing divests jurisdiction should have applied.

Federal courts widely recognize that the reason a deficient notice of appeal cannot divest a district court's jurisdiction is to ensure that litigants cannot disrupt and delay the system of justice at will. *See Cochran v. Birkel*, 651 F.2d 1219, 1222 (6th Cir. 1981) ("Principles of sound judicial administration strongly support this view."); *Leonhard v. United States*, 633 F.2d 599, 610 (2d Cir. 1980) ("While greater certainty as to district court power results from the more rigid rule that any filing of a notice of appeal divests the district court of jurisdiction as to the matters covered by the notice, we see no efficiency to be gained by allowing a party arbitrarily to halt the district court proceedings by filing a plainly unauthorized notice which confers on this Court the power to do nothing but dismiss the appeal."); *United States v. Hitchman*, 602 F.2d 689, 694 (5th Cir. 1979) (en banc) ("We are persuaded that filing a notice of appeal from a nonappealable order should not divest the district court of jurisdiction and that the reasoning of the cases that so hold is sound. The contrary rule leaves the court powerless to prevent intentional dilatory tactics, forecloses without remedy the nonappealing party's right to continuing trial court jurisdiction, and inhibits the smooth and efficient functioning of the judicial process."); *Hodgson v. Mahoney*, 460 F.2d 326, 328 (1st Cir. 1972) (per curiam)

(holding district court had jurisdiction to proceed in face of "manifestly deficient" notice of appeal, because "[o]therwise, a litigant could temporarily deprive the court of jurisdiction at any and every critical juncture").

In the present case, it is imperative that this Court hold the Notice of Appeal ineffective as to the November 27, 2017 Order finally deciding the case on the merits. The settlement agreement (ECF No. 50-1 (the "Settlement Agreement")), which the Court finally approved in the November 27, 2017 Order, provides for distribution of an $8,500,000.00 settlement fund to class members. (*Id.* at 12.) As the Court knows, nearly 74,000 class members submitted claims — a tremendously successful response rate of 13.9%. (Final Hearing Tr. at 8.) The Settlement Agreement calls upon Epiq, the settlement administrator, to distribute the settlement fund to class members within ten days of receiving payment from Caribou. (ECF No. 50-1 at 14.) After 180 days, a second distribution is to be made if the amount of funds from uncashed checks exceeds $1.00 per claimant, net of administration costs. (*Id.*) Once the net funds for distribution fall below $1.00 per claimant, the parties will return to the Court for approval of distribution of the remainder to a charitable organization. (*Id.* at 14-15.) The Settlement Agreement, as finally approved by the Court, provides for distribution of the settlement fund to be held in abeyance only in the event of a "timely filed Appeal" of the Court's order granting final approval of the Settlement. (*Id.* at 15.)

As explained above, Stradtmann's appeal is plainly untimely as to the November 27, 2017 Order finally approving the Settlement. There is accordingly no

legitimate basis for delaying disbursement of the settlement fund to class members any longer. This is a grave concern for at least three reasons. First, delay obviously deprives claimants of funds to which they are presently entitled. Second, it is critical to distribute the settlement fund to the class as soon as possible. With nearly 74,000 claimants, the risk that claimants will relocate or even die while waiting for their distributions grows larger with every passing day. Delay threatens to squander the extraordinarily high response rate that was achieved in the notification process. Third, this Court's work will not be done until the settlement fund drops below $1.00 per claimant and the parties return for approval of a final distribution to a charitable organization. Each round of distribution entails a 180-day waiting period from the time checks are issued. (*Id.* at 14.) To complete the process, it is important to begin it.

Stradtmann's untimely Notice of Appeal is presently causing the settlement administrator to refrain from distributing the settlement fund, absent a ruling that confirms the Notice of Appeal is untimely with respect to the November 27, 2017 Order's final disposition of the merits. This unjustifiably deprives claimants of the present use of their funds, imposes a risk of loss to claimants who relocate or die, and needlessly delays the point at which the Court will be able to approve a final distribution to a charitable organization.

Stradtmann's filing of a plainly untimely appeal is a perfect example of why federal courts have held district courts authorized to continue exercising their jurisdiction and to disregard an untimely appeal. Stradtmann's untimely appeal on

the merits is no basis for permitting her to hold the claimants' distributions hostage.

## CONCLUSION

The Court should strike the Notice of Appeal (ECF No. 106) filed by Objector Susan Stradtmann as untimely. At a minimum, the Court should strike the portion of the Notice of Appeal pertaining to the merits decided in the November 27, 2017 Order, and hold the Notice of Appeal untimely as to the November 27, 2017 Order.

Dated: January 30, 2018

Respectfully submitted,

By: /s/ Frank S. Hedin

**CAREY RODRIGUEZ MILIAN GONYA, LLP**

Frank S. Hedin
Florida Bar No. 109698
fhedin@careyrodriguez.com
David P. Milian
Florida Bar No. 844421
dmilian@careyrodriguez.com
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone: (305) 372-7474
Facsimile: (305) 372-7475

*Class Counsel*